IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TREND INTERMODAL CHASSIS § 
LEASING LLC, §
 §
 Plaintiff, §
 §
V. § No. 3:23-cv-1143-BN
 §
ZARIZ TRANSPORT INC, §
 §
 Defendant. §

## MEMORANDUM OPINION AND ORDER

Defendant Zariz Transport Inc. ("Zariz") filed an Emergency Motion to Vacate Maritime Attachments and Garnishments on December 7, 2023. *See* Dkt. No. 59. Trend Intermodal Chassis Leasing LLC ("Trend") filed a response [Dkt. No. 65; Dkt. No. 66], and Zariz filed a reply. [Dkt. No. 67]. Zariz filed a reply declaration with leave of Court. *See* Dkt. No. 67; Dkt. No. 70.

For the reasons explained below, the Court GRANTS Zariz's Emergency Motion to Vacate Maritime Attachments and Garnishments.

### Background

Trend filed a complaint in this court on May 18, 2023, claiming breach of maritime contract. *See* Dkt. No. 1 at 4-5. Trend alleged the court had admiralty and maritime jurisdiction under Fed. R. Civ. P. 9(h) and 28 U.S.C. § 1333. *See id.* at 1. Zariz filed an answer on July 14, 2023. *See* Dkt. No. 23.

Trend filed a motion for order for issue of process of maritime attachment and garnishment and motion for appointment for service of process of maritime

attachment and garnishment under Supplemental Rule B of the Federal Rules of Civil Procedure. *See* Dkt. No. 5; Dkt. No. 8. The Court reviewed the record and granted the motions, ordering that the Process of Maritime Attachment and Garnishment be issued to garnishee JP Morgan Chase Bank. *See* Dkt. No. 16; Dkt. No. 17. Trend then voluntarily dismissed JP Morgan Chase Bank. *See* Dkt. No. 20. Trend later requested the clerk again issue writs of maritime attachment and garnishment to JP Morgan Chase Bank, and then voluntarily dismissed JP Morgan Chase Bank from the suit again. *See* Dkt. No. 29; Dkt. No. 39. Trend also requested writs of maritime attachment and garnishment be issued to Kuehne + Nagel, which were executed October 9, 2023. *See* Dkt. No. 29; Dkt. No. 42.

On October 20, 2023, Trend filed a motion for summary judgment. *See* Dkt. No. 43. Zariz filed a motion to continue as a response, which the Court denied. *See* Dkt. No. 55; Dkt. No. 56. In its motion to continue, Zariz admitted it owed $573,989.57 to Trend, and "lack[ed] the funds to actively defend [the] case." *See* Dkt. No. 51 at 1.

While the motion for summary judgment was pending, Zariz then filed this emergency motion to vacate maritime attachments and garnishments, arguing that the Court lacked subject matter jurisdiction. *See* Dkt. No. 59. Trend filed a response, *see* Dkt. No. 65, and Zariz filed a reply, *see* Dkt. No. 70.

Under Rule E(4)(f), the Court held a hearing on December 28, 2023, at which both Trend and Zariz presented oral argument. *See* Dkt. No. 72.

## Legal Standards

I.     Rule E(4)(f) Hearings

Supplemental Admiralty Rule B states:

> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

FED. R. CIV. P. SUPP. R. B(1)(a).

> To properly attach property pursuant to Rule B, the plaintiff must establish: "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment."

*K Inv., Inc. v. B-Gas Ltd.*, No. 3:21-CV-00016, 2021 WL 3477356, at *2 (S.D. Tex. June 4, 2021) (internal citations omitted).

If the Court issues an attachment, "any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated." FED. R. CIV. P. SUPP. R. E(4)(f).

"The Rule E(4)(f) hearing 'is designed to satisfy the constitutional requirement of due process by guaranteeing to [the property owner] a prompt post-seizure hearing at which [the property owner] can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings.' [citation omitted] (quoting FED. R. CIV. P. ADM. SUPP. R. E(4)(f), Advisory Committee's Note to 1985 Amendment)." *K Inv.*, 2021 WL 3477356, at *2 (internal citations omitted) (cleaned up).

"At the Rule E(4)(f) hearing stage, the burden rests with the plaintiff to show that the requirements of Supplemental Rules B and E have been satisfied." *Knox v.*

*Hornbeck Offshore Servs.*, LLC, No. 3:19-CV-00181, 2019 WL 3202296, at \*2 (S.D. Tex. July 16, 2019).

"[D]istrict courts in this circuit have held that 'Rule E(4)(f) hearings are not for purposes of 'mak[ing] binding determinations of fact', but rather ... for 'merely holding that it is likely that alleged facts are true.'" *Peninsula Petroleum Far E. Pte. Ltd. v. Crystal Cruises, LLC*, No. 3:22-cv-241-L-BH, 2022 WL 17413572, at \*6 (N.D. Tex. Aug. 5, 2022) (internal citations omitted) (cleaned up); *see also Vinmar Int'l Ltd. v. M/T Clipper MAKISHIO*, No. CIV.A. H-09-3829, 2009 WL 6567104, at \*1 (S.D. Tex. Dec. 9, 2009) (the Rule E(4)(f) hearing "is not intended to resolve definitely the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant." (internal citations omitted)).

## II. Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The Court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

The Court will not assume it has jurisdiction. Rather, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be

established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)).

## Analysis

I.   Zariz's motion is not untimely because it concerns subject matter jurisdiction.

Because Zariz's motion challenges whether the Court has subject matter jurisdiction, the Court cannot accept Trend's arguments grounded in timeliness under the Court's scheduling order or suggesting that Zariz may have waived, conceded, or admitted that the Court has admiralty jurisdiction over this action.

"A defect in the district court's subject matter jurisdiction ... may be raised at any time by the parties or the court itself and cannot be waived." *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 290-91 (5th Cir. 1987). "When a requirement goes to subject matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented. Subject matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (cleaned up). "Nor can jurisdiction be conferred by conduct or consent of the parties." *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985). "Therefore, United States District Courts and Courts of Appeals have the responsibility to consider the question of subject matter jurisdiction sua sponte if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking." *Id.* (cleaned up; citing Fed. R. Civ. P. 12(h)(3)).

And a party's objections to subject matter jurisdiction "may be resurrected at any point in the litigation, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety." *Gonzalez*, 565 U.S. at 141. "A litigant generally may raise a court's lack of subject matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 576 (2004) (cleaned up). "Even if defendants failed to challenge jurisdiction at a prior stage of the litigation, they are not prohibited from raising it later," and "[even] a party ostensibly invoking federal jurisdiction may later challenge it as a means of avoiding adverse results on the merits." *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012) (cleaned up).

"When the jurisdiction of a federal court is challenged, that court has a duty to make the inquiries necessary to establish its own jurisdiction." *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990). And, "[w]hen the defendant challenge[s] the jurisdiction of the district court in an appropriate manner, that court has a duty of making further inquiry as to its own jurisdiction." *In re Gee*, 941 F.3d 153, 159 (5th Cir. 2019) (cleaned up).

"Once challenged, '[t]he party asserting jurisdiction constantly bears the burden of proof that jurisdiction does in fact exist.'" *Umrani v. Med. City of Dallas (Hosp.)*, No. 4:23-CV-1486, 2023 WL 8374752, at *1 (S.D. Tex. Dec. 4, 2023) (quoting *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017)).

And, on a Supplemental Rule E(4)(f) motion to vacate, "[t]he plaintiff has the burden of showing why the seizure should not be vacated." *World Fuel Servs.*

*Singapore PTE, Ltd. v. M/V As Varesia*, 727 F. App'x 811, 814 (5th Cir. 2018) (cleaned up).

Under Supplemental Rule E(4)(f), "[t]he Federal Rules of Civil Procedure do not impose any formal requirements for a post-seizure hearing, leaving the procedural details to local rules or the district court's discretion." *Id.* at 814-15; *see generally Unified 2020 Realty Partners, L.P. v. Proxim Wireless Corp.*, No. 3:11-cv-861-D, 2011 WL 2650199, at *1 (N.D. Tex. July 6, 2011) ("Since there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court. When subject matter jurisdiction is challenged, a court has authority to resolve factual disputes, and may devise a method to ... mak[e] a determination as to jurisdiction, which may include considering affidavits, allowing further discovery, hearing oral testimony, [or] conducting an evidentiary hearing." (cleaned up)). And the Supplemental Rule E(4)(f) "hearing is not intended to definitively resolve the dispute between the parties; rather, the [c]ourt must make a preliminary determination whether reasonable grounds exist for the arrest." *World Fuel Servs.*, 727 F. App'x at 814 (cleaned up).

But among the requirements for a valid attachment is that the plaintiff has a valid prima facie admiralty claim against the defendant for which jurisdiction lies under 28 U.S.C. § 1333. *See Preble-Rish Haiti, S.A. v. Republic of Haiti*, 558 F. Supp. 3d 430, 434 (S.D. Tex. 2021), *reconsideration denied*, No. 4:21-CV-01953, 2021 WL 4527452 (S.D. Tex. Oct. 4, 2021).

And that makes a challenge to the Court's subject matter jurisdiction under Section 1333, and specifically "whether the contracts [at issue] were 'maritime in nature' and would therefore provide a basis for asserting admiralty jurisdiction under 28 U.S.C. § 1333," a proper basis for a Supplemental Rule E(4)(f) motion to vacate. And, after affording the parties an opportunity to present evidence at the hearing and in the absence of factual disputes that are material to resolving the nature of the contracts at issue here and that the Court cannot resolve on the present record, the Court must fully determine and resolve the jurisdictional issue, notwithstanding the generally limited nature of the inquiry as to "whether reasonable grounds exist for the arrest." *See id.* at 434-36; *accord Alphamate Commodity GMBH v. CHS Eur. SA*, 627 F.3d 183, 184-88 (5th Cir. 2010); *Icon Amazing, L.L.C. v. Amazing Shipping, Ltd.*, 951 F. Supp. 2d 909, 910-17 (S.D. Tex. 2013); *cf. Bulk Trading S.A. v. Capex Eur. S.A.M.*, No. CIV.A.10-297, 2011 WL 1088762, at *1-*3 (E.D. La. Mar. 22, 2011).

The Court therefore concludes that this jurisdictional challenge need not and should not be construed as a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss. *Cf. Bulk Trading*, 2011 WL 1088762, at *2 (noting thing "Rule E(4)(f) provides the only procedural basis for vacating a maritime attachment").

And, because it is based on a challenge to the Court's subject matter jurisdiction, the motion to vacate should not be denied as untimely under the Court's scheduling order. *See generally Johnston v. United States*, 85 F.3d 217, 218 n.2 (5th Cir. 1996) ("The Johnstons also argue on appeal that the Government's motion to dismiss for lack of subject matter jurisdiction was untimely under the district court's

scheduling order. This point is meritless. It is well-settled that subject matter jurisdiction can be raised at any time or even sua sponte by the court."); *Harrell & Sumner Contracting Co. v. Peabody Petersen Co.*, 546 F.2d 1227, 1229 (5th Cir. 1977) ("In response to plaintiff's contention that defendants' motion to dismiss was not timely filed, we note briefly that under Rule 12(h)(3), Fed. R. Civ. P., the defense of lack of subject matter jurisdiction may be raised at any time by motion of a party or otherwise.").

II.     The Court does not have subject matter jurisdiction because the contract is not a maritime contract.

Zariz argues that, because the lease agreement is not a maritime contract, the Court does not have admiralty jurisdiction, and the maritime attachments and garnishments must be vacated. *See* Dkt. No. 61 at 4.

As discussed above, a plaintiff must have "a valid prima facie admiralty claim against the defendant" to attach maritime property under Rule B. *K Inv.*, 2021 WL 3477356, at \*2. And, if the plaintiff cannot meet this standard, the attachments must be vacated. *See Preble-Rish*, 558 F. Supp. 3d at 436 ("Because the contracts are not maritime in nature, Plaintiff has no valid prima facie admiralty claim against Defendants, and attachment under Rule B would be improper."). And, so, the key question is whether the lease agreements between Trend and Zariz are maritime in nature.

In determining whether a contract is maritime, the Court's analysis is governed by *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2004), holding that

the "principal objective" of maritime contracts must be maritime commerce. 543 U.S. at 15.

The United States Court of Appeals for the Fifth Circuit has interpreted the United States Supreme Court's decision in *Kirby* as developing a two-pronged test to determine if a contract is maritime: "1) is the contract one to provide services to facilitate the drilling or production of oil and gas on navigable waters, and (2) if so, whether the contract provides or the parties expect that a vessel will play a substantial role in the completion of the contract." *Preble-Rish*, 558 F. Supp. 3d at 435 (citing *In re Larry Doiron, Inc.*, 879 F.3d 568, 576 (5th Cir. 2018) (en banc)).

Applying *Doiron* to non-oil-and-gas contracts, the Fifth Circuit has explained that a maritime contract "(1) must be for services to facilitate activity on navigable waters and (2) must provide, or the parties must expect, that a vessel will play a substantial role in the completion of the contract." *Barrios v. Centaur, L.L.C.*, 942 F.3d 670 (5th Cir. 2019). Both parties agree that this holding is applicable in determining if their lease agreement is maritime. *See* Dkt. No. 65 at 12; Dkt. No. 61 at 7.

Zariz asserts that the lease agreement's primary purpose is to facilitate the trucking of containers over land and that the contract does not meet the test set out in *Barrios*. *See* Dkt. No. 61 at 7. Zariz further clarifies that its contracts with customers are for transporting ocean containers once on land, and that Zariz does not unload the containers off the vessels. *See* Dkt. No. 70 at 2, Dkt. No. 60 at 3.

Trend contends that Zariz's admissions and website information demonstrate that the principal objective of the contract is maritime commerce. *See* Dkt. No. 65 at 12. Trend provided the Court with a link to a video discussing Zariz's business and an affidavit of Trend's CEO, Ayman Awad. The video and affidavit establish that Zariz picks up ocean containers at ports and that it leases Trend's intermodal chassis for the sole purpose of transporting marine containers that arrive at ports by vessel. *See* Dkt. No. 66. And, at oral argument, Trend's counsel reiterated these facts, drawing the Court's attention to Zariz's discussion of marine commerce in Zariz's business materials.

Trend's statements of fact are correct. Zariz transports ocean containers from ports on intermodal marine chassis. And, as Trend emphasizes by citing the Federal Maritime Commission, chassis "are critical to moving intermodal shipping containers throughout the country." Dkt. No. 65 at 13.

But that does not mean that the primary objective of the contract is maritime.

While there is no Fifth Circuit precedent on this issue, other district courts facing similar facts have found that lease agreements for equipment to transport containers or goods over land are not maritime contracts. In *Mediterranean Shipping Co. (USA) Inc. v. Rose*, the defendant had a contract with the plaintiff to use the plaintiff's containers to transport goods over land. *See Mediterranean Shipping Co. (USA) Inc. v. Rose*, No. 08CIV.4304(DLC), 2008 WL 4694758, at *1 (S.D.N.Y. Oct. 23, 2008). The district court found that "the agreement is essentially a leasing arrangement allowing defendants to lease [plaintiff's] transportation equipment,

including containers, in order to carry out land-based deliveries pursuant to other contracts for the carriage of goods that are not at issue here. …. Because the primary objective of this contract is leasing equipment for land transport, and not maritime commerce, there is no admiralty jurisdiction over this dispute." *Id.* at *4. The Court further explained that "the fact that the same containers may have been used for a sea-based leg of transportation pursuant to other contracts with other parties does not alter the principal objective of the contract at issue here, which is for the use of containers for the purpose of land transportation." *Id.*

The United States District Court for the District of New Jersey applied this holding to a case with the same facts as the current case. In *Interpool, Inc. v. Four Horsemen, Inc.*, the Court found that a lease agreement for chassis to transport ocean containers over land was not a maritime contract. *See Interpool, Inc. v. Four Horsemen, Inc.*, No. CV162490MLCLHG, 2017 WL 522161 (D.N.J. Feb. 8, 2017). At plaintiff's request, the Court had issued writs of attachment to secure property under Supplemental Rule B. *See id.* at *5. When the Court's subject matter jurisdiction was challenged, the Court found that the "equipment at issue here was exclusively for land transportation" and that the "primary objective" of the contract was not maritime. *Id.* at *4.

The facts of this case and the current case are nearly identical. Both are suits claiming that the defendant breached a lease agreement for chassis by nonpayment and invoking the Court's admiralty jurisdiction in issuing writs under Supplemental Rule B. And both are suits involving transporting ocean containers over land on

leased equipment. Trend's only attempt to distinguish the cases in oral argument argued that the defendants in *Interpool* transported the containers from a different land-based location – the railhead – instead of the port. But this does not diminish *Interpool's* reasoning that lease agreements for equipment to facilitate land-based transportation are not maritime. *See id.* Notwithstanding Trend's efforts to distinguish the case, the Court finds the reasoning and conclusion of the decision in *Interpool, Inc. v. Four Horsemen, Inc.* persuasive and, applying the *Barrios* test, determines that the lease agreement between Trend and Zariz is not a maritime contract.

The Court is not persuaded to ignore the above cases because they are non-binding, particularly where Trend has not offered any binding precedent to the contrary. *See* Dkt. No. 65 at 15.

The Court is also not persuaded by Trend's argument that, because the United States Court of Appeals for the Eleventh Circuit has found chassis and containers can be maritime property, all contracts concerning chassis are maritime contracts. *See id.*; *Unitas Fin. Ltd. v. Di Gregorio Navegacao Ltda.*, No. 99-10262, 2000 WL 35795068 (11th Cir. Apr. 10, 2000). The court in *Interpool, Inc. v. Four Horsemen, Inc.* considered this argument and held that the *Unitas* holding does not mean "chassis are always maritime property," because the Eleventh Circuit "relied specifically on the contract at issue between those parties in making its determination." *Interpool*, 2017 WL 522161, at *4. And this Court agrees.

Trend argued for the first time in oral argument that the parties' expectations that a vessel would play a "substantial role" make the underlying contract maritime. *See Barrios*, 942 F.3d at 678-79. It is true that "the contracting parties' expectations are central." *In re Crescent Energy Servs., L.L.C. for Exoneration from or Limitation of Liab.*, 896 F.3d 350, 359 (5th Cir. 2018). But Trend's argument that the parties expected a vessel would transport the ocean containers, and so expected the vessel would play a substantial role in completion of the contract, has no basis in fact or law.

In determining expectations, courts have started by examining "the contractual obligations." *See id.* at 360. Although the contract here mentions vessels in the indemnity agreement for "death or for loss or damage to person, property, cargo, or vessels or otherwise" arising out of use of the chassis, Dkt. No. 60 at 12, the Court does not find anything in the contract indicating that the parties agreed a vessel would play a substantial role in completion of the contract, *see id.* at 6-16.

And, even if the parties' expectations here are unclear, "when the parties' expectations are unclear, courts may rely on evidence of the actual use of the vessel in determining whether a contract is maritime or nonmaritime." *Matter of Offshore Oil Servs., Inc.*, No. CV 21-1522, 2023 WL 2599557, at *10 (E.D. La. Mar. 22, 2023). And, for the reasons explained above, the use of the vessel here does not make the underlying contract maritime.

Neither does the fact that other federal courts in Texas have issued writs of attachment in similar cases confer subject matter jurisdiction in this case. As another judge in this Court has noted, "'district courts have often initially granted attachment

and then used Rule E hearings to determine whether the requirements of Rule B were in fact met.'" *Peninsula Petroleum*, 2022 WL 17413572, at *6 (cleaned up). Determining if there is a prima facie admiralty claim is part of deciding whether the requirements of Rule B were met. *See Preble-Rish*, 558 F. Supp. 3d at 434.

And Trend's argument that Zariz's admissions in its answer affect the analysis of subject matter jurisdiction is "legally flawed." *Dyna Torque Techs., Inc. v. Helix Energy Sols. Grp., Inc.*, No. 4:12-CV-1529, 2013 WL 1204927, at *4 (S.D. Tex. Mar. 20, 2013). As the judge in *Dyna Torque Techs., Inc.* explained, parties cannot stipulate that maritime law applies because "it is a party's burden to prove subject matter jurisdiction, not its right to declare it." *Id.*; *see also Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 786 (5th Cir. 2012) ("[Parties] may neither confer subject matter jurisdiction on the district court nor strip it of such jurisdiction by agreement or waiver.") (cleaned up).

Considering all of Trend's arguments, the Court finds that the contract is not maritime, and, so, the Court lacks subject matter jurisdiction and must vacate the writs of attachment and dismiss this action without prejudice. *See Ruiz v. Brennan*, 851 F.3d 464, 473 (5th Cir. 2017) (dismissal for lack of subject matter jurisdiction must be without prejudice).

III.    The Court will not stay the case pending appeal.

Trend argued for the first time in oral argument that the Court should stay vacating the writ pending Trend's filing an appeal with the United States Court of Appeals for the Fifth Circuit.

Trend argues that it will face irreparable harm if the writs are vacated because Zariz does not have the funds to cover their admitted debt. Trend also argues that the Court should stay the case because it is a case of first impression.

The Court first notes that a stay pending appeal is "'extraordinary relief' for which defendants bear a 'heavy burden.'" *Plaquemines Par. v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023) (cleaned up). "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (cleaned up).

In determining whether to issue a stay pending appeal, the Court must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. [*Id.* at 434.] The first two factors ... are the most critical. *Id.*

*Plaquemines*, 84 F.4th at 373.

The Court first will consider the likelihood of success on the merits. "To make the requisite showing under this element, the movant must demonstrate a strong case that it is 'likely to succeed on the merits ..., not [just] a 'mere possibility of relief.'" *Earl v. Boeing Co.*, No. 4:19-CV-507, 2021 WL 1080689, at *8 (E.D. Tex. Mar. 18, 2021). Trend has not met this burden.

Trend fails to provide any precedent holding that a contract for leasing intermodal chassis is maritime in nature. And Trend has failed to distinguish the

-16-

district court cases that have rejected its argument. *See Plaquemines*, 84 F.4th at 375

("It therefore cannot be said that defendants have shown a 'probability' of success

because they provide no cogent response to the district courts who have unanimously

rejected their novel refinery argument.") And so, Trend has not shown a likelihood of

success on the merits.

But a likelihood of success on the merits can be met when the party "present[s]

a substantial case on the merits when a serious legal question is involved and show[s]

that the balance of the equities weighs heavily in favor of granting the stay." *Id.*

(cleaned up). A serious legal question has "'far-reaching effects' or [is a] matter[] of

'public concern[ ]' that go[es] well beyond the interests of the parties." *Hernandez v.*

*Erazo*, No. 23-50281, 2023 WL 3175471, at *5 (5th Cir. May 1, 2023); *see, e.g., United*

*States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 40 (5th Cir. 1983) ("Whether Medicare

and Medicaid payments constitute federal financial assistance within the meaning of

the Rehabilitation Act is a serious legal question that could have a broad impact upon

federal/state relations.").

But, when a case concerns "whether the court below correctly applied

established legal standards to the facts of this case," it is not a serious legal question.

*Hernandez*, 2023 WL 3175471, at *5. The standards governing the lease agreement

in this case are well-established, and the only question is whether the Court correctly

applied the standards to the facts. And, so, Trend has not presented a serious legal

question, and this standard is inapplicable.

Trend's first impression argument can be addressed under the likelihood of success on the merits factor. Courts have found that defendants have submitted "a substantial showing of success on the merits" when a case presented a legal issue of first impression – there, one that "require[ed] an interpretation of a recent 2020 amendment to Louisiana law." *Fairway Vill. Condominiums v. Indep. Specialty Ins. Co.*, No. CV 22-2022, 2023 WL 4156819, at *3 (E.D. La. June 23, 2023). And, regarding the public interest, courts have considered whether "the Fifth Circuit's determination on [the] issue will have direct implications in numerous other … cases." *Id.* at *3-*4.

But courts have also noted that "the mere fact an issue is one of first impression is insufficient to demonstrate a party has a likelihood of success on the merits." *Martin v. LCMC Health Holdings, Inc.*, No. CV 23-411, 2023 WL 5173791, at *4 (E.D. La. Aug. 11, 2023). The Court is inclined to follow the *Martin* court and find that the fact that Trend will argue that there is an issue of first impression as to applying a set of facts to established legal standards (as opposed to a legal issue of first impression, such as interpreting a newly enacted law and its provisions) does not mean that Trend has shown a likelihood of success on the merits.

Trend also argues that it will suffer irreparable injury if the writs of attachment are vacated, as it will not receive the funds from Trend it contends are owed.

> Ordinarily, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). However, "[t]he absence of an available remedy by which the movant can later recover monetary damages ... may also be sufficient

to show irreparable injury." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464 (5th Cir. 1985)[.]

*Zehr v. Osherow*, No. 5:18-CV-355-DAE, 2019 WL 266973, at *3 (W.D. Tex. Jan. 17, 2019).

While Trend states that it will not receive payment from Zariz if the writs are vacated, the Court cannot conclude on the record in this case that there will not be an available remedy through which Trend can later recover monetary damages. While Zariz admitted that it lacked the funds to pay back Trend and defend the case in its motion to continue, Trend hired a new lawyer a few weeks later. *See* Dkt. No. 51; Dkt. No. 57. And, at oral argument, Zariz disputed the claim it had no money. And, so, the Court does not find Trend has shown irreparable injury.

Even if Trend has shown irreparable injury, Trend has not shown that any of the other factors weigh in favor of granting a stay. *See id.* at *8 ("[I]n spite of having shown an irreparable injury, Appellant has not satisfied his burden of showing: (1) likelihood of success on the merits; (2) that the stay will not substantially harm the other parties; or (3) that the stay will serve the public interest. Therefore, a stay is not warranted in this case." (cleaned up)).

Courts must also balance whether there is harm to other interested parties and whether it is in the public interest to grant a stay. As the Fifth Circuit has explained, "[movants] must show that the requested stay will not harm the opposing [parties] or other interested parties." *All. for Hippocratic Med. v. Food & Drug Admin.*, No. 23-10362, 2023 WL 2913725, at *19 (5th Cir. Apr. 12, 2023). As the United States District Court for the District of Connecticut stated when considering

a stay of vacating marine attachments pending appeal, there is a strong public interest "not to have the Court exercise authority over parties over whom the Court lacks jurisdiction." *PSARA Energy, LTD v. SPACE Shipping, Ltd.*, No. 3:17-CV-01811(VAB), 2017 WL 6629267, at *4 (D. Conn. Nov. 30, 2017) (denying a stay pending appeal).

The Court is unwilling to continue holding a garnishee's approximately $138,000 without sufficient reason, particularly when Trend has failed to show a likelihood of success on the merits. *See* Dkt. No. 65 at 16. And Trend has not presented any other arguments showing the public interest supports granting a stay. And, so, the Court finds that a stay is not warranted because Trend has failed to show that any of the factors weigh in favor of the Court issuing a stay.

## Conclusion

The Court concludes it does not have subject matter jurisdiction and so GRANTS Zariz's motion to vacate maritime attachments and garnishments. The case will be dismissed without prejudice.

SO ORDERED.

DATED: January 10, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE