IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Trend Intermodal Chassis Leasing LLC, | § | |
| | § | |
|   Plaintiff, | § | |
| | § | Civil Action No.: 3:23-cv-01143-BN |
| v. | § | |
| | § | IN ADMIRALTY, Rule 9(h) |
| Zariz Transport, Inc., *et al.*, | § | |
| | § | |
|   Defendant and Garnishees. | § | |

## TREND'S RESPONSE OPPOSING ZARIZ' MOTION CONCERNING FED. R. CIV. P. 62(a)

At the December 28, 2023 motions hearing on Zaris' motion to vacate, Zariz counsel stated as follows:

> MR. SALHANICK: If I could just say, there is nothing in the record establishing the fact that my client doesn't have any money. My client has some money. They have a number of debts they have to pay. They are trying to pay all their debtors.
>
> Besides the fact that not having any money -- case law is clear on that -- is also not sufficient to establish irreparable harm, the fact that, you know, the debtor is otherwise unable to pay their debts. But it is untrue and a statement not supported by anything in the record that my client doesn't have any money. They do, and they are trying to pay all their debtors in due course.

Hearing Transcript, Appendix ("Apx.") Exh. A, at 33 ll. 24-25, 34, ll. 1-11.

Based on this statement, this Court (Memorandum Opinion and Order, ECF 74, at 19) concluded that:

> While Zariz admitted that it lacked the funds to pay back Trend and defend the case in its motion to continue, Trend hired a new lawyer a few weeks later. *See* Dkt. No. 51; Dkt. No. 57. And, at oral argument, Zariz disputed the claim it had no money. And, so, the Court does not find Trend has shown irreparable injury.

This would not be the first time a client has kept its – new - lawyer unformed about the client's financial situation.

Trend's Response Opposing Zariz' Motion Concerning Fed. R. Civ. P. 62(a)      - 1 -

This Court – and Zariz new lawyer - already knew of the $573,989.57 that Zariz agrees it owes Trend.

But, what Zariz apparently had not told its new lawyer is that at the time of the December 28, 2023 oral argument before this Court – and very shortly thereafter – as set out in **Apx. Exh. B** (presenting each final judgment and suit) – Zariz owed **final judgment creditors** a principal amount of  **$3,596,945.77** – including a final judgment pending since September 14, 2023 of $624,095.61 – and a further December 13, 2023 judgment ( which is joint and several against both Zariz and its principal Yaakov Guzelgul) of  $2,198,346.98.

Neither had Zariz apparently told its new lawyer that as of the December 28, 2023 hearing there were about $2,000,000 in pending suits against Zariz including a further one against Mr. Guzelgul jointly) – and a $27,780 Federal tax lien pending since November 7, 2023 – as set out in Apx. Exh. B hereto.

As of this writing, Zariz was not defending against any of those suits, nor is there any public record of opposition to the Federal tax lien.

So, all totaled at present, as detailed in **Apx. Exh. B hereto**,  there are final judgments, the $573,989.57 agreed amount owed Trend, and pending suits, claims and tax lien against Zariz totaling **$6,241,025.66**.  These are just the amounts Zariz owes, which are subject to public suit or filing.

Zariz is not despite what Zariz may have told its new lawyer, paying its creditors in "due course."   Despite what Zariz may have told its new lawyer, Zariz has no money:  also as summarized by and exhibited to **Apx. Exh. B**, Zariz two days after the December 28th oral argument, December 30, 2023, the Palm Beach County, Florida issued final judgment evicting Zariz from Zariz' Boca Raton headquarters.

Among Zariz' creditors are what appear to be all or most all of Zariz' other chassis lessors and financers: Interpool/Trac (final judgment October 5, 2023 for $678,881.17), Wells Fargo Equipment Finance ( final judgment December 13, 2023 for $2,198,346.98), Direct Chassislink (demand for $334,998.89, suit filed November 9, 2023) and Flexi-Van (demand for $334,998.89, suit filed November 9, 2023).

Common ground in briefing and at the December 28th oral argument, is that intermodal marine chassis are essential for Zariz' operations. Zariz has failed – for months – to pay its chassis providers. Zariz cannot continue in operation – if it is operating at all – without chassis.

Neither can Zariz continue to operate without access to marine terminals. Zariz has failed to pay for this access, also – at least for its New Jersey operations: see the New Jersey court complaints against Zariz by Evergreen Shipping Agency, Genset Pool and Ocean Network Express included with Appx. Exh. B hereto.

Garnishee Kuehne + Nagel (*see* **Apx. Exh. C hereto**, correspondence from Kuehne + Nagel counsel) since at least November 1, 2023 holds $132,781.16. That was after Kuehne + Nagel had completed final drayage services and concluded business dealings with Zariz. *Id*.

$132,781.16 released to be spread across (if that's what actually happens – Zariz has many secured creditors including Mr. Guzelgul, *see* **Apx. Exh. D hereto** ) **$6,241,025.66** will make no difference to whether Zariz continues to operate: the fact is, it won't and can't.

As this Court notes (Opinion, ECF 74 at 18-19):

However, "[t]he absence of an available remedy by which the movant can later recover monetary damages ... may also be sufficient to show irreparable injury." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464 (5th Cir. 1985)[.]

*Zehr v. Osherow*, No. 5:18-CV-355-DAE, 2019 WL 266973, at *3 (W.D. Tex. Jan. 17, 2019).

At December 28th, 2023's argument, given Zariz' agreement (including by its new lawyer) that Zariz owed Trend at least the long-overdue $573,989.57, had it not been for Zariz un-informing its new lawyer, this Court should have instead – just based on the admitted $573,989.57 – been able to conclude that (to paraphase this Court's Opinion and Order "on the record in this case [ ] there will not be an available remedy through which Trend can later recover monetary damages."  (Opinion, ECF 74 at 19).

That Zariz had failed to inform its new lawyer of what by the December 28, 2023 oral argument were **over $3 million of final, unpaid judgments**, should be of note to the Court, especially as the Court considers any Zariz "equity" claim here or otherwise.

Considering that the $573,989.57 had been overdue to Trend for months – which was not just "in the record" but agreed by all, it seemed obvious to Trend at the December 28, 2023 oral argument that Trend would not be paid anything except for the garnished $132,781.16.  Thus, Trend had not by then, as it did after this Court's January 10, 2024 Order, dived into the various court records which Trend presents here, confirming Zariz' magnitudes larger debt.

After all, Zariz could simply have agreed to pay the $132,781.16 to Trend in part satisfaction of the amount Zariz agreed to be owed – with as Zariz apparently told its new lawyer – other money to pay the balance to Trend and other creditors.

With this Court's January 10, 2024 Opinion relying on Zariz new lawyer's comment (which comment did not square with Trend's experience – presented to this Court in summary judgment briefing to this Court, of Zariz' repeated settlement agreement breaches and nonpayment) – Trend dove into the various Palm Beach County, New Jersey, Chatham County, Federal, and other court dockets – to find that in fact, Zariz' long-overdue debts are a magnitude of the $573,989.57 Zariz

agrees it owes Trend – and that – Zariz has no ability to pay (certainly not its final judgment creditors) in "due course."

Zariz' actual financial situation, non-operation, and the fact that Kuehne + Nagel since at least November 1, 2023 has concluded its business with Zariz (which apparently cannot further do business because it neither has chassis nor marine terminal access, at least in New Jersey), in fact make clear that, $132,781.16 is the only amount that Trend ever might have available to pay part of what Zariz owes Trend.  There clearly is for Trend an "absence of an available remedy by which the movant can later recover monetary damages . . . ." *Zehr*, quoted by this Court and *supra*.

The situation here is a central reason for the Fed. R. Civ. P. 62(a) stay and generally in a Supplemental Rule B admiralty maritime attachment and judgment case.  Federal Rule of Appellate Procedure Rule 8 ("Stay or Injunction Pending Appeal") states in pertinent part:

(a) Motion for Stay.

> (1) Initial Motion in the District Court. A party must ordinarily move first in the district court for the following relief:
>
> > (A) a stay of the judgment or order of a district court pending appeal . . ..

If the Supplemental Admiralty Rules, and Fed. R. Civ. P. 62(a) operated so that there was no Fed. R. Civ. P. 62(a) stay after a Supplemental Rule E(4)(f) "prompt" hearing – even if there could be a motion in the District Court for stay[1] (after the garnish funds were long gone) – there

---

[1] The Court (Opinion, ECF 74, at 15) writes that:

> Trend argued for the first time in oral argument that the Court should stay vacating the writ pending Trend's filing an appeal with the United States Court of Appeals for the Fifth Circuit.

would not be time for the Federal Rule of Appellate Procedure Rule 8 motion – which in most cases, has a stay motion before the District Court as its prerequisite.

Instead, somehow, in the nanosecond (if its that long) – under Zariz' argument – between the District Court vacating the writ – Trend would have not only had to move the Court of Appeals under Rule 8 "show[ing] that moving first in the district court would be impracticable" but also with full briefing supporting the stay. The Court of Appeals then within that same nanosecond would have to stay – or again – the garnished funds (and reason for stay) long gone.

That is not how the Rules – general and Supplemental Admiralty and Maritime – work.

Zariz should have disclosed to the Court that *Alyeska Pipeline Serv. Co. v. Vessel Bay Ridge*, 703 F.2d 381, 385 (9th Cir. 1983) has – at least in any opinion accessible on Westlaw – been cited by any court for the "immediate release/ Fed. R. Civ. P. 62 override" Zariz argues. Instead, courts considering the question all have agreed with then Circuit Judge, now Mr. Justice Kennedy, writing in concurrence in *Alyeska Pipeline*:

> It is not necessary to find an inconsistency between Fed.R.Civ.P. 62(a) and the applicable admiralty rule, Fed.R.Civ.P. E(5)(c). The declaration in E(5)(c) that security shall be released "as of course" does no more than authorize the clerk to release security without a separate order of the court once the dismissal or continuance has become enforceable. The time for enforceability of a judgment, however, should be determined by Rule 62(a), in admiralty cases where security is posted, just as is true in other cases. Rule 62(a)

---

Correct of course: at the time of the December 28, 2023 oral argument, there was no "judgment or order" of the Court. It was not time for Trend to make a stay motion: had Trend made the motion, it would have been premature.

Thus the further reason for a Fed. R. Civ. P. 62(a) stay where there is a Supplemental Rule E(4)(f) hearing and resulting "judgment or order." If the working of the Supplemental Rules was immediately to release the garnishment, that would require unnecessary (and premature) stay motions anticipating an order which might never issue, or, raising grounds which only guess at what grounds the Court's order might, later be.

provides for an automatic ten day stay provision, a stay which serves the purpose of protecting the rights of appellants. To interpret the rules consistently in this respect is not only good practice, but also avoids the unfortunate result caused by the court's holding. In future cases, the district court and a court clerk can cause substantial rights of the parties to disappear before there is resort to the appellate system. The suggestion by the majority that the appellant can post a bond when he is the party who seeks security for the ultimate enforcement of his judgment is not a satisfactory answer to the problem the majority's interpretation presents.

*Alyeska Pipeline*, 703 F.2d at 386 (Kennedy, J. Concurrence).
Consequently, the U.S. District Court in *Status Int'l S.A. v. M&D Mar. Ltd.*, No. 97 CIV.

9313 (SAS), 1998 WL 108007, at *4, n.2 (S.D.N.Y. Mar. 11, 1998)(15 years after *Alyeska*

*Pipeline*) writes:

> In *Alyeska Pipeline Serv. Co. v. Vessel Bay Ridge*, 703 F.2d 381 (9th Cir.1983), the court reached a different conclusion. There, the court held that "[s]ince the Rule 62(a) automatic ten-day stay is inconsistent with Rule E(5)(c), Rule 62(a) must give way." Id. at 385. The Opinion neither parsed the language of the Rule nor provided any other analysis supporting this result. For the reasons set forth in this opinion, I respectfully disagree with the holding in *Alyeska*.

The District Court with this writes:

> Similarly, M & D's favored interpretation of Rule E(5)(c), if accepted, would raise the specter of meaningless appeals, as the owners of attached property could remove the property from the Court's jurisdiction immediately following the entry of a dissolution order. To avoid transforming appellate review of dissolution orders into the "empty rite" that the Swift Court's interpretation of § 1291 sought to avoid, Rule E(5)(c) cannot displace the ten-day stay imposed by Rule 62(a). [fn2]
>
> Accordingly, M & D may not remove its funds from the Court's registry until 10 days after the entry of the judgment vacating the Attachment Order, as measured by Fed.R.Civ.P. 6(a). [fn3 Plaintiff's time to appeal will begin to run when this final judgment is entered.]  Because M & D should again have assets located within this district, M & D and Global's motion to dismiss is denied, with leave to renew.

Zariz' Appendix [ECF 77, at 30-32] – sets out the above opinion, and:

> An order to vacate a Rule B attachment is subject to the restrictions of Rule 62(a) of the Federal Rules of Civil Procedure.10 Specifically, Rule 62(a) states, "[N]o execution may issue on a judgment, nor may proceedings be taken to enforce it, until 10 days have passed after its entry." Therefore, during the ten-day period following issuance of an order to vacate, a party may not seek an order that would execute and enforce the vacatur

>by releasing attached assets. This ensures that the order to vacate does not disturb the status quo and nullify the plaintiff's appellate rights by allowing the removal of seized assets from the District.11

*Rizzo-Bottiglieri de Carlini Armatori S.P.A. v. Indus. Carriers, Inc.*, No. 08 CIV.8391 (SAS), 2008 WWL 4615854, at *1 (S.D.N.Y. Oct. 14, 2008)(emphasis in Appendix text); and also:

>Accordingly, Shipcare's motions to vacate the attachments by Dominion (dkt. no. 23 in 06-7682) and Armada (dkt. no. 8 in 06-7696) are denied. Dominion's motion for a turnover order (dkt. no. 36 in 06-6854) is denied as premature in light of the ten-day stay provided for in Fed.R.Civ.P. 62(a) and because Armada has not had the opportunity to appeal the Court's November 21, 2007 order. Counsel shall confer and inform the Court promptly of how they propose to proceed.

*Dominion Bulk Int'l, S.A. v. Naviera Panoceanica, S.A.C.*, No. 06 CIV. 6854 (LAP), 2008 WL 2736013, at *6 (S.D.N.Y. July 8, 2008)(emphasis in Appendix text).

Trend counsel had provided Kuehne + Nagel counsel with these opinions – which Kuehne + Nagel counsel in turn sent on to Zariz counsel (as set out in Zariz' Appendix). In addition:

>Moreover, as Rapture correctly points out, the 10-day automatic stay in Rule 62(a) applies to a judgment vacating an ex parte maritime attachment. See Status Int'l S.A. v. M & D Mar. Ltd., No. 97 Civ. 9313(SAS), 1998 WL 108007, at *4 (S.D.N.Y. Mar. 11, 1998). Therefore, execution on the Clerk's Judgment vacating the attachment is stayed until September 15, 2006, which is 10 days from the date of entry on the docket, excluding weekends and Labor Day. See Fed.R.Civ.P. 6(a), Local Civil Rule 6.4.

*Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil*, No. 06 CIV. 5296 (JFK), 2006 WL 2521409, at *1 (S.D.N.Y. Aug. 30, 2006).

Under the current Fed. R. Civ. P. 62(a), the automatic stay is 30 days.

Zariz, although aware (its appendix includes them) of these multiple opinions, cannot and makes no effort to distinguish them and there is no distinction. The Fed. R. Civ. P. 62(a) stay operates here, and there is no reason to shorten or eliminate it, certainly not in any equity, starting with, Zariz failing to inform its new counsel, who if informed would have disclosed to

the Court, Zariz' inability to pay creditors in any course much less "due course."  The stay of release of $132,781.16 does not "destroy" Zariz' business, which Zariz itself already had destroyed months earlier by failing to pay creditors multiple larger amounts, leading to multiple larger judgments outstanding, now, for months.

This Court considering whether there should be a stay, did not have the benefit of the Fifth Circuit's most recent decision on maritime contract jurisdiction, *Earnest v. Palfinger Marine, et al*., **Apx,. Exh. E hereto**, issued January 11, 2024, the day after this Court's January 10th Opinion.  The Court January 11, 2023 in *Palfinger Marine* (at 14) writes:

> The *Doiron* test itself, though, does not refer to whether a vessel will be used.  It focuses on whether the contract provides or the parties expect "a vessel will play a substantial role in the completion of the contract."  *Doiron*, 879 F.3d at 576 (emphasis added).  **The *Doiron* test allows a finding that a contract is maritime when a vessel is not the object of the contract**.  It does not require the opposite finding when the maintenance and repair of vessels are the purposes of the contract, as such are traditional maritime activities.  *See Kossick*, 365 U.S. at 735; 1 Benedict on Admiralty § 182.

(Emphasis added).

Trend recognizes that under *Plaquemines Par. v. Chevron USA, Inc*., 84 F.4th 362, 373 (5th Cir. 2023), cited by this Court, "the Court must consider" (Opinion, ECF 74):

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. [Id. at 434.] The first two factors ... are the most critical. *Id.*

*Plaquemines*, 84 F.4[th] at 373.  As the Court states further:

> Importantly,
>
> on motions for stay pending appeal the movant need not always show a "probability" of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay.
>
> *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A 1981) (emphasis added).

*Plaquemines Par.*, 84 F.4th at 373.  "Irreparable injury is, along with likelihood of success, one of the two most important *Nken* factors."  *Id.* at 376.  There is no (much less substantial) harm to any "other interested party" here (except to Trend if the garnished funds are released), and although *Plaquemines* makes clear that public interest is a less important factor (if it were to apply here at all),

> the public interest will be served by protecting [Trend] from irreparable harm and maintaining the status quo. Accordingly, the fourth factor weighs heavily in favor of granting the stay.

*Crescent Towing & Salvage Co. v. M/V AMERICANA*, No. CIV.A. 11-131, 2011 WL 5119034, at *3 (E.D. La. Oct. 27, 2011)(considering whether to stay Supplemental Admiralty Rules interlocutory sale); see *Odeco Oil & Gas Co. v. Bonnette*, No. CIV. A. 92-23, 1995 WL 45865, at *2 (E.D. La. Feb. 2, 1995)(granting stay in admiralty limitation of liability case); see also Wansley v. Mississippi Dep't of Corr., No. 4:10-CV-149-CWR-FKB, 2013 WL 3168261, at *2 (S.D. Miss. June 20, 2013)(considering the "public interest" factor for stay; "At best, the Court finds this factor neutral.").

Trend submits – particularly as it is clear from Zariz' financial situation that Trend will not recover anything but for the garnishment – and thus is irreparably injured by release, that it has "a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Id*. at 373.

Trend may still – given that it is still within 28 days following this Court's January 10, 2024 Order (to/including February 7, 2024) – move under Fed. R. Civ. P. 59, which suspends the finality of this Court's Opinion and Order for appeals purposes.  *See Draucker v. Texas*, No. 3:23-CV-89-S-BN, 2023 WL 5826871, at *1 (N.D. Tex. Aug. 3, 2023), *report and*

*recommendation adopted*, No. 3:23-CV-0089-S-BN, 2023 WL 5826972 (N.D. Tex. Sept. 8, 2023).   A Rule 59 motion:

> amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact.

*Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).  Given the Court's reliance on new Zariz' counsel, unformed by Zariz, there certainly is a manifest error of fact and newly discovered evidence, and even under *Palfinger* Marine an intervening change in controlling law.  Fed. R. Civ. P. 59(d) (" New Trial on the Court's Initiative or for Reasons Not in the Motion") also provides that:

> No later than 28 days after the entry of judgment, **the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion**. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

(Emphasis added).  Consequently the Court also may "on its own" to/including February 7, 2024 – including for the grounds which Trend presents in this Response - also vacate its January 10, 2024 Order and Opinion.

Or, having presented its stay motion to this Court and this Court denying the motion, Trend may still, under Federal Rule of Appellate Procedure 8, move for a stay; with this the time for Trend to note any appeal does not run until Friday, February 9, 30 days after this Court's January 10, 2024 Opinion and Order

The 28 day time for a Rule 59 motion or order  – and 30 day time for noting an appeal ( and moving for a stay) both have not run, and this is the further reason for the Fed. R. Civ. P. 62(a) 30 day stay, which as opinions consistently have held, applies here.  There is no reason for this Court to order otherwise.

This Court now should deny the motion.

Dated: January 19, 2024.

Respectfully Submitted,

| | |
|---|---|
| Scott R. Wiehle<br>State Bar No. 24043991<br>scott.wiehle@kellyhart.com<br><br>KELLY HART & HALLMAN LLP<br>201 Main Street, Suite 2500<br>Fort Worth, Texas 76102<br>Telephone: (817) 332-2500<br>Facsimile: (817) 878-9280 | /s/  J. Stephen Simms<br>J. Stephen Simms (admitted *pro hac vice*)<br>Simms Showers LLP<br>201 International Circle, Ste. 230<br>Baltimore, Maryland 21030<br>Telephone:     (410) 783-5795<br>Facsimile:      (410) 510-1789<br>jssimms@simmsshowers.com |

Counsel for Trend Intermodal Chassis Leasing LLC

### CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2023, I caused the foregoing to be filed on the Court's CM/ECF system for electronic on all counsel of record.

 /s/ J. Stephen Simms
J. Stephen Simms