IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Trend Intermodal Chassis Leasing LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No.: 3:23-cv-01143-BN |
| v. | § | |
| | § | IN ADMIRALTY, Rule 9(h) |
| Zariz Transport, Inc., *et al*., | § | |
| | § | |
| Defendant and Garnishees. | § | |

**APPENDIX TO
TREND'S RESPONSE OPPOSING ZARIZ'
MOTION CONCERNING FED. R. CIV. P. 62(a)**

<u>**Page**</u>

**Exhibit A**:   Transcript, Motions Hearing, December 28, 2023           00001

**Exhibit B**:   Summary of Zariz Final Judgments, Suits, Federal Tax Lien
                And Admitted Amounts, Total $6,241,025.66              00036

**Exhibit C**:   Message from Kuehne + Nagel Counsel Confirming Amount      00486
                Held and that Kuehne + Nagel Has Concluded Business Dealings
                With Zariz, November 1, 2023

**Exhibit D**:   UCC Filings, Secured Debtors of Zariz                  00487

**Exhibit E**:   *Earnest v. Palfinger Marine, et al* , U.S. Court of Appeals for the   00487
                Fifth Circuit, No. 22-30582, Opinion Filed January 11, 2024

Dated: January 19, 2024.

Respectfully Submitted,

Scott R. Wiehle                     KELLY HART & HALLMAN LLP
State Bar No. 24043991              201 Main Street, Suite 2500
scott.wiehle@kellyhart.com          Fort Worth, Texas 76102
                                    Telephone: (817) 332-2500

Facsimile: (817) 878-9280

/s/  J. Stephen Simms
J. Stephen Simms (admitted *pro hac vice*)
Simms Showers LLP
201 International Circle, Ste. 230
Baltimore, Maryland 21030
Telephone:     (410) 783-5795
Facsimile:     (410) 510-1789
jssimms@simmsshowers.com

Counsel for Trend Intermodal Chassis Leasing LLC

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2023, I caused the foregoing to be filed on the Court's

CM/ECF system for electronic on all counsel of record.

/s/ J. Stephen Simms
J. Stephen Simms

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TREND INTERMODAL CHASSIS LEASING LLC,

      Plaintiff

v.                        NO.: 3:23-cv-01143-L
                        IN ADMIRALTY, Rule 9(h)

ZARIZ TRANSPORT, INC.,

      Defendant


KUEHNE + NAGEL, INC.
MEDLINE INDUSTRIES, LP

      Garnishees

MOTION HEARING
BEFORE THE HONORABLE DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE
DECEMBER 28, 2023

A P P E A R A N C E S

For the Plaintiff:

    J. Stephen Simms
    SIMMS SHOWERS, LLP
    201 International Circle - Suite 230
    Baltimore, MD  21030
    410.783.5795
    Email: jssimms@simmsshowers.com

For the Defendant:

    David Salhanick
    A.Y. STRAUSS, LLC
    290 West Mt. Pleasant Avenue - Suite 3260
    Livingston, NJ  07039
    973.425.5548
    Email: dsalhanick@aystrauss.com

COURT REPORTER:  SHAWNIE ARCHULETA, TX CCR No. 7533
                 1100 Commerce Street
                 Dallas, Texas 75242
proceedings reported by mechanical stenography,
transcript produced by computer.

SHAWNIE ARCHULETA, CSR/CRR
FEDERAL COURT REPORTER - 214.753.2747
shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com

00001

1                  (In open court at 10:04 a.m.)

2                  THE COURT:  Good morning.

3                  We're here in Case Number 3:23-CV-1143-BN,

4    Trend Intermodal Chassis Leasing versus Zariz

5    Transport, Inc., and I will take appearances for

6    Trend.

7                  MR. SIMMS:  Good morning, Your Honor,

8    Steve Simms for Trend.

9                  THE COURT:  Mr. Simms.

10                 And for Zariz?

11                 MR. SALHANICK:  David Salhanick, A.Y.

12   Strauss, on behalf of Zariz.

13                 THE COURT:  Good morning.  Thank you-all

14   for both being here.

15                 So this is a hearing on Zariz's Motion to

16   Vacate Attachments.  Have y'all talked about order

17   of proceedings?  I mean, it's Zariz's motion, but

18   Trend has the burden, so I don't know who wants to

19   go first.

20                 MR. SIMMS:  Your Honor, I think it is

21   Trend's burden.  Trend goes first.

22                 THE COURT:  That makes sense to me.  Very

23   good.

24                 MR. SIMMS:  Okay.  So what I'd like to

25   start with is the video, Zariz video.  It's 18

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00002**

1 minutes, 31 seconds long.  I want to make sure that

2 everybody gets a fair shake on this, rather than

3 just pick out different portions, although I can

4 pick out different portions if that's what the Court

5 prefers, or we can watch the whole thing.

6            THE COURT:  This is the Zariz video you

7 provided the YouTube link to?

8            MR. SIMMS:  Yes, sir.

9            THE COURT:  I have watched it.  And so if

10 you want to -- I'm assuming your counterpart has

11 watched it as well.  So if you want to just

12 highlight portions of it, that will be fine with me.

13            MR. SIMMS:  Okay.  Let's start.

14            (Video Played.)

15            MR. SIMMS:  And that was up to around 1:50

16 on this.  And I want to skip forward to 4:50 or

17 thereabouts.

18            All right.  Here we go.

19            (Video played.)

20            MR. SIMMS:  Let's skip forward to around

21 13:59.

22            There we go.  Okay.

23            (Video Played.)

24            MR. SIMMS:  I will stop there.  And I also

25 want to continue to set the scene.  Let's see.  And

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00003**

1   I'm pulling up the home page of Zariz Transport,

2   which focuses on maritime operations.

3       You've seen a lot of maritime operations,

4   lots of ships, lots of ocean containers that are

5   essential maritime commerce.  And we presented a

6   number of case laws -- case law that confirm that

7   ocean containers are maritime property.  And

8   Mr. Awad's affidavit also confirms, again, that

9   chassis are maritime property.  Why?  Because they

10   are used for nothing else but to move ocean

11   containers to -- in maritime commerce.

12       Now, I want to hold that -- those pictures

13   in Your Honor's mind as we look at where we are

14   schedule-wise with Your Honor's schedule.

15       So this is a motion pursuant to Rule

16   E(4)(f).  And the Court's scheduling order was very

17   clear, whether it's a dispositive motion or whether

18   it's a nondispositive motion, the motion had to be

19   filed back in October, and it wasn't.

20       Now, was it any mystery -- apparently

21   not -- to Zariz what it says it does?  No.  So

22   the -- first, there's -- the motion is untimely.

23   But absolutely agree, of course, 12 -- 12(h) is very

24   clear that the Court itself can bring up

25   jurisdiction at any time, but of course the Court

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00004**

1    was not doing that.

2            Also what Zariz could do is to make a

3    12(b)(1) motion, which arguably wouldn't be subject

4    to the schedule.  But that's a whole different set

5    of criteria; that is, there's briefing, there's

6    potentially evidence, those sorts of things.  But

7    here we are on an expedited emergency basis to hear

8    this motion.

9            So the Court should consider, first,

10   whether it's a proper E(4)(f) motion, given the

11   Court's scheduling that was very clear, including

12   the possibility of sanctions if it wasn't followed.

13           So if this is a 12(b)(1) motion, and it --

14   and it can be made at any time, and of course Your

15   Honor has written a good deal on that in a couple of

16   tax protestor cases.  The one I'm -- I'm -- I've got

17   two that -- that will immediately come to mind.  The

18   *Firearms* case, where the Court writes -- and this

19   is, oh, gosh, at 2020 Westlaw 8093569, that the

20   5th Circuit recognizes a distinction between a,

21   quote, facial attack -- this is under 12(b)(1) --

22   which is based solely on a pleading and a factual

23   attack to jurisdiction.

24           And skipping down in the language, "the

25   attack is presumptively 'facial'" -- and again, when

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00005**

1    we look at the way that this motion is set up,

2    that's the only fair way that it is, because if it

3    were a factual attack, the Court would be receiving

4    evidence and the whole business.  But that's not

5    what this is about, and I will talk about the

6    hearing standards in a second -- "all of which are

7    presumed to be true."

8           And so in the complaint -- and the Court

9    reviewed the complaint before issuing the writs --

10   the -- Trend sets out that it's a maritime contract;

11   there's maritime property that's used only for the

12   transport of containers in maritime commerce.

13          And -- and so the question is on a factual

14   attack under 12(b)(1), if that's what we're really

15   here doing, is, is there no possible thing that

16   Trend can -- can allege that is outside of -- it

17   puts -- it puts it in maritime jurisdiction.  Well

18   of course we've seen it.  Look at this.  This is it

19   right here.  This is maritime jurisdiction.  This is

20   what Zariz does with these chassis.

21          Now, take a propeller.  If you go

22   around -- you could probably go around Dallas, which

23   isn't even near a seaport, but you could probably

24   find a seafood restaurant with a propeller next to

25   it.  Well, it's not maritime property, it's a

SHAWNIE ARCHULETA, CSR/CRR
FEDERAL COURT REPORTER - 214.753.2747
shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com

00006

1  decoration.  Okay?  These are decorations.  These

2  are not being run, like in the *Four Horseman* case,

3  from a land-based facility outside the port to a

4  rail base, to a railhead.  That's not what these are

5  used for.  That's not what Zariz is using it for.

6  That's not what they are saying their operation is

7  about.

8         So if you are applying the 5th Circuit

9  standards, if what we are really doing here is

10 12(b)(1) on the Court's own initiative to examine

11 jurisdiction, then we're there.  We've alleged

12 that -- alleged maritime jurisdiction, and that's

13 all -- that's the only place that we need to be now.

14        The other case that -- that Your Honor had

15 was the *Davis* case, and the -- again, another tax

16 protestor case.  And you looked at whether the claim

17 was wholly insubstantial and frivolous regards --

18 requires asking whether it is obviously without

19 merit, and this is 201 [sic] Westlaw 3353969.

20        Well, the jurisdiction has been alleged

21 affirmatively and distinctly by Trend here.  And

22 other courts, as we point out in some districts, two

23 judges who are strong maritime judges have looked at

24 it just like Your Honor has and has said, yes, this

25 is a prima facie case under Rule B.

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00007**

1      So on the question of -- of, you know,
2  what -- what we do here, there's a recent opinion in
3  *Peninsula Petroleum*, a -- a case with a report and
4  recommendations by Judge Ramirez just down the hall
5  adopted by Judge Lindsay.  And the standard -- and
6  this is at 2022 Westlaw 17413572, *Peninsula v.*
7  *Crystal*, Judge Ramirez writes:  District courts in
8  this circuit have held that issuing E(4)(f)
9  hearings -- if that's what we're doing -- are not
10 for the purposes of making binding determinations of
11 fact, but for merely holding that it is likely that
12 the alleged facts are true.  That's all we're doing
13 here.
14     Skipping down:  Rule E procedure is not
15 intended to resolve definitively the dispute between
16 the parties -- maritime or not -- but only to make a
17 determination whether there are reasonable grounds
18 for issuing the arrest warrant.
19     And the Court already looked at this
20 extensively.  The Court took a lot of time to look
21 at this after we filed the complaint -- I think it
22 was three weeks -- and said, yes, there are
23 reasonable grounds.  And there are reasonable
24 grounds.  We can see it right here for the complaint
25 and what's been alleged.

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00008**

1        And if that is not enough basis to say,

2   yes, you know, the writ should stand, let's look at

3   the 5th Circuit standard in *Barrios*.  And the two

4   prongs in *Barrios* -- which the end result, by the

5   way, was to affirm there was maritime

6   jurisdiction -- was that, one, the contract to be

7   maritime must be for services to facilitate activity

8   on navigable waters.

9        What have we just watched?  Without

10  chassis, there would be no activity for containers.

11  They would be going nowhere.  The chassis

12  implicitly, and by Zariz operations -- and we're not

13  talking here about trucks.  We're not talking here

14  about something miles away that came up in the

15  *Kuehne & Nagel* case, 874 F.2d 283, where Kuehne &

16  Nagel, which is the garnishee here, international

17  freight forwarder, said, oh, you know, we have

18  thousands of miles of overland plus sea, it's a

19  maritime contract.  That -- that's what's involved

20  here.

21        What we've seen is what Zariz does, which

22  is Zariz goes to the terminal, does all the maritime

23  things, tracks the ships, determines when they are

24  going to come in, picks up the cargo and leaves no

25  container behind using exclusively maritime

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00009**

1　equipment, which is the intermodal marine chassis.

2　So first prong met.  Must be for services to

3　facilitate activity on navigable waters.  If this

4　doesn't facilitate navigable waters activity, then

5　that's a lie right there.

6　　　　　Okay.  Second prong.  Must provide, or the

7　parties must expect, that a vessel will play a

8　substantial role in the completion of the contract.

9　Again, no vessels, no containers, no chassis, no

10　business.  The focus is on the property, maritime

11　property.  That's what a maritime intermodal chassis

12　is.

13　　　　　And the -- in the case by -- oh, gosh --

14　Judge Africk, also a well-known maritime judge, this

15　is -- and he is considering *Barrios*, and *Barrios* has

16　as comment to this effect, too.  It is 2023 Westlaw

17　3055530, *In the Matter of Aries Marine*.

18　　　　　And Judge Africk writes -- and he's

19　quoting *Crescent Energy*, another 5th Circuit case,

20　896 F.3d 350, 359 -- We must remember that the

21　contracting parties' expectations are central.

22　　　　　Okay.  What do we need to know any more --

23　if we need to know any more than what we've seen,

24　what we're seeing on the website, what we're

25　seeing -- what we've seen on the video about the

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00010**

1  parties' expectations, let's look at Zariz's answer.

2  And there's some back and forth about, you know,

3  whether I can -- I can swear that a dog is a cat,

4  and it's really -- if it's really a cat, then it

5  doesn't matter. But let's talk about the facts that

6  Zariz admitted to, has admitted to since it filed

7  its answer back in July. This has never come up

8  before except way after it was supposed to.

9        The -- so the Trend complaint says, and

10  this is paragraph 6: New Jersey corporation --

11  Zariz is a New Jersey corporation that carries

12  maritime cargo, namely, intermodal marine containers

13  using Trend's intermodal marine chassis, within, and

14  to and from United States ports, for the maritime

15  import of vessel-borne cargo into, and export from,

16  United States ports.

17        Zariz's answer, 6: Defendant admits the

18  allegation.

19        Back to Judge Africk. What are the

20  parties' expectations? Well, here it is right in

21  the answer. Parties are expecting this is -- this

22  is maritime equipment. This is used in maritime

23  operations. This is back to *Barrios*. Parties

24  expect. What do they expect? That a vessel --

25  there's a bunch of them -- will play a substantial

SHAWNIE ARCHULETA, CSR/CRR
FEDERAL COURT REPORTER - 214.753.2747
shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com

00011

1  role in the completion of the contract.  Without

2  vessels no containers, no chassis.

3  Okay.  And then down in Trend 8, defining

4  an intermodal chassis, a wheeled trailer vehicle

5  uniquely designed to carry marine intermodal

6  containers used for import and export.

7  And Zariz's answer, 8, admits.  Again,

8  we're not talking about calling a dog a cat here.

9  We're talking about facts.  Facts and the parties'

10  expectation, which is the centerpiece of the second

11  prong about *Barrios*.  The parties must expect the

12  vessel will play a substantial role.  And a

13  vessel -- it doesn't have to be a named vessel.  You

14  don't have to say it's the MV Horan that's going to

15  bring the thing.  It's any vessel, and we've seen

16  plenty of them.

17  Now, the essentialness of marine chassis,

18  marine intermodal chassis.  Well, let's look at the

19  report that Zariz highlighted, to start out with,

20  from the University of New Orleans.  It's cited in

21  their brief.

22  Executive Summary:  The international --

23  they call it international, but it's intermodal --

24  chassis is in turn the linchpin of today's

25  international commerce.

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00012**

1    And then page 3 of that same report.

2    Historical Context:  Without international chassis,

3    the containers cannot move by truck.  The

4    international chassis is, in turn, the linchpin of

5    today's international commerce.

6         Without the chassis, there's no maritime

7    commerce.  And the FMC struggled over that in

8    that -- in the opinion that we presented in the

9    appendix on the question.  This was back just before

10   Covid, and there was a shipping line called Engine

11   which went under -- there were -- gosh, they

12   probably had 50 fully laden container ships that

13   were stuck all the way around the world, and there

14   weren't enough chassis.  And so there was an FMC

15   procedure.  This is in the appendix, starting at

16   appendix page 11.  And the FMC's administrative law

17   judge writes:  Chassis are the wheels of the supply

18   chain.  And goes on that they are -- they are

19   essential to the movement of intermodal commerce.

20        And then -- so a lot of -- a lot of us

21   have had Justice O'Connor on our mind since she

22   passed away recently, but the *Kirby* decision, and

23   the *Kirby* decision really kicked it all off.  That

24   is to say, you know -- and we quoted the decision at

25   length in our brief, and I won't read it because you

SHAWNIE ARCHULETA, CSR/CRR
FEDERAL COURT REPORTER - 214.753.2747
shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com

00013

have read it.  The -- it doesn't stop at the water anymore.  It's land.  It is -- it is the combination of things, including intermodal marine chassis, including containers, all of which are only used in maritime commerce, when they are moving in maritime commerce, that is part of essential maritime jurisdiction.

And so here we have Zariz's own materials.  It's on the website.  It's on the promotional video that says exactly what Zariz does.  And I will refer the Court to our papers and Mr. Awad's' affidavit that says this is what they were always used for.

And Zariz, in particular -- and if Your Honor looks back to the propeller example.  If I take that propeller from the front of the seafood restaurant down to the port of Houston and put it on my ship, that makes it a -- that makes it marine equipment.  Well, this is what Zariz is doing.

Now, if there's a chassis sitting out in the middle of nowhere, like *Four Horsemen*, just used to take stuff to a railhead or like in the *Luvi* case.  Okay?  The *Luvi* case talked about trucks.  it wasn't talking about marine chassis, it was talking about trucks.  Trucks can do anything.  They can go all over.  There are certainly -- and we are not

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00014**

1    talking about leasing trucks. We are talking about

2    the things that those trucks must have that are

3    uniquely marine that Zariz uses uniquely in marine

4    operations with the expectation that the ship is

5    going to be involved.

6          We saw how they coordinate with the ship

7    that makes this a maritime contract to lease

8    maritime property, and it doesn't. And Your Honor

9    will not find any case that says that the written

10   agreement must say, this is maritime property, you

11   know, any more than if I had a seafood contract, I

12   had to -- and the contract had to say that the fish

13   was seafood. It's self-evident what these things

14   are. We see what they are. They are only used for

15   maritime commerce.

16          And so interesting thing about the *Kuehne*

17   *& Nagel* case, though, is it does give you an idea

18   about who Kuehne & Nagel is. This is whose money is

19   being restrained. I don't know how much Medfast

20   [sic] money is restrained. We never got a response

21   from them. But we know there's 135,000 or so that

22   Kuehne & Nagel is holding.

23          So what is Kuehne & Nagel? Kuehne & Nagel

24   is an international freight forwarder. Kuehne &

25   Nagel coordinates international ocean shipments,

SHAWNIE ARCHULETA, CSR/CRR
FEDERAL COURT REPORTER - 214.753.2747
shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com

00015

1  brings it all together, gets the cargo delivered.

2  Okay.  And so here we have another essential part of

3  a maritime relationship.  It is Kuehne & Nagel

4  International Freight.  It's not Joe's Warehousing

5  Company.  It's not Interstate Tire.  It's not

6  anything like that.  It is money by -- that is owed

7  by a maritime entity doing maritime commerce,

8  Kuehne & Nagel, that -- that's been held.

9         In the *Boland Marine* case, an underpinning

10  of that decision was that the judge said -- gosh, I

11  can see him like I'm standing here -- it was clear

12  that Bouchard was insolvent.  Clearly.  We've had

13  that admission here.  Not only that, but we've got

14  one more that's from my case that didn't have in

15  *Bouchard*, an admission that there's $573,000 owed.

16         And so if the Court applies equity to this

17  as we -- as admiralty does, then that's an

18  underpinning of why the Court should not vacate the

19  writs.  Because if the writs are vacated, Trend's

20  not going to get anything.  And we don't see Zariz

21  coming forward and saying, yeah, we owe you this

22  money and, yeah, we're going to pay you.  That

23  hasn't happened.  This is the only way that Trend

24  will get secured.

25         Now, if the Court, nevertheless, finds the

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00016**

1    motion E(4)(f) is final, finds that -- that

2    whatever, under 12(b)(1) there's no maritime

3    jurisdiction, what Trend would ask is that the Court

4    stay the case, stay any vacating of the writ pending

5    the time of appeal.

6              Why is that important?  Because this is a

7    first impression case.  First impression case of

8    this sort where there's a company of this kind that

9    is doing exactly what Judge O'Connor wrote about in

10   *Kirby*, which is pulling it all together as an

11   essential part of maritime commerce.  And the

12   5th Circuit needs to consider this first impression

13   case.

14             And the situation for chassis,

15   interestingly enough, was the same -- and this was

16   well into the last century -- when I became a

17   lawyer.  And when I became a lawyer first, the firm

18   I was involved with was trying to establish that

19   containers were maritime property and container

20   leases were maritime contracts.  And finally we did.

21   And that's absolute law right now that's not been

22   considered except for one court of appeals looking

23   at containers, not trucking, we're not talking about

24   *Luvi*.  We're talking about the 11th Circuit in *Di*

25   *Gregorio*.  The 11th Circuit looked at whether it's

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00017**

1    maritime property.  That was my case.  And what we

2    did was we -- we wanted to repossess the property,

3    which you can do under Rule "D" as in "dog" to try

4    title to maritime property.

5            The district court said, nah, chassis is

6    not maritime property.  11th Circuit said, of course

7    they.  They use maritime commerce.  This was all pre

8    *Brias* (phonetic), by the way, 11th Circuit.  But the

9    point is that the 5th Circuit needs to -- if the

10   Court is inclined to vacate the writs -- consider

11   the *Barrios* test about -- with the realities of,

12   particularly, Zariz's use of intermodal marine

13   containers.

14           Thank you.

15           THE COURT:  All right.  Thank you,

16   Mr. Simms.

17           MR. SALHANICK:  Thank you.

18           Let me start with the issue of whether or

19   not under the law the contract at issue here, which

20   is an equipment lease, constitutes a maritime

21   contract.

22           The law is absolutely clear that it does

23   not, for two independent reasons.  And let me start

24   by saying that the facts in this case are not

25   disputed.  What's going on here is, this was an

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00018**

1   agreement between my client and the plaintiff to

2   lease these chassis -- which are, you know, trucking

3   beds -- to transport containers that had previously

4   been unloaded from ships onto land, which was

5   situated sitting on land, had to move those from one

6   land-based location to another land-based location.

7   And the law is quite clear that that is not a

8   maritime agreement.

9           Let's start with the *Luvi* case.  The *Luvi*

10  case was a seminal decision of the 1st Circuit in

11  which the Court stated as follows.  In *Luvi*, there

12  was a contract, a shipping contract in which the

13  defendant was hired to move -- just like my client

14  in this case, to move containers that had been

15  situated at a port no longer on a ship and truck

16  those, move those to another port.  And the Court

17  determined in *Luvi* that that was not a maritime

18  contract.

19          And the Court said as follows:  It has

20  long been the rule that contracts involving cargo

21  are maritime only to the extent that cargo is on a

22  ship or being loaded on or off a ship.

23          The Court continued:  Because in this case

24  the defendant never came into contact with a ship,

25  he merely picked up cargo at a terminal, shipping

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00019**

terminal, and moved it to another location, they are
not maritime contracts.

_Luvi_ was a shipping contract, not
equipment lease.  But even in the case of _Luvi_,
which was a shipping contract, the Court said that
is not a maritime contract because it didn't touch
the ship; nothing was unloaded or loaded directly
from the ship to the parties' property -- in that
case it was cargo vans, in this case it's chassis --
and there was no direct interaction with any ship,
just like in our case.

_Luvi_ has been cited with approval in I
believe the 10th Circuit, the 3rd Circuit, the
1st Circuit, perhaps the 11th Circuit, and it's good
law and remains good law after _Kirby_.

The second reason that the contracts at
issue here are not maritime contracts is that they
are not shipping contracts, they are equipment
leases.  The contracts don't require any performance
of any shipping services.  They don't require my
client to do anything with those chassis.  My client
could have taken the chassis, parked them and never
used them, and then been fully compliant with the
contracts.  There was no obligation to ship
anything.  The contract didn't say anything would be

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00020**

1  shipped.  They are leases of equipment to be used by

2  my client for whatever he wants to use them for.

3           And on this point, fortunately, there are

4  two federal cases directly addressing this

5  situation.  One is the *Interpool v. Four Horsemen*

6  case that's a district of New Jersey case, 2017

7  case, and that is exactly the facts that we find in

8  this case.

9           The plaintiff had leased chassis for

10  intermodal transport of cargo containers from ports,

11  between ports.  It was an equipment lease, just like

12  this equipment lease.  And in that case the

13  plaintiff argued there was maritime jurisdiction,

14  because the purpose of that lease was to bring the

15  chassis to the port and pick up containers that had

16  been previously on a ship.

17           The Court said very clearly in *Interpool*,

18  that is not a maritime contract because the

19  contract -- which is an equipment lease -- doesn't

20  require any shipping services, doesn't talk about

21  going on a ship, interacting with a ship, doesn't

22  require interacting with a ship.  All it is is a

23  contract to take equipment, to lease equipment, to

24  be used by the defendant for transport from one land

25  location to another land location.  No touching the

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00021**

1 ship, no interacting with the ship. The cargo isn't

2 even coming off the ship onto the chassis. The

3 chassis are on land being picked up and moved to

4 another land-based location.

5        Similarly, *Mediterranean Shipping Co. v.*

6 *Rose*, a Southern District of New York case, 2008.

7 That was a lease of containers, not of chassis but

8 of containers. Again, it was an equipment lease,

9 where the purpose of that equipment lease -- it was

10 agreed and admitted -- was to move intermodal cargo

11 from ports, between ports or from ports to other

12 land-based locations.

13        The Court there held that was not a

14 maritime contract -- although certainly it was in

15 the chain, the extended chain of maritime

16 commerce -- because the cargo came off the ship

17 originally. The Court held in that case, in

18 *Mediterranean*, that that's not a maritime contract

19 because the defendant was not touching the ship, was

20 not interacting with any ships, and it was an

21 equipment lease, not a shipping agreement, simply a

22 lease of equipment. And the contract did not

23 require any ocean or maritime conduct and could be

24 fully performed without ever interacting with any

25 ship. Those two cases -- that case remains good

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

00022

law.  And that case, although not binding in this
circuit, should be persuasive authority.

It's also important to clarify that in our
reply declaration, which the Court granted us leave
to interpose.  We clarified -- my client clarified
that the contract that he entered into -- that he
has with his customers to deliver this cargo from
land-based locations at the port to warehouses is
not part of any larger contract whereby my client
has to participate in shipping activities or is
responsible for any shipping activities.  My client
is not on the hook for any shipping activities.  His
job, my client's job, Zariz, is to go to the ports,
pick up those containers off of land, put them on
the chassis, and truck them to warehouses of
customers like Raymour and Flanigan, various apparel
companies in New Jersey.

So for those reasons, those two
independent reasons, A, that my client -- it's
undisputed, there's no factual dispute -- is not
interacting with any ships, not touching any ships,
not being given cargo by any ships; and B, this is
an equipment lease and not a shipping contract.  And
again, the equipment lease is only to use for the
purpose of trucking between land-based locations, it

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00023**

1  is not a maritime contract.

2         Now, I will turn to the issue of whether

3  this motion is a proper motion or timely.  As we --

4  as we demonstrated in our brief under Rule 12(h)(3),

5  subject matter jurisdiction can be raised or

6  addressed at any time.  It can be raised by the

7  Court sua sponte.  It can be raised by a party.

8         We cite two cases in our reply brief where

9  courts have held that, notwithstanding a dispositive

10  motion schedule, which said all dispositive motions

11  had to be filed by "X" date, there's an exception

12  under the rule.  And Statute 12(h)(3) says those

13  motions can be raised at any time, even after a

14  dispositive motion has been set and has passed.

15         And while this is not only formally a

16  motion to vacate the attachment, once the issue of

17  subject matter jurisdiction has been raised, as it

18  is in this Court, and having been briefed by the

19  parties -- there's been extensive briefing and

20  affidavits back and forth.  Both parties could have

21  called witnesses, both sides elected not to do so.

22  The issue has been briefed.  This is essentially

23  akin to a 12(b)(1) motion.  And once the issue is

24  raised in the context of a motion to vacate

25  attachment, if the issue of subject matter

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00024**

1    jurisdiction is implicated, as it is here, and if
2    the Court finds there is no subject matter
3    jurisdiction, it's compelled to dismiss the case.
4            And I will point the Court to one
5    decision -- one citation in our reply brief.  That's
6    *K Inventory*.  That is a June 4th, 2021, Southern
7    District of Texas case, where the Court said:  A
8    motion to vacate a maritime attachment is ordinarily
9    treated as a nondispositive matter.  However, here,
10   the effect of my ruling will deprive this Court of
11   jurisdiction seemingly converting my ruling into a
12   dispositive matter.
13           And I will note to the Court, both cases,
14   the District of New Jersey case I referenced before,
15   *Interpool* and *Mediterranean Shipping*, the Southern
16   District of New York case, in both those cases the
17   Court held that they had to vacate.  The Court
18   determined that the maritime attachment should be
19   vacated and the cases should be dismissed for lack
20   of subject matter jurisdiction.
21           So once the Court is facing a motion to
22   vacate attachment, that implicates a lack of subject
23   matter jurisdiction, Rule 12(h)(3) kicks in, and the
24   Court must address it any time.  There's no due
25   process here.  Both parties had a chance to brief

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00025**

1    this.  There was affidavits, evidence put in by both

2    sides.  And being that it's clear that there is no

3    subject matter jurisdiction for the reasons I

4    referenced, the Court should not only vacate the

5    attachment, but dismiss the case.

6            I'd like to now turn to the issue of

7    admission.  Now, as we made clear in our reply

8    brief, if there's no subject matter jurisdiction,

9    all the admissions, agreements and consents of the

10   defendants are ineffective.  Subject matter

11   jurisdiction goes to the Court's underlying ability

12   to hear the case.  And if subject matter

13   jurisdiction does not exist, it does not matter if

14   the defendant sticks up his hand for months and

15   months throughout the entire case and says, I agree,

16   there's subject matter jurisdiction.  It can be

17   raised at any time, and it is not waivable.

18           Now, when it comes to supposed issues of

19   fact, as we demonstrate in our brief, the fact that

20   we concede in our answer that these are maritime

21   chassis is hardly a feather in the plaintiff's cap.

22   As we demonstrate, that's simply another term for

23   these intermodal chassis.  They are also known as

24   maritime chassis.  And they are known as maritime

25   chassis because they are chassis that can be used to

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00026**

transport property that came from a ship.  So in the
industry they are known as maritime.  But that
doesn't make them legally into maritime property,
nor does it establish -- which is a key issue in
this case -- that the contracts at issue, which are
equipment leases of chassis, are maritime contracts.

Similarly, the fact that we admit -- my
client admitted in the answer that these are, quote,
unquote, maritime contracts, that is a legal
conclusion.  We cite two federal cases to the effect
that the characterization of a contract, as to what
a contract is in a legal sense, is not a factual
admission.  That's an issue of law.  What a maritime
contract constitutes or what's required to have a
maritime contract is a legal issue, not a factual
one.

So my client has the ability and the right
to say now that under the law these contracts --
although they, in some highly attenuated sense,
pertain to maritime commerce in that they were
equipment leases for chassis to be used to pick up
containers that had come from a ship, they do not
constitute maritime contracts sufficient to confer
jurisdiction under the Supreme Court's jurisprudence
in *Kirby* under the 5th Circuit precedent and under

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00027**

1  the other precedent we have cited.

2         Let me last address the issue of the stay.

3  It seems like my adversary is contemplating that

4  such request might be needed.  He made it off the

5  bat.  I will say two things.  First of all, this is

6  not a complex issue that requires -- it's not a

7  novel issue.  Both *Interpool* and *Mediterranean*

8  *Shipping* both addressed this issue head on, head on,

9  this issue of equipment leases used to move stuff

10 between land-based locations.  Both held that those

11 are not maritime contracts.

12        We have *Luvi*, as well, a 1st Circuit case

13 saying that if the contract doesn't touch or

14 directly interact with the ship, it's not a maritime

15 contract, it's not a novel issue.

16        Furthermore, it's established that to

17 obtain a stay, you have to demonstrate irreparable

18 harm.  A mere claim for money, which is what

19 plaintiff has here, this is not a claim for specific

20 property.  The maritime attachment is simply to

21 secure a claim for breach of contract.  A mere claim

22 for money does not constitute irreparable harm.

23 That prong cannot be demonstrated by my adversary.

24 So there should be no stay.

25        In fact, a little bit of history here.

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

00028

```
 1    The reason the supplemental Rule E(4)(f) providing
 2    for a prompt hearing to vacate a maritime attachment
 3    was instituted was because of the grave
 4    constitutional implications of permitting an
 5    ex parte maritime attachment right at the outset of
 6    the case without demonstrating all the necessary
 7    elements required for a preliminary injunction or
 8    temporary restraining order.  So Congress decided to
 9    put this rule into law, because it's a severe due
10    process violation for a plaintiff to come into
11    federal court, immediately obtain ex parte an
12    attachment of property without meeting the standards
13    for a temporary restraining order or a preliminary
14    injunction without the defendant having the right to
15    immediately contest that and, if there's no
16    jurisdiction, to have it vacated in due course.
17             So based on those facts, the fact that
18    there is no irreparable harm here because this is
19    simply an unsecured claim for breach of contract for
20    money, based upon the fact that this is not a novel
21    issue -- it's been addressed three times, in *Luvi*
22    and the two district court cases that I cited -- the
23    fact that -- and the fact that there are grave
24    constitutional issues with an attachment of this
25    sort, an ex parte attachment that doesn't meet the
```

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00029**

usual standards for a temporary restraining order or preliminary injunction, the request for a stay should be denied.

Thank you.

THE COURT: Thank you.

Mr. Simms.

MR. SIMMS: If the Court would look at the *Four Horsemen* case, what it would see is it's definitely about the land use of chassis. Here's the Court writing -- this is 2017 Westlaw 522161. The reason for the use of these chassis was to transport from the railhead to the consignee, to transport cargo from a railhead to a consignee. That's land use.

The *Rose* case -- and the history of all of this is real important. Back in the *Rose* case, containers were either leased from leasing companies where they were owned by ocean -- ocean container operators. MSC is now one of the biggest container things -- operations in the country. And you can probably even see a few of their containers down there. They are yellow. And if you're going down the interstate, you will see these things.

And *Rose* was a weird case, because MSC was leasing containers for *Rose* to use on land. And

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00030**

1  then it said, well, yeah, they're ocean containers.

2  No, you're using them on land.  So that is not

3  maritime property.

4        Back to my propeller example.  Okay?

5  These chassis are used in maritime commerce, for

6  maritime commerce, only for maritime commerce.  And

7  if they were just parking them in their lots, not

8  moving containers, they would be leaving containers

9  behind and not making any money because there would

10  be no ocean commerce.

11        And *Luvi* is about trucking.  It's not

12  about maritime property, which this is maritime

13  property.  And it's not 5th Circuit law, either.

14  There's nothing in the *Barrios* case that says that

15  anybody has got to touch a ship.  And *Barrios*,

16  taking off from Judge O'Connor, is absolutely right.

17  It doesn't have to touch a ship, it can be inland.

18        And if you look at the *Kirby* case, the

19  *Kirby* case was all about a railroad accident, way

20  inland.  And it was the railroad completing the

21  ocean shipment just like Zariz is doing here,

22  completing the ocean shipment.  So it's not

23  5th Circuit law.

24        It is the expectation of the parties here,

25  though, as admitted, in fact -- okay, in fact, that

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00031**

1  vessels will be inherently involved in this.  And

2  the interesting thing about the *K Investment* [sic]

3  case, that was such a mess.  That -- the -- the

4  problem with that case was not whether it was

5  admiralty jurisdiction, the problem was whether the

6  person who swore to the facts swore to the facts.

7  And the district court didn't let there be an

8  amendment, and that went up to the 5th Circuit.  It

9  has nothing to do with the question here of whether

10 the property is maritime and the contract to lease

11 the property therefore is a maritime contract.

12         Irreparable harm.  Back to *Boland Marine*.

13 There's no money.  Zariz has told the Court, There's

14 no money.  We can't even pay for a lawyer.  Okay?

15 Maybe they can now.  The point is they have admitted

16 that that's money that's due.  There's money right

17 here.  Trend will be irreparably harmed, because

18 there won't be any money.  They won't get any money.

19 There's no adequate remedy at law here for Trend,

20 because there is no money.

21         So the Court should, at the minimum, stay

22 until -- if the Court is inclined to vacate -- until

23 the 5th Circuit would resolve the -- this first

24 impression question for chassis that's been solved

25 long ago for the containers that the chassis must

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00032**

1    carry and vice versa.

2            THE COURT:  All right.  Thank you,

3    Mr. Simms.

4            MR. SIMMS:  Thank you, Your Honor.

5            THE COURT:  I'd like to have questions for

6    you-all, but I think you covered everything.  So I

7    don't want you to feel like I'm unengaged, but ... I

8    came in with certain questions, but you-all have

9    each touched on, I think, and presented your

10   client's effective positions with regard to them.

11           I mean, I -- yeah, anything I would ask

12   you would be redundant of what you already covered,

13   so I'm not really interested in asking you to repeat

14   yourselves.

15           Okay.  This is very helpful.  I will take

16   this under advisement and get a decision out as soon

17   as I can.  And I think I've got everything I need.

18   But Mr. Simms, is there anything you wanted to raise

19   today, housekeeping-wise or otherwise?

20           MR. SIMMS:  Your Honor, I think -- I think

21   we've covered the waterfront.

22           THE COURT:  Very good.  Okay.

23           Mr. Salhanick?

24           MR. SALHANICK:  If I could just say, there

25   is nothing in the record establishing the fact that

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00033**

1  my client doesn't have any money.  My client has

2  some money.  They have a number of debts they have

3  to pay.  They are trying to pay all their debtors.

4         Besides the fact that not having any

5  money -- case law is clear on that -- is also not

6  sufficient to establish irreparable harm, the fact

7  that, you know, the debtor is otherwise unable to

8  pay their debts.  But it is untrue and a statement

9  not supported by anything in the record that my

10  client doesn't have any money.  They do, and they

11  are trying to pay all their debtors in due course.

12         THE COURT:  Okay.  All right.  Well,

13  again, this is very helpful.  I appreciate it.  And

14  I appreciate you-all traveling a ways each.  I --

15  doesn't seem like these are terrible travel dates,

16  hopefully, weather-wise.  So I hope that will

17  continue to be the case as you make your way back to

18  the East Coast.  But if there is nothing else,

19  again, I will take this under advisement and get a

20  decision out as soon as I can and wish you safe

21  travels home.

22         Thank you.  Happy New Year.

23         (Court in recess at 10:59 a.m.)

24

25

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER - 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00034**

```
 1                  C E R T I F I C A T E

 2              I, Shawnie Archuleta, CCR/CRR, certify

 3      that the foregoing is a transcript from the record

 4      of the proceedings in the foregoing entitled matter.

 5              I further certify that the transcript fees

 6      format comply with those prescribed by the Court and

 7      the Judicial Conference of the United States.

 8              This 5th day of January 2024.

 9

10

11                          s/Shawnie Archuleta
                            Shawnie Archuleta CCR No. 7533
12                          Official Court Reporter
                            The Northern District of Texas
13                          Dallas Division

14

15

16      My CSR license expires:  December 31, 2024

17      Business address:  1100 Commerce Street
                           Dallas, TX  75242
18      Telephone Number:  214.753.2747

19

20

21

22

23

24

25
```

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER – 214.753.2747**
**shawnie_archuleta@txnd.uscourts.gov or shawniearchuleta7@gmail.com**

**00035**

|  | Date | Principal Amount | Exhibit Page No. Prefix APXEXB |
|---|---|---|---|
| **Amount that Zariz Has Admitted that It Owes to Trend (Case 3:23-cv-01143-BN Document 51 Filed 11/20/23)** | 11/20/2023 | **$573,989.57** | |

**Final Unsatisfied  Judgments Monetary**

| | Date | Principal Amount | Exhibit Page No. |
|---|---|---|---|
| Lean Staffing Solutions v. Zariz Transport, Palm Beach County, Florida Circuit Court, Case no. 2023-CC-005595 | 10/30/2023 | $        11,297.98 | 00001 |
| Interpool dba Trac Intermodal v. Zariz Transport, Superior Court Essex County, NJ, Case No.  ESX-L -E0S0X54-L3-70-02534 | 10/5/2023 | $      678,881.17 | 00005 |
| Miller Auto Leasing v. Zariz Transport et al, Superior Court Burlington County, NJ, Case No. BUR-L B-0U0R11-L9-30-02131 | 9/14/2023 | $      624,095.61 | 00014 |
| Power Pool Plus v. Zariz Transport, Superior Court Warren County, NJ, Case No. WRN-L-000076-23 | 6/6/2023 | $        38,095.37 | 00017 |
| Road Runner Towing et al v. Zariz Transport, Superior Court Essex County, NJ. Case No. L-007782-22 09/2 | 10/20/2023 | $        20,000.00 | 00022 |
| Pawnee Leasing v. Zariz Transport, Yaakov Guzelgul, Palm Beach County Court, Case No. 50-2023-CC-0 13327-XXXA-MB | 12/17/2023 | $        26,228.66 | 00027 |
| Wells Fargo Equipment Finance v. Zariz Transport and Yaakov Guzelgul, Circuit Court, Palm Beach County, Florida, Case No. 23-CA-13748 AE | 12/13/2023 | $   2,198,346.98 | 00029 |
| **Subtotal, Final Unsatisfied Monetary Judgments, Principal:** | | **$     3,596,945.77** | |

**Final Judgments Non-Monetary**

Decision

# Appendix EXH. B

| | | | |
|---|---|---|---|
| Investments Limited v. Zariz Transport, Palm Beach County, Florida Circuit Court, Case no. 50-2023-CC-015688 | 1/4/2024 | Final Judgment for Eviction (Default) from heaquarters offices | **00032** |
| Vally Executive Associates v. Zariz Transport, County Court, Palm Beach County, Florida, 50-2023-CC-015573 | 12/30/2023 | Final Judgment for Eviction (Default) from heaquarters offices | **00033** |

### Federal Tax Liens

| | | | |
|---|---|---|---|
| Notice of Federal Tax Lien - U.S. Department of the Treasury, Recorded, Palm Beach County, FL | 11/7/2023 | $ 25,780.00 | **00035** |

### Complaints Filed/ Pending

**Demand**

| | | | |
|---|---|---|---|
| Ameris Bank v. Zariz and Yaakov Guzelgul, USDC CD California, Case 8:23-cv-02447-JWH-DFM | 12/22/2023 | $186,159.86 | **00036** |
| Direct Chassislink, Inc. v. Zariz Transport, Superior Court of Chathamn Co., Georgia (Savannah), No. SPCV23-01261-MO | 11/9/2023 | $334,998.89 | **00059** |
| Trier Properties v Zariz Transport, Magistrate Court, Clayton Co., Georgia | 10/9/2023 | $ 58,210.22 | **00248** |
| Auxilor Capital Partners v. Zariz Transport, Palm Beach County, Florida Circuit Court, Case no. 502023CA015877XXXAMB Div: AA; Default Entered, 1/4/2024 | 11/14/2023 | $279,758.97 | **00249** |
| Waylanders Transport v. Zariz Transport, Palm Beach County, Florida Circuit Court, Case no. 502023CC008970XXXXMB Div: RB | 7/12/2023 | $ 22,500.00 | **00260** |
| Givens Transit v. Zariz Transport, Palm Beach County, Florida Circuit Court, Case no. 502023SC011187XXXXMB Div: RB | 8/7/2023 | $ 8,000.00 | **00297** |
| AIG Europe v. Zariz Transport, Superior Court Essex County ,NJ. , Case No. ESX-L-000211-24 | 1/9/2024 | $ 82,241.25 | **00300(EUR 75,000** |

| | | | |
|---|---|---|---|
| Evergreen Shipping Agency v. Zariz Transport, Superior Court Hudson County, NJ., Case No. HUD-L-004177-23 | 11/28/2023 | $ 111,111.00 | **00306** |
| Flexi-Van Leasing v. Zariz Transport, Superior Court Essex County ,NJ. , Case No. ESX-L-007250-23 | 11/6/2023 | $ 225,291.85 | **00346** |
| Gensetpool v. Zariz Transport, Superior Court Essex County ,NJ. , Case No. ESX-L-003902-23 ; Request for Final Default Judgment Pending, 8/29/2023 | 6/19/2023 | $ 570,128.28 | **00372** |
| Ocean Network Express v. Zariz Transport, Superior Court Essex County, NJ, Case No. ESX-L-007659-23 | 11/27/2023 | $191,690 | **00376** |
| **Subtotal, Pending Suits:** | | **$2,070,090.32** | |
| **Total Admitted Amounts, Judgments, Claims:** | | $ 6,241,025.66 | |

Filing # 185103177 E-Filed 10/31/2023 06:28:02 AM

**CFN 20230378900**
**OR BK 34652 PG 1745**
RECORDED 11/6/2023 2:48 PM
Palm Beach County, Florida
Joseph Abruzzo, Clerk
Pgs: 1745 - 1746; (2pgs)

IN THE COUNTY COURT, IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 2023-CC-005595

LEAN STAFFING SOLUTIONS, INC.,

      Plaintiff,

vs.

ZARIZ TRANSPORT INC.,

      Defendant.

_____/

**FINAL DISPOSITION FORM**
(Fla.R.Civ.P Form 1.998)
THE CLERK IS DIRECTED TO CLOSE THIS
FILE MEANS OF FINAL DISPOSITION

**Disposed by Judge**

### CONSENT FINAL JUDGMENT

      THIS CAUSE came before the Court upon the Parties'
Joint Stipulation for Entry of Judgment and this Court has
jurisdiction over the parties and the subject matter of this
litigation, and the Court being fully advised in the premises,
it is hereby,

      ORDERED AND ADJUDGED that the Defendant, ZARIZ
TRANSPORT INC., is indebted to the Plaintiff, LEAN STAFFING
SOLUTIONS, INC., 11555 HERON BAY BLVD, STE 301, CORAL SPRINGS
FL 33076, for the following sums:

| | |
|---|---|
| Principal | $10,432.14 |
| Court Costs | 375.00 |
| Interest 4.75% from November 15, 2022 through October 30, 2023) | 490.84 |
| Judgment Total: | |
| | $11,297.98 |

which shall accrue interest at the rate set by the Chief
Financial Officer of the State of Florida, and as governed by
§55.03, Fla. Stat., for all of which let execution issue.
      It is further ordered and adjudged that the judgment
debtor shall complete under oath Florida Rule of Civil
Procedure Form 1.977 (Fact Information Sheet), including all
required attachments, and serve it on William M. Lindeman,
P.A. within 45 days from the date of this Final Judgment,

FILED: PALM BEACH COUNTY, FL, JOSEPH ABRUZZO, CLERK, 10/31/2023 06:28:02 AM

CFN 20230378900
OR BK 34652 PG 1746
Pg: 2 of 2

Case No. 50-2023-CC-005595-XXXX-MB

unless the Final Judgment is satisfied or post-judgment discovery is stayed.

Jurisdiction of this case is retained to enter further orders that are proper to compel the judgment debtor to complete form 1.977, including all required attachments, and serve on William M. Lindeman, P.A.

DONE AND ORDERED in Chambers at the Palm Beach County Courthouse, West Palm Beach, Florida, this _____ day of _____ ___, 2023.

50-2023-CC-005595-XXXX-MB   10/30/2023
Sarah L. Shullman   Judge

50-2023-CC-005595-XXXX-MB   10/30/2023
Sarah L. Shullman
Judge

_____
Sarah L. Shullman
COUNTY JUDGE

**COPIES TO:**

| | |
|---|---|
| JOE M. GRANT | JGRANT@MSGLAW.COM |
| | jgrant@loriumlaw.com |
| | jyoung@loriumlaw.com |
| | jenna-munsey-6083@ecf.pacerpro.com |
| | jgrant@marshallrgrant.com |
| | ssowder@msglaw.com |
| PARALEGAL | litigation@wmlpa.com |
| WILLIAM M. LINDEMAN | W.LINDEMAN@WMLPA.COM |
| | legal@wmlpa.com |
| | litigation@wmlpa.com |

NOT A CERTIFIED COPY

APXEXB00002
00040

IN THE COUNTY COURT, IN AND
FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 2023-CC-005595

LEAN STAFFING SOLUTIONS, INC.,

     Plaintiff,

vs.

ZARIZ TRANSPORT INC.,

     Defendant.

_____/

## JOINT STIPULATION FOR JUDGMENT

Plaintiff, LEAN STAFFING SOLUTIONS, INC., by and through its undersigned counsel, and Defendant, ZARIZ TRANSPORT INC., file this, their Joint Stipulation for Judgment and agree as follows:

1. That the Defendant, ZARIZ TRANSPORT INC., acknowledges its indebtedness to the Plaintiff, LEAN STAFFING SOLUTIONS, INC., in the following amounts:

| | |
|---|---|
| Principal | $10,432.14 |
| Court Costs | 375.00 |
| Interest (4.75% from November 15, 2022 through October 30, 2023) | 490.84 |
| Judgment Total: | $11,297.98 |

which shall accrue interest at the rate set by the Chief Financial Officer of the State of Florida, and as governed by §55.03, Fla. Stat.

2. That the Defendant, ZARIZ TRANSPORT INC., consents to entry of a Final Judgment against them for the total amount

NOT A CERTIFIED COPY

APXEXB00003

00041

established in Paragraph One above.

DATED this 30th day of __October__ , 2023.

BY: _____     BY: _____
William M. Lindeman                ZARIZ TRANSPORT INC.,
Attorney for Plaintiff             Defendant Yaakov
Florida Bar #699640                By:
P.O. Box 3506                      Its: Oct 30, 2023
Orlando, Florida 32802-3506        197 S.Federal Hwy
(407) 244-3294                     Suite 200
                                   Boca Raton, FL 33432

NOT A CERTIFIED COPY

**Superior Court of New Jersey – Essex County Law Division**
**Veteran's Courthouse – Room 113**
**50 West Market Street**
**Newark, New Jersey 07102**

## TAXED COSTS

DOCKET NO. _____ L 5437-23 _____ _____ _____

JUDGMENT NO. J-_____

CASE TITLE: __INTERPOOL, INC VS ZARIZ TRANSPORT, INC_____

COSTS OF_____
               (CREDITOR)                    (DEBTOR)

     ATTORNEY'S ALLOWANCE BY STATUE     $_____

     FILING FEES PAID TO THE CLERK     $_____250.00_____

     SHERIFF'S FEES ALLOWED BY THE COURT     $_____$40.00_____

     COUNSEL FEES ALLOWED BY THE COURT     $_____

     OTHER (SPECIFY) _____

                **TOTAL TAXED COST**   $___290.00___

DATE TAXED AND FILED: _____OCTOBER 5, 2023_____

ATTORNEY: ___PRICE MEESE SHULMAN & D'ARMINIO PC_____



RECEIVED

OCT – 5 2023

Superior Court of New Jersey
Civil Division - Essex County

Rick A. Steinberg, Esq., Attorney ID No. 031711989
**PRICE MEESE SHULMAN & D'ARMINIO, P.C.**
50 Tice Boulevard, Suite 380
Woodcliff Lake, NJ 07677
Tel: (201) 391-3737
Fax: (201) 391-9360
RSteinberg@pricemeese.com

Attorneys for Plaintiff,
Interpool, Inc. dba TRAC Intermodal

**FILED**

OCT - 5 2023

Superior Court of New Jersey
Civil Division - Essex Vicinage

*A money judgment is not automatically recorded as a lien. To record as lien: forward to Clerk of the Superior Court in Trenton with FEE: $ 35.00*

| | |
|---|---|
| **INTERPOOL, INC.,**<br>**dba TRAC INTERMODAL,** | **SUPERIOR COURT OF NEW JERSEY**<br>**LAW DIVISION: ESSEX COUNTY** |
| **Plaintiff,** | **CIVIL PART** |
| v. | **DOCKET NO. ESX-L-05437-23** |
| **ZARIZ TRANSPORT, INC.,** | **CIVIL ACTION** |
| **Defendant.** | **FINAL JUDGMENT BY DEFAULT** |

The Defendant, Zariz Transport, Inc., having been duly served with the Summons and

Complaint in the above-entitled action, and having been defaulted for failure to answer, appear or

otherwise move as to the complaint, and defendant not being a minor or an incapacitated person;

and plaintiff having filed an affidavit setting forth a particular statement of the items of the claim,

their amounts and dates, a calculation in figures of the amount of interest, the payments or credits,

if any, and the net amount due:

FINAL JUDGMENT is on this _5th_ day of October, 2023, signed and entered in the

sum of $678,881.17 in favor of the plaintiff, Interpool, Inc. dba TRAC Intermodal, and against the

defendant, Zariz Transport, Inc.

Michelle M. Smith, Esq.
Clerk of Superior Court

ORIGINAL DOCUMENT

**RECEIVED**

OCT - 5 2023

Superior Court of New Jersey
Civil Division - Essex County

1

APXEXB00006   00044

Rick A. Steinberg, Esq., Attorney ID No. 031711989
**PRICE MEESE SHULMAN & D'ARMINIO, P.C.**
50 Tice Boulevard, Suite 380
Woodcliff Lake, NJ 07677
Tel: (201) 391-3737
Fax: (201) 391-9360
RSteinberg@pricemeese.com

Attorneys for Plaintiff,
Interpool, Inc. dba TRAC Intermodal

> **FILED**
>
> OCT − 5 2023
>
> Superior Court of New Jersey
> Civil Division - Essex Vicinage

*(vertical handwritten margin note):* A money judgment in the amount of ... recorded as a lien ... forward to Clerk of the Superior Court in Trenton with FEE $25.00

| | | |
|---|---|---|
| **INTERPOOL, INC.,** <br> **dba TRAC INTERMODAL,** | : | **SUPERIOR COURT OF NEW JERSEY** <br> **LAW DIVISION: ESSEX COUNTY** |
| Plaintiff, | : | **CIVIL PART** |
| v. | : | **DOCKET NO. ESX-L-05437-23** |
| **ZARIZ TRANSPORT, INC.,** | : | **CIVIL ACTION** |
| Defendant. | : | **FINAL JUDGMENT BY DEFAULT** |

The Defendant, Zariz Transport, Inc., having been duly served with the Summons and Complaint in the above-entitled action, and having been defaulted for failure to answer, appear or otherwise move as to the complaint, and defendant not being a minor or an incapacitated person; and plaintiff having filed an affidavit setting forth a particular statement of the items of the claim, their amounts and dates, a calculation in figures of the amount of interest, the payments or credits, if any, and the net amount due:

FINAL JUDGMENT is on this _5th_ day of October, 2023, signed and entered in the sum of $678,881.17 in favor of the plaintiff, Interpool, Inc. dba TRAC Intermodal, and against the defendant, Zariz Transport, Inc.

Michelle M. Smith, Esq.
Clerk of Superior Court
Clerk

> **RECEIVED**
>
> OCT − 5 2023
>
> Superior Court of New Jersey
> Civil Division - Essex County

**A TRUE COPY**

Rick A. Steinberg, Esq., Attorney ID No. 031711989
**PRICE MEESE SHULMAN & D'ARMINIO, P.C.**
50 Tice Boulevard, Suite 380
Woodcliff Lake, NJ 07677
Tel: (201) 391-3737
Fax: (201) 391-9360
RSteinberg@pricemeese.com

Attorneys for Plaintiff,
Interpool, Inc. dba TRAC Intermodal

| | | |
|---|---|---|
| **INTERPOOL, INC.,** | : | **SUPERIOR COURT OF NEW JERSEY** |
| **dba TRAC INTERMODAL,** | : | **LAW DIVISION: ESSEX COUNTY** |
| | : | |
| **Plaintiff,** | : | **CIVIL PART** |
| | : | |
| **v.** | : | **DOCKET NO.** |
| | : | |
| **ZARIZ TRANSPORT INC.,** | : | **CIVIL ACTION** |
| | : | |
| **Defendant.** | : | **COMPLAINT** |
| | : | |

Plaintiff, Interpool, Inc., dba TRAC Intermodal ("Plaintiff"), through its Counsel, Price Meese Shulman & D'Arminio, P.C., by way of Complaint against Defendant, Zariz Transport Inc. ("Defendant"), states as follows:

## PARTIES

1.      Plaintiff is a Delaware corporation with its principal place of business at 750 College Road East, Princeton, New Jersey 08540.

2.      Upon information and belief, Defendant is a New Jersey corporation with its principal place of business at 252 Doremus Avenue, Newark, New Jersey 07105.

## BACKGROUND FACTS

3.      Plaintiff provides intermodal equipment such as chassis to users of such equipment, such as motor carriers, in intermodal interchange service.

APXEXB00008
00046

4.      Defendant is a motor carrier that uses intermodal equipment in intermodal interchange service.

5.      Plaintiff and Defendant are parties to an Equipment Interchange Agreement for Marine Chassis Pools (the "Equipment Interchange Agreement").

6.      The Equipment Interchange Agreement governs the interchange and use of equipment in intermodal interchange service.

7.      A copy of the Equipment Interchange Agreement showing that Defendant is a party to the Equipment Interchange Agreement is attached hereto as Exhibit "A."

8.      Pursuant to the Equipment Interchange Agreement, Plaintiff provided intermodal equipment to Defendant, in the form of chassis or other such equipment, for use by Defendant in its business.

9.      Defendant detained the intermodal equipment and failed to return the intermodal equipment to Plaintiff within the time allowed and/or incurred maintenance and repair ("M&R") costs and/or tickets.

10.     Pursuant to the Equipment Interchange Agreement, Defendant is liable to Plaintiff for per diem charges for detention or failure to return the intermodal equipment within the time allowed and/or M&R costs for the chassis and/or tickets.

11.     The amount of per diem and/or M&R charges and/or tickets due from Defendant to Plaintiff is $522,221.67 as of August 23, 2023.

12.     A copy of a Per Diem Statement rendered by Plaintiff to Defendant dated August 23, 2023 showing that the amount due from Defendant to Plaintiff as of that date was $522,221.67 is attached hereto as Exhibit "B."

2

## COUNT I
### (Breach of Contract)

13.     Plaintiff repeats the allegations contained in Paragraphs 1 through 12 of the Complaint as if fully set forth herein.

14.     Defendant's actions in detaining or failing to return the intermodal equipment in a timely manner and/or incurring M&R costs and tickets constitute breach of the contract with Plaintiff.

15.     Plaintiff has been damaged by Defendant's breach of contract in an amount not less than $522,221.67, plus interest, costs, and reasonable attorney's fees.

## COUNT II
### (Unjust Enrichment)

16.     Plaintiff repeats the allegations contained in Paragraphs 1 through 15 of the Complaint as if fully set forth herein.

17.     Defendant's actions in detaining or failing to return the intermodal equipment in a timely manner to Plaintiff and/or incurring M&R costs and/or tickets has unjustly enriched Defendant at the expense of Plaintiff.

18.     Defendant has been unjustly enriched at the expense of Plaintiff in an amount not less than $522,221.67, plus interest, costs, and reasonable attorney's fees.

## COUNT III
### (Quantum Meruit)

19.     Plaintiff repeats the allegations contained in Paragraphs 1 through 18 of the Complaint as if fully set forth herein.

20.     Plaintiff is entitled to the value of services provided to Defendant in the form of intermodal interchange equipment.

APXEXB00010
00048

21.     The fair value of the services provided by Plaintiff to Defendant is not less than $522,221.67, plus interest, costs, and reasonable attorney's fees.

**COUNT IV**
**(Account Stated)**

22.     Plaintiff repeats the allegations contained in Paragraphs 1 through 21 of the Complaint as if fully set forth herein.

23.     Plaintiff has provided Defendant with an account statement of the amounts due for detention of the intermodal interchange equipment and/or M&R costs and/or tickets.

24.     Based on the account stated, Defendant is liable to Plaintiff in an amount not less than $522,221.67, plus interest, costs, and reasonable attorney's fees.

**COUNT V**
**(Contractual Attorneys' Fees)**

25.     Plaintiff repeats the allegations contained in Paragraphs 1 through 24 of the Complaint as if fully set forth herein.

26.     Pursuant to Section 12, Default, of the Equipment Interchange Agreement, Plaintiff is entitled to its reasonable attorneys' fees and expenses incurred to enforce its rights.

27.     Based on the contractual attorneys' fees clause in the Equipment Interchange Agreement, Defendant is liable to Plaintiff for attorneys' fees of 30% of the principal amount of $522,221.67, or $156,666.50, for a total of $678,888.17.

WHEREFORE, Plaintiff demands judgment against Defendant on the Complaint for damages in an amount not less than $678,888.17, plus interest, costs, and any other relief that the court deems just and equitable.

> PRICE MEESE SHULMAN & D'ARMINIO, P.C.
> Attorneys for Plaintiff,
> Interpool, Inc., dba TRAC Intermodal

4

APXEXB00011
00049

By:      /s/ Rick A. Steinberg
         Rick A. Steinberg

Dated: August 23, 2023

### CERTIFICATION PURSUANT TO RULE 4:5-1

I certify that the matter in controversy herein is not the subject of any other action pending in any court or of a pending arbitration proceeding now or contemplated, and that no other parties should be joined in this action.

PRICE MEESE SHULMAN & D'ARMINIO, P.C.
Attorneys for Plaintiff,
Interpool, Inc., dba TRAC Intermodal

By:      /s/ Rick A. Steinberg
         Rick A. Steinberg

Dated: August 23, 2023

### DESIGNATION OF TRIAL COUNSEL

Rick A. Steinberg, Esquire, is hereby designated as trial counsel in this matter.

PRICE MEESE SHULMAN & D'ARMINIO, P.C.
Attorneys for Plaintiff,
Interpool, Inc., dba TRAC Intermodal

By:      /s/ Rick A. Steinberg
         Rick A. Steinberg

Dated: August 23, 2023

APXEXB00012
00050

APXEXB00013

**PARKER McCAY P.A.**
**Harris Neal Feldman, Esq. (ID No. 090002000)**
**John Neckonchuk, Esq. (ID No. 109072014)**
**9000 Midlantic Drive, Suite 300**
**Mount Laurel, New Jersey 08054**
**Office: (856) 596-8900**
**Fax:      (856) 596-9631**
*Attorneys for Plaintiff, Miller Auto Leasing Co. d/b/a Miller Truck Leasing Co.*

| | |
|---|---|
| MILLER AUTO LEASING CO. d/b/a Miller Truck Leasing Co., <br><br> *Plaintiff*, <br><br> v. <br><br> ZARIZ TRANSPORT INC.; JOHN/JANE DOES (1-10); and ABC ENTITIES (1-10), <br><br> *Defendants*. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION - CIVIL PART BURLINGTON COUNTY <br><br> DOCKET NO.: BUR-L-1193-23 <br><br> CIVIL ACTION <br><br> **ORDER ENTERING DEFAULT JUDGMENT** |

**THIS MATTER** having been brought before the Court by way of the Application for the Clerk's Entry of Final Judgment by Default filed by Plaintiff, MILLER AUTO LEASING CO. d/b/a Miller Truck Leasing Co. ("Plaintiff"), seeking a Default Judgment in its favor and against Defendant, ZARIZ TRANSPORT INC. ("Defendant"); and the Summons and Complaint in the above-captioned action having been duly-served on the Defendant, and the Defendant's default having been duly entered on the docket for failure to appear and/or otherwise respond in the action; and the Court having been satisfied that Defendant is not a minor, incompetent, and/or protected by the Servicemembers Civil Relief Act, 50 U.S.C. § 501, *et seq.*; and Plaintiff having established its entitlement to the entry of Final Judgment by Default in its favor and against Defendant by the Certifications, documents, and other materials submitted in support of its Application pursuant to Rule 4:43-2(a); and for good cause appearing.

LAW OFFICE
**Parker McCay P.A.**

1

APXEXB00014
00052

IT IS on this __14th__ day of _____September_____, 2023:

ORDERED that Default Judgment for a sum certain be and hereby is entered in favor of the Plaintiff, MILLER AUTO LEASING CO. d/b/a Miller Truck Leasing Co., and against the Defendant, ZARIZ TRANSPORT INC. ("Defendant"), in the amount of **$624,095.61**, together with costs;

IT IS FURTHER ORDERED that interest shall accrue on said judgment at the maximum legal rate until such judgment is satisfied; and

IT IS FURTHER ORDERED that a copy of this Final Judgment by Default shall be served upon Defendant within seven (7) days of Plaintiff's receipt of same.

_____
CLERK OF THE SUPERIOR COURT OF NEW JERSEY

Richard L. Hertzberg, J.S.C.

LAW OFFICE
PARKER McCAY P.A.

4857-5168-0126, v. 1

2

APXEXB00015

00053

| | |
|---|---|
| MILLER AUTO LEASING CO. d/b/a Miller Truck Leasing Co., | SUPERIOR COURT OF NEW JERSEY : LAW DIVISION – CIVIL PART : BURLINGTON COUNTY : |
| *Plaintiff,* | : CIVIL ACTION : |
| v. | : DOCKET NO.: BUR-L-1193-23 : JUDGMENT NO.: J-121095-23 |
| ZARIZ TRANSPORT INC.; JOHN/JANE DOES (1-10); and ABC ENTITIES (1-10), | : : **ORDER** : |
| *Defendants.* | : |

**THIS MATTER** having come before the Court upon Plaintiff's motion to enforce litigant's rights, and the Court having reviewed the papers submitted and having received no opposition, and for good cause shown;

**IT IS** on this _19th_ day of _____December_____ 2023 **ORDERED** that Plaintiff's motion is hereby **GRANTED** as follows:

1. Defendant, Zariz Transport Inc., has violated Plaintiff's rights as a litigant;

2. Defendant, Zariz Transport Inc., shall immediately and in good faith furnish complete, responsive, and certified answers to the Information Subpoena as required by the Information Subpoena; and

3. If Defendant, Zariz Transport Inc., fails to comply with the Information Subpoena within ten (10) days of the certified date of personal service or mailing of this Order, a warrant for the Defendant's arrest may issue out of this Court without further notice, and the Sheriff may arrest any owner, officer, and/or agent of Defendant for the purpose of securing Defendant's compliance with the Information Subpoena.

**IT IS FURTHER ORDERED** that this Order shall be deemed effectuated upon all parties upon its upload to eCourts. Movant shall serve all parties not electronically served within seven (7) days of the date of this Order.

_____
Richard L. Hertzberg, J.S.C.

APXEXB00016
00054

**DiFrancesco, Bateman, Kunzman,**
**Davis, Lehrer & Flaum, P.C.**
15 Mountain Boulevard
Warren, N J 07059
(908) 757-7800
*Attorney ID# 020011980*
Attorneys for Plaintiff

| | |
|---|---|
| POWER POOL PLUS, INC.<br><br>Plaintiff,<br><br>v.<br><br>ZARIZ TRANSPORT, INC.<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: CIVIL PART<br>WARREN COUNTY<br><br>DOCKET NO. WRN-L-000076-23<br><br>CIVIL ACTION<br><br>**FINAL JUDGMENT BY DEFAULT**<br>**AND TAXING OF COSTS** |

The Defendant, Zariz Transport, Inc., having been duly served with process and a copy of the Complaint in the above-entitled action, and having been defaulted for failure to answer, appear or otherwise move as to Complaint, and the Defendant not being an infant or incompetent person; and Plaintiff having filed a Certification setting forth a particular statement of items of the claim, their amounts and dates, a calculation in figures of the amount of interest, the payment of credits, if any, and the net amount due:

IT IS ON THIS __6th__ day of ___June___, 2023

ORDERED that final judgment be entered in the sum of $38,095.37 with costs in favor of Plaintiff Power Pool Plus, Inc. and against Defendant Zariz Transport, Inc.

/s/ Michelle M. Smith
_____
Michelle M. Smith, Esq.          Clerk
Clerk of Superior Court

{A1573226.1 }

***DiFrancesco, Bateman, Kunzman,***
  ***Davis, Lehrer & Flaum, P.C.***
15 Mountain Boulevard
Warren, N J 07059
(908) 757-7800
*Attorney ID# 020011980*
Attorneys for Plaintiff

| | |
|---|---|
| POWER POOL PLUS, INC.<br><br>Plaintiff,<br><br>v.<br><br>ZARIZ TRANSPORT, INC.<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: CIVIL PART<br>WARREN COUNTY<br><br>DOCKET NO. WRN-L-<br><br>CIVIL ACTION<br><br>**COMPLAINT** |

Plaintiff Power Pool Plus, Inc., by way of Complaint against the Defendant Zariz Transport, Inc., says:

**FIRST COUNT**

1.      Plaintiff is a corporation duly organized and existing under the laws of the State of New Jersey with a place of business at 7 Edge Road, Alpha, New Jersey 08865.

2.      Upon information and belief, Defendant Zariz Transport, Inc. is a corporation duly organized with a place of business at 7601 N Federal Highway, Suite B230, Boca Raton, Florida 33487.

3.      On or about August 5, 2022, the parties entered into an Equipment Master Rental Agreement, a copy of which is attached hereto as **Exhibit A** and is incorporated herein by reference.

4.      Pursuant to the Rental Agreement, Plaintiff provided certain equipment to the Defendant.

5.      Defendant retained and utilized equipment provided by Plaintiff through

APXEXB00018
00056

December 2022. Pursuant to the terms of the agreement between the parties, Defendant owes Plaintiff $42,835.09 for such rental.

6.    Defendant has made no payment of any amounts due for its rental of equipment from Plaintiff.

7.    Pursuant to the agreement of the parties, a finance charge of 1.5% is due for any and all monthly rental payments that are more than 30 days due or in the event of any default. Further, pursuant to the Agreement, Defendant is responsible for attorney's fees of the Plaintiff for collection of amounts due.

8.    Demand has been made by the Plaintiff upon the Defendant for payment of amounts due and Defendant has refused to make payment.

9.    Defendant is bound by the terms of the Equipment Master Rental Agreement. Defendant's actions constitute breach of contract.

WHEREFORE, Plaintiff Power Pool Plus, Inc. demands judgment against the Defendant Zariz Transport, Inc., jointly and severally, or in the alternative, for the following:

A.    All rental amounts due, plus interest;

B.    Attorney's fees and costs of suit; and

C.    For such other relief as the Court deems just and equitable.

## SECOND COUNT

10.    Plaintiff repeats the allegations of the First Count and incorporate same into this Count as if set forth at length herein.

11.    The actions of the Defendant as aforesaid constitute unjust enrichment.

WHEREFORE, Plaintiff Power Pool Plus, Inc. demands judgment against the Defendant Zariz Transport, Inc., jointly and severally, or in the alternative, for the following:

A.    All rental amounts due, plus interest;

B.    Attorney's fees and costs of suit; and

APXEXB00019
00057

C.   For such other relief as the Court deems just and equitable.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Paul R. Rizzo, Esq. has been designated as trial counsel in connection with the above-captioned matter.

## CERTIFICATION OF COUNSEL

1.   Pursuant to Rule 4:5-1, the undersigned hereby certifies that at the time of filing this Complaint, the matter in controversy is not the subject of any other action pending in any court and/or arbitration proceeding.  The undersigned is unaware of any non-party who should be joined in this action.

2.   Pursuant to Rule 4:5-1(b)(3), the undersigned hereby certifies that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

3.   I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Paul R. Rizzo

Dated:  March 13, 2023

APXEXB00020
00058

APXEXB00021

**FILED**

*3:35 pm, Oct 20, 2023*

Michael Muscio, Esq. (ID238971970)
Muscio, Kaplan & Helfrich, LLC
3125 Route 10 East, Suite 2D
Denville, New Jersey 07834
P: (973) 328-0403 Fax: (973-328-6919)
Attorneys for Plaintiffs Road Runner Towing & Truck Service, LLC and Skyway Truck
Parts, Inc.

| | |
|---|---|
| Road Runner Towing & Truck Service, LLC and Skyway Truck Parts, Inc.<br><br>        Plaintiffs<br><br>vs.<br><br>Zariz Transport, Inc.<br><br>        Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: ESSEX COUNTY<br><br>DOCKET NO. ESX-L-7782-22<br><br>        Civil Action<br><br>        ORDER |

      **THIS MATTER** having been brought before the Court on the application of Michael

Muscio, Esq. (Muscio, Kaplan & Helfrich, LLC) attorneys for plaintiffs, Road Runner Towing &

Truck Service, LLC and Skyway Truck Parts, Inc., seeking an order to enforce settlement, enter

judgment and award costs and counsel fees, and the Court having reviewed and considered the

submission in support of (and in opposition to) the motion, and being of the opinion that movant

is entitled to the relief sought, and for good cause having been shown;

      **IT IS ON THIS**  20th  **DAY OF**  October  **, 2023**;

      **ORDERED**:

1.   That Judgment be entered in favor of plaintiff Skyway Truck Parts, Inc. in the amount

     of $15,000.00;

APXEXB00022
00060

2. That Judgment be entered in favor of plaintiff Road Runner Towing & Truck Service, LLC in the amount of $5,000.00.

3. That the Counterclaim of defendant Zariz Transport, Inc. is dismissed with prejudice.

4. ~~That counsel fees and costs in the amount of $800.00 be awarded to Mussio, Kaplan & Helfrich, LLC.~~

**IT IS FURTHER ORDERED** that a copy of this Order, ~~be served by the moving party~~ shall be served upon all parties/counsel of record within seven (7) days of the date hereof, per the Rules of Court. ~~upon all other parties, or their attorneys, if any, within ____ days of this Order.~~

/S/ Hon. Robert H. Gardner, J.S.C.
_____
Hon. ROBERT H. GARDNER, J.S.C.

American Rule Applies

_____ Opposed

____ X Unopposed

Michael Muscio, Esq. (ID238971970)
Muscio, Kaplan & Helfrich, LLC
3125 Route 10 East, Suite 2D
Denville, New Jersey 07834
P: (973) 328-0403 Fax: (973-328-6919)
Attorneys for Plaintiffs Road Runner Towing & Truck Service, LLC and Skyway Truck
Parts, Inc.

| | |
|---|---|
| Road Runner Towing & Truck Service, LLC and Skyway Truck Parts, Inc. <br>         Plaintiffs <br><br> vs. <br> Zariz Transport, Inc. <br><br>         Defendant. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION: ESSEX COUNTY <br><br> DOCKET NO.:  ESX-L-7782-22 <br>              J-144510-23 <br><br> Civil Action <br><br> WRIT OF EXECUTION |

THE STATE OF NEW JERSEY

TO THE SHERIFF OF ESSEX COUNTY,

WHEREAS, on the 20TH day of October, 2023 Judgment was recovered by plaintiffs, Road Runner Towing & Truck Service, LLC and Skyway Truck Parts, Inc., in an action in the Superior Court of New Jersey, Law Division, Essex County, against Defendant, Zariz Transport, Inc., for damages of $20,000.00 and taxed costs $290.00; and,

WHEREAS, on October 20, 2023, the Judgment was entered in the civil docket of the Clerk of the Superior Court and there remains due thereon $20,290.00,

THEREFORE, WE COMMAND YOU that you satisfy the said Judgment out of the personal property of the said Judgment Debtor within your County; and if sufficient personal property cannot be found then, subsequent to your levy and only after receipt of an order of the

APXEXB00024

court pursuant to R. 4:59-1(d), out of the real property in your County belonging to the judgment debtor at the time when the judgment was entered or docketed in the office of the Clerk of this Court or at any time thereafter, in whosesoever hands the same may be. Any levy pursuant to this writ shall exclude (1) all funds in an account of the debtor with a bank or other financial institution, if all deposits into the account during the 90 days immediately prior to service of the writ were electronic deposits, made on a recurring basis, of funds identifiable by the bank or other financial institution as exempt from execution, levy or attachment under New Jersey or federal law, and (2) all funds deposited electronically in an account of the debtor with a bank or other financial institution during the two months immediately prior to the account review undertaken by the bank or other financial institution in response to the writ that are identifiable by the bank or other financial institution as exempt from execution, levy or attachment under New Jersey or federal law. You shall pay the said monies realized by you from such property to Michel Muscio, Esq., attorney in this action. Within twenty-four months after the date of its issuance you return this execution and your proceedings thereon to the Clerk of the Superior Court of New Jersey at Trenton.

**WE FURTHER COMMAND YOU**, that in case of a sale, you make your return of this Writ with your proceedings thereon before this Court and you pay to the Clerk thereof any surplus in your hands within thirty (30) days after the sale.

**WITNESS, HONORABLE**_____, a Judge of the Superior Court, at Newark, this _____day of _____, 2023.

_____, Clerk

ENDORSEMENT

| | |
|---|---|
| Judgment Amount: | $20,290.00 |
| Additional Costs: | $_____ |
| Interest thereon: | $_____ |
| Credits: | $_____ |
| Sheriff's Fees: | $    51.10 |
| Sheriff's Commissions: | $_____ |
| | |
| Total | $20,341.10 |

MUSCIO, KAPLAN & HELFRICH, LLC
Attorneys for Plaintiffs

By: _____
    Michael Muscio, Esq.

Dated:  December 6, 2023.

APXEXB00026

00064

CFN 20230431140
OR BK 34736 PG 1193
RECORDED 12/20/2023 11:25 AM
Palm Beach County, Florida
Joseph Abruzzo, Clerk
Pgs: 1193 - 1194; (2pgs)

Filing # 188176750 E-Filed 12/17/2023 06:32:22 PM

IN THE COUNTY COURT IN AND FOR PALM BEACH COUNTY, FLORIDA
CIVIL DIVISION
CASE NO.: 50-2023-CC-013327-XXXA-MB

PAWNEE LEASING CORPORATION,

        Plaintiff,

vs.

ZARIZ TRANSPORT INC., and
YAAKOV GUZELGU, a/k/a
YAAKOV I. GUZELGUL,

        Defendants.

_____ /

### FINAL DEFAULT JUDGMENT

    THIS ACTION was heard on Plaintiff's Motion for Entry of Final Default Judgment and, the Court having reviewed the file, including the pleadings and affidavits, and otherwise being duly advised in the premises,

    IT IS ADJUDGED that:

    1.    The Court finds that the Defendants, ZARIZ TRANSPORT INC., and YAAKOV GUZELGU, a/k/a YAAKOV I. GUZELGUL, were validly served with process in this action.

    2.    Plaintiff is entitled to a default and Final Default Judgment against Defendants, ZARIZ TRANSPORT INC., and YAAKOV GUZELGU, a/k/a YAAKOV I. GUZELGUL.

    3.    Plaintiff, PAWNEE LEASING CORPORATION, shall recover from Defendants, ZARIZ TRANSPORT INC., and YAAKOV GUZELGU, a/k/a YAAKOV I. GUZELGUL, jointly and severally, the principal sum of $23,453.33, court costs of $556.70, and pre-judgment interest of $2,328.63, making a Grand Total of **$26,338.66**, all of which shall bear interest at the rate of 8.54% a year, or the then applicable legal rate, for all of the above let execution issue.

    4.    It is further ordered and adjudged that the judgment debtors shall complete under oath Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on the judgment creditor's attorney, within 45 days from the date of this Final Judgment, unless the Final Judgment is satisfied or post-judgment discovery is stayed.

FILED: PALM BEACH COUNTY, FL, JOSEPH ABRUZZO, CLERK, 12/17/2023 06:32:22 PM

NOT A CERTIFIED COPY

APXEXB00027
00065

CFN 20230431140
OR BK 34736 PG 1194
Pg: 2 of 2

Case No. 50-2023-CC-013327-XXXA-MB

    5.    Jurisdiction of this case is retained to enter further orders that are proper to compel the judgment debtors to complete form 1.977, including all required attachments, and serve it on the judgment creditor's attorney and to award attorney's fees pursuant to contract and to otherwise enforce this Judgment.

**PLAINTIFF SHALL FURNISH A COPY OF THIS FINAL JUDGMENT AND THE FACT INFORMATION SHEET TO THE DEFENDANT BY U.S. MAIL AND FILE A CERTIFICATE OF SERVICE WITHIN 10 DAYS. THE FILING OF A CERTIFICATE OF SERVICE IS REQUIRED BEFORE THE COURT WILL ENTERTAIN A MOTION TO COMPEL OR A WRIT OF GARNISHMENT.**

ORDERED in Chambers in Palm Beach County, Florida.

50-2023-CC-013327-XXXA-MB    12/17/2023
Danielle Sherriff - Judge

50-2023-CC-013327-XXXA-MB    12/17/2023
Danielle Sherriff
Judge

Copies furnished to:
Counsel for Judgment Creditor:
Robert A. Solove, Esq. PO Box 560608
Miami, FL 33256
Primary E-mail: **service@solovelawfirm.com**
Secondary E-mail: **robert@solovelawfirm.com**
Judgment Creditor:
Pawnee Leasing Corporation 3801 Automation Way, Suite 207 Fort Collins, CO 80525
Judgment Debtors:
Zariz Transport Inc.
197 S. Federal Highway, Suite 200 Boca Raton, FL 33432
Yaakov Guzelgu, a/k/a Yaakov I. Guzelgul 4770 Fox Hunt Trail Boca Raton, FL 33487

NOT A CERTIFIED COPY

APXEXB00028
00066

Filing # 187385023 E-Filed 12/05/2023 01:21:04 PM

**CFN 20230421544**
**OR BK 34720 PG 791**
RECORDED 12/13/2023 8:46 AM
Palm Beach County, Florida
Joseph Abruzzo, Clerk
Pgs: 791 - 793; (3pgs)

## CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA

WELLS FARGO EQUIPMENT FINANCE,
INC.,

    Plaintiff,

v.

ZARIZ TRANSPORT INC., a Florida Profit
Corporation, and YAAKOV GUZELGUL, an
individual

    Defendants.

CASE NO.:  23-CA-13748 AE

_____

### FINAL JUDGMENT

    **THIS** came before the Court, on the request of Plaintiff, WELLS FARGO EQUIPMENT FINANCE, INC. ("Wells Fargo" or "Plaintiff") and Defendants, ZARIZ TRANSPORT INC. ("Zariz"), and YAAKOV GUZELGUL ("Guarantor," and together with Zariz, the "Defendants"), pursuant to the Joint Stipulation for Entry of Final Judgment filed with the Court. Plaintiff and Defendants are hereinafter referred to collectively as the "Parties." The Court, having reviewed the file and recognizing the agreement of the Parties, **IT IS ORDERED AND ADJUDGED** that:

    1.     Final Judgment is entered in favor of Wells Fargo as to Count I (against Zariz), Count II (against Guarantor), and Count III (against Zariz) of Wells Fargo's Verified Complaint.

    2.     **Amounts Due.** Plaintiff, WELLS FARGO EQUIPMENT FINANCE, INC., whose address is 600 South 4th Street, MAC N 9300-100, Minneapolis, MN 55415, shall recover from Defendants, ZARIZ TRANSPORT INC., and YAAKOV GUZELGUL, jointly and severally, the amount of $2,198,346.98, interest at the rate set forth in Paragraph 3 below, all for which let execution issue forthwith.

    3.     **Interest.** The grand total amount referenced in Paragraph 2 shall bear interest from this date forward at the rates provided by Florida Statute §55.03(1), currently 8.54% per annum.

    4.     **Jurisdiction.** Jurisdiction of this action is retained to enter further orders that are proper.

    5.     Defendant ZARIZ TRANSPORT INC.'s last known address is 7601 N. Federal Highway, Suite 230B, Boca Raton, FL 33487.

    6.     Defendant YAAKOV GUZELGUL'S last known address is 4770 Fox Hunt Trail, Boca Raton, FL 33432.

134456716.2

FILED: PALM BEACH COUNTY, FL, JOSEPH ABRUZZO, CLERK, 12/05/2023 01:21:04 PM

7. The Plaintiff is entitled to the immediate possession of the following seventy-five (75) 2023 Jansteel 40' Gooseneck Chassis described in the Verified Complaint and identified by the following vehicle identification numbers (collectively, the "Equipment"):

| # | VIN | # | VIN | # | VIN |
|---|---|---|---|---|---|
| 1 | 7PFJ3AA24NB001438 | 26 | 7PFJ3AA23NB001463 | 52 | 7PFJ3AA2XNB001489 |
| 2 | 7PFJ3AA26NB001439 | 27 | 7PFJ3AA25NB001464 | 53 | 7PFJ3AA26NB001490 |
| 3 | 7PFJ3AA22NB001440 | 28 | 7PFJ3AA27NB001465 | 54 | 7PFJ3AA28NB001491 |
| 4 | 7PFJ3AA24NB001441 | 29 | 7PFJ3AA29NB001466 | 55 | 7PFJ3AA2XNB001492 |
| 5 | 7PFJ3AA26NB001442 | 30 | 7PFJ3AA20NB001467 | 56 | 7PFJ3AA21NB001493 |
| 6 | 7PFJ3AA28NB001443 | 31 | 7PFJ3AA22NB001468 | 57 | 7PFJ3AA23NB001494 |
| 7 | 7PFJ3AA2XNB001444 | 32 | 7PFJ3AA24NB001469 | 58 | 7PFJ3AA25NB001495 |
| 8 | 7PFJ3AA21NB001445 | 33 | 7PFJ3AA20NB001470 | 59 | 7PFJ3AA27NB001496 |
| 9 | 7PFJ3AA23NB001446 | 34 | 7PFJ3AA22NB001471 | 60 | 7PFJ3AA29NB001497 |
| 10 | 7PFJ3AA25NB001447 | 35 | 7PFJ3AA24NB001472 | 61 | 7PFJ3AA20NB001498 |
| 11 | 7PFJ3AA27NB001448 | 36 | 7PFJ3AA26NB001473 | 62 | 7PFJ3AA22NB001499 |
| 12 | 7PFJ3AA29NB001449 | 37 | 7PFJ3AA28NB001474 | 63 | 7PFJ3AA25NB001500 |
| 13 | 7PFJ3AA25NB001450 | 38 | 7PFJ3AA2XNB001475 | 64 | 7PFJ3AA27NB001501 |
| 14 | 7PFJ3AA27NB001451 | 39 | 7PFJ3AA21NB001476 | 65 | 7PFJ3AA29NB001502 |
| 15 | 7PFJ3AA29NB001452 | 40 | 7PFJ3AA23NB001477 | 66 | 7PFJ3AA20NB001503 |
| 16 | 7PFJ3AA20NB001453 | 41 | 7PFJ3AA25NB001478 | 67 | 7PFJ3AA22NB001504 |
| 17 | 7PFJ3AA22NB001454 | 42 | 7PFJ3AA27NB001479 | 68 | 7PFJ3AA24NB001505 |
| 18 | 7PFJ3AA24NB001455 | 43 | 7PFJ3AA23NB001480 | 69 | 7PFJ3AA26NB001506 |
| 19 | 7PFJ3AA26NB001456 | 44 | 7PFJ3AA25NB001481 | 70 | 7PFJ3AA28NB001507 |
| 20 | 7PFJ3AA28NB001457 | 45 | 7PFJ3AA27NB001482 | 71 | 7PFJ3AA2XNB001508 |
| 21 | 7PFJ3AA2XNB001458 | 46 | 7PFJ3AA29NB001483 | 72 | 7PFJ3AA21NB001509 |
| 22 | 7PFJ3AA21NB001459 | 47 | 7PFJ3AA20NB001484 | 73 | 7PFJ3AA28NB001510 |
| 23 | 7PFJ3AA28NB001460 | 48 | 7PFJ3AA22NB001485 | 74 | 7PFJ3AA2XNB001511 |
| 24 | 7PFJ3AA2XNB001461 | 49 | 7PFJ3AA24NB001486 | 75 | 7PFJ3AA21NB001512 |
| 25 | 7PFJ3AA21NB001462 | 50 | 7PFJ3AA26NB001487 | | |
| | | 51 | 7PFJ3AA28NB001488 | | |

NOT A CERTIFIED COPY

8. Defendants shall surrender the Equipment to Wells Fargo c/o Josh Hurd (614-810-0810), at 4201 Ridgeway Lane, Lakeland, FL 33803 or, coordinate the surrender of the Equipment to Wells Fargo at another agreed location. Any individual or entity failing to comply with the terms of this Order shall be subject to contempt and appropriate sanctions upon the filing of a verified motion by Plaintiff.

9. Additionally, the Clerk shall immediately issue the Writ of Replevin attached hereto as **Exhibit 1** as to Defendants, directing the Sheriff of Palm Beach County or his deputies to replevy the Equipment described in the attached Writ to this Final Judgment.

10. The Sheriff of Palm Beach County, Florida are hereby authorized and directed to break any locks, enter the properties and buildings or enclosures where the Equipment may be located, including at Zariz's last known address of 7601 N. Federal Highway, Suite B-230, Boca Raton, FL 33487, and break into and enter any safes, lockboxes, and other enclosures or hindrances located therein, and replevy the Equipment described in the Writ of Replevin, for the purpose of the replevy of the Equipment described in the Writ of Replevin.

134456716.2

11.     The Sheriff is directed to remove the Equipment from the possession of the Defendants or any other party with possession and/or control of the Equipment, and to immediately place the Equipment in the custody of Plaintiff or its authorized representatives.

12.     Defendants, employees and agents or other third parties in possession and/or control of the Equipment shall not impede the execution of the Writ of Replevin.

**DONE AND ORDERED** in Palm Beach County, Florida.

502023CA013748XXXAMB    12/05/2023
Bradley G. Harper    Circuit Judge

502023CA013748XXXAMB    12/05/2023
Bradley G. Harper
Circuit Judge

_____
Honorable Bradley G. Harper
Circuit Court Judge

Copies furnished to:

Wells Fargo Equipment Finance, Inc.
c/o Alexandra D. Blye, Esq.
Carlton Fields, P.A.
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, FL 33401

Wells Fargo Equipment Finance, Inc.
c/o Donald R. Kirk
Carlton Fields, P.A.
4221 West Boy Scout Blvd., Suite 1000
Tampa, FL 33601

*Zariz Transport, Inc. and Yaakov Guzelgul*
c/o Joe M. Grant, Esq.
Lorium Law
197 South Federal Highway, Suite 200
Boca Raton, FL 33432

134456716.2

APXEXB00031
00069

Filing # 189094866 E-Filed 01/04/2024 01:33:05 PM

CFN 20240006814 OR BK 34761 PG 1076 RECORDED 1/8/2024 11:57 AM Pgs 1076-1076(1pgs)
Palm Beach County, Florida Joseph Abruzzo, Clerk

IN THE COUNTY COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH COUNTY, FLORIDA

INVESTMENTS LIMITED,

CIVIL DIVISION - RD

Plaintiff,          CASE NO. 50-2023-CC-015688

v.

ZARIZ TRANSPORT, INC,
a Florida Profit Corporation

Defendants.

_____/

### FINAL JUDGMENT FOR EVICTION (Default)

This cause comes before the Court upon the Motion of the Plaintiff and the Court having considered the Summons and Complaint and finds that the Defendant, **ZARIZ TRANSPORT, INC, a Florida Profit Corporation**, have failed to comply with terms of the Lease Agreement entered into between the parties, heretofore entered and approved by this Court and that the Plaintiff is entitled to judgment for Eviction forthwith, it is:

 **ORDERED AND ADJUDGED** that the Plaintiff, INVESTMENTS LIMITED, recover from Defendants, **ZARIZ TRANSPORT, INC, a Florida Profit Corporation,** for possession of the following premises located in Palm Beach County, Florida, to-wit, **7601 N. Federal Highway, Suite B240/B250, Boca Raton, FL 33487**, and the Clerk is hereby directed to issue a Writ of Possession for the aforesaid premises forthwith. The court retains jurisdiction to hear the damages portion of Plaintiff's complaint, as well as to determine the amount of reasonable attorney's fees and costs that Plaintiff is entitled to for its eviction action.

 **DONE AND ORDERED in Palm Beach County, Florida.**

50-2023-CC-015688-XXXA-SB   01/04/2024
Reginald R. Corlew   County Judge

50-2023-CC-015688-XXXA-SB   01/04/2024
Reginald R. Corlew
County Judge

_____
**COUNTY COURT JUDGE**

FILED: PALM BEACH COUNTY, FL, JOSEPH ABRUZZO, CLERK, 01/04/2024 01:33:05 PM

APXEXB00032
00070

Filing # 188863964 E-Filed 12/30/2023 03:12:46 PM

CFN 20240005158
OR BK 34758 PG 1637
RECORDED 1/5/2024 11:15 AM
Palm Beach County, Florida
Joseph Abruzzo, Clerk
Pgs: 1637 - 1638; (2pgs)

IN THE COUNTY COURT IN AND FOR
PALM BEACH COUNTY, FLORIDA

COUNTY CIVIL DIVISION: "RS"
CASE NO.: 50-2023-CC-015573-XXXA-SB

VALLEY EXECUTIVE ASSOCIATES, LLC A NEW JERSEY LIMITED LIABILITY
COMPANY AUTHORIZED TO CONDUCT BUSINESS IN FLORIDA,
    Plaintiff/Petitioner
vs.
ZARIZ TRANSPORT, INC. A NEW JERSEY FOR PROFIT CORPORATION,
    Defendant/Respondent.
_____/

**FINAL JUDGMENT FOR POSSESSION AND ORDER DIRECTING THE CLERK
OF COURT TO "CLOSE" THE FILE**
(FJUD)

    **THIS CAUSE** came before the Court upon a complaint for tenant eviction. The
Defendant/Tenant(s) has been properly served and a default has been entered in accordance with
the law. The Plaintiff(s) is entitled to a final judgment of eviction.

    After a review of the court file and being otherwise informed in the premises, it is hereby
**ORDERED AND ADJUDGED** as follows:

1. The Plaintiff(s), **VALLEY EXECUTIVE ASSOCIATES, LLC A NEW JERSEY
   LIMITED LIABILITY COMPANY AUTHORIZED TO CONDUCT BUSINESS
   IN FLORIDA**, does have and must recover from the Defendant(s), **ZARIZ
   TRANSPORT, INC. A NEW JERSEY FOR PROFIT CORPORATION** ,
   possession of the following premises located in Palm Beach County, Florida, to wit:
   **7601 N FEDERAL HWY SUITE B-230 BOCA RATON, FL 33487**

2. Clerk must issue a Writ of Possession for the property listed in paragraph 1 upon the
   Plaintiff's application and submission of the appropriate fees.

3. The Clerk of Court shall "close" the file.

NOT A CERTIFIED COPY

FILED: PALM BEACH COUNTY, FL, JOSEPH ABRUZZO, CLERK, 12/30/2023 03:12:46 PM

APEXB00033

00071

CFN 20240005158
OR BK 34758 PG 1638
Pg: 2 of 2

Case No. 50-2023-CC-015573-XXXA-SB

4. The complaint for eviction contains a count II claim for damages and has been properly served upon the Defendant(s). The Plaintiff must file the appropriate motion for final hearing and supporting materials within sixty (60) days from the date of this Order.

**DONE AND ORDERED** in Delray Beach, Palm Beach County, Florida.

50-2023-CC-015573-XXXA-SB    12/30/2023          Ori F. Silver    Judge

50-2023-CC-015573-XXXA-SB       12/30/2023
Ori F. Silver
Judge

**COPIES TO:**

| | | |
|---|---|---|
| JASON M. LAZAR | 215 N FEDERAL HWY BOCA RATON, FL 33432 | JLAZAR@INVESTMENTSLIMITED.COM |
| | | lmorales@investmentslimited.com |
| | | bhaderspock@investmentslimited.com |
| ZARIZ TRANSPORT, INC. A NEW JERSEY FOR PROFIT CORPORATION | 7601 N FEDERAL HWY SUITE B-230 BOCA RATON, FL 33487 | No E-mail Address Available |

NOT A CERTIFIED COPY

Page **2** of **2**

APXEXB00034

00072

| Form 668 (Y)(c) | 3008 | Department of the Treasury - Internal Revenue Service |
|---|---|---|

**Notice of Federal Tax Lien**

(Rev. February 2004)

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #3 Lien Unit Phone: (800) 913-6050 | Serial Number 481435423 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

CFN 20230380763
OR BK 34655 PG 1738
RECORDED 11/7/2023 1:35 PM
Palm Beach County, Florida
Joseph Abruzzo, Clerk
Pgs: 1738 - 1738; (1pgs)

Name of Taxpayer ZARIZ TRANSPORT INC a Corporation

Residence        7601 NORTH FEDERAL HIGHWAY - SUITE
                 BOCA RATON, FL 33487-1657

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 2290 | 07/01/2022 | XX-XXX4696 | 03/20/2023 | 04/19/2033 | 12877.87 |
| 2290 | 08/01/2022 | XX-XXX4696 | 12/05/2022 | 01/04/2033 | |
| 2290 | 08/01/2022 | XX-XXX4696 | 04/10/2023 | 05/10/2033 | 6956.58 |
| 2290 | 10/01/2022 | XX-XXX4696 | 12/26/2022 | 01/25/2033 | |
| 2290 | 10/01/2022 | XX-XXX4696 | 04/10/2023 | 05/10/2033 | 831.18 |
| 941 | 06/30/2023 | XX-XXX4696 | 08/07/2023 | 09/06/2033 | 5115.35 |

| Place of Filing | County Courthouse Palm Beach County West Palm Beach, FL 33402 | Total $ 25780.98 |
|---|---|---|

This notice was prepared and signed at _____ BALTIMORE, MD _____, on this,

the ___23rd___ day of ___October___, ___2023___.

| Signature  *Elvin Dean Curry* for MARIA LYON | Title REVENUE OFFICER (561) 616-2074 | 23-02-4508 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office        Form **668(Y)(c)** (Rev. 2-2004) CAT. NO 60025X

1  NEAL S. SALISIAN, SBN 240277
   neal.salisian@salisianlee.com
2  GLENN R. COFFMAN, SBN 305669
   glenn.coffman@salisianlee.com
3  JARED T. DENSEN, SBN 325164
   jared.densen@salisianlee.com
4  **SALISIAN | LEE LLP**
   550 South Hope Street, Suite 750
5  Los Angeles, California 90071-2924
   Telephone:   (213) 622-9100
6  Facsimile:    (800) 622-9145

7  MARISA D. POULOS (SBN 197904)
   marisa.poulos@balboacapital.com
8  **BALBOA CAPITAL CORPORATION**
   575 Anton Boulevard, 12th Floor
9  Costa Mesa, California 92626
   Tel: (949) 399-6303
10
   Attorneys for Plaintiff
11 AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION

12

13              THE UNITED STATES DISTRICT COURT

14         FOR THE CENTRAL DISTRICT OF CALIFORNIA

15

16 AMERIS BANK, a Georgia state-          Case No.:
   chartered banking corporation, doing
17 business as BALBOA CAPITAL
   CORPORATION,                           **PLAINTIFF AMERIS BANK D/B/A/
18                                         BALBOA CAPITAL
                   Plaintiff,             CORPORATION'S COMPLAINT
19                                         FOR:**
            vs.
20                                        **1. BREACH OF EQUIPMENT
   ZARIZ TRANSPORT INC., a Florida           FINANCING AGREEMENT**
21 corporation; and YAAKOV ISRAEL
   GUZELGUL, an individual,               **2. BREACH OF PERSONAL
22                                            GUARANTY**
                   Defendants.
23

24

25

26

27

28

COMPLAINT

APXEXB00036
00074

Salisian|Lee LLP

Plaintiff Ameris Bank, a Georgia state-chartered banking corporation doing business as Balboa Capital Corporation, ("Balboa" or "Plaintiff"), alleges as follows:

## PARTIES AND JURISDICTION

1.     Plaintiff Ameris Bank d/b/a Balboa Capital Corporation ("Balboa" or "Plaintiff") is, and at all times relevant to this action was, a Georgia state-chartered banking corporation with Balboa Capital Corporation as one if its divisions, which division has its principal place of business in the State of California, County of Orange.

2.     Defendant Zariz Transport Inc. ("Zariz Transport") is, and at all times relevant to this action was, a Florida corporation with its principal place of business in the County of Palm Beach, State of Florida.

3.     Defendant Yaakov Israel Guzelgul ("Guzelgul"), an individual, is and at all times relevant to this action was, a resident of the County of Palm Beach, State of Florida, and was an officer, director, shareholder, agent and/or owner of Defendant Zariz Transport.

4.     Plaintiff is informed and believes, and thereon alleges, that each Defendant, directly or indirectly, or through agents or other persons, was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.  Plaintiff is informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about the foregoing, and that each Defendant authorized, ratified, adopted, approved, controlled, and aided and abetted the conduct of all other Defendants.

5.     The obligations sued upon herein are commercial in nature and the Complaint herein is not subject to the provisions of California Civil Code section

1

COMPLAINT

Salisian|Lee LLP

APXEXB00037
00075

1 | 1801, *et seq.* (Unruh Retail Installment Sales Act), and/or California Civil Code
2 | section 2981, *et seq.* (Rees-Levering Motor Vehicle Sales and Finance Act).
3 |       6.      Pursuant to the Equipment Financing Agreement and Guaranty
4 | described herein below, defendant Zariz Transport and defendant Guzelgul agreed
5 | that those documents would be governed by the laws of the State of California.  In
6 | addition, the Equipment Financing Agreement provides, in pertinent part, as
7 | follows:

**30. CONSENT TO EXCLUSIVE AND MANDATRY JURISDICTION AND VENUE OF CALIFRNIA.** Debtor submits to the jurisdiction of California and agrees that any action or proceeding to enforce this Agreement, or any action or proceeding arising out of or related to this Agreement will be exclusively commenced, initiated and litigated in the California State Courts of Orange County California and/or the United States District Court for the Central District of California, Santa Ana Division.

      7.      <u>Jurisdiction</u>.  This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1332(a).

      8.      <u>Venue</u>.  The venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), and in the Southern Division pursuant to 28 U.S.C. § 84(c)(3).

## FIRST CAUSE OF ACTION

### (Breach of Equipment Financing Agreement)

### (Against Zariz Transport)

      9.      Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

      10.      Prior to August 2022, Balboa is informed and believes that Zariz Transport initiated and engaged with MHC Truck Source - Atlanta, located at 1630 Iris Drive SW, Conyers, GA 30094 ("Equipment Vendor"), in order to coordinate the acquisition and financing of certain equipment (hereinafter referred to as the "Collateral") for its business.  The Equipment Vendor worked with Zariz Transport in the selection of the Collateral and in coordinating its delivery.

COMPLAINT

Salisian|Lee LLP

APXEXB00038

00076

11.     Thereafter, Balboa is informed and believes, and therefore alleges, that the Equipment Vendor initiated and coordinated submission of Defendants' electronic credit application to Balboa and other financial institutions.  Upon review, Zariz Transport concluded that Balboa offered agreeable terms to finance the Collateral commensurate with its requirements.  Thereafter, the Equipment Vendor accumulated and submitted to Balboa the requisite signatories, documentation, and financial information from the Defendants to finance the Collateral being supplied by the Equipment Vendor.

12.     On or about August 24, 2022, Zariz Transport executed a certain written Equipment Financing Agreement No. 419188-000 (the "EFA"), under the terms of which Balboa loaned to Zariz Transport the principal sum of One-Hundred Sixty-Eight Thousand Four-Hundred Ninety-Seven Dollars and Sixty-Two Cents ($168,497.62), in order to finance the Collateral for its business.  The EFA required Zariz Transport to make sixty (60) monthly payments of $3,563.55, payable on the 24th day of each month, beginning October 24, 2022.  A true and correct copy of the EFA is attached as **Exhibit A** and is incorporated here by reference.

13.     The last payment received by Balboa was credited toward the monthly payment due for May 24, 2023.  Therefore, on or about June 24, 2023, Zariz Transport breached the EFA by failing to make the monthly payment due on that date.  Defendant Zariz Transport's failure to make timely payments is a default under the terms of the EFA.

14.     In accordance with the EFA, and as a proximate result of Zariz Transport's default thereunder, Balboa declared the entire balance of the payments under the EFA to be immediately due and payable to Balboa.  In addition, pursuant to the EFA, Balboa is entitled to recover all accelerated payments due under the EFA.  Therefore, there became due the sum of $185,304.60.  These amounts are exclusive of interest, attorneys' fees and costs, no portion of which sum has been paid by Zariz Transport.

Salisian|Lee LLP

COMPLAINT

APXEXB00039

00077

15.     Balboa has performed all of the terms, conditions, and covenants required to be performed by it under the terms of the EFA, except as excused or prevented by the conduct of Zariz Transport.

16.     In addition, the terms of the EFA provide that Zariz Transport is liable to Balboa for late charges on all payments not made in a timely manner.  As of the date of the filing of Balboa's Complaint, late charges in the sum of $855.26 are now due and owing.

17.     As a proximate result of Zariz Transport's breach of the EFA, Balboa has been damaged in the total sum of $186,159.86, plus prejudgment interest from June 24, 2023, until the entry of judgment herein.

18.     Further, under the terms of the EFA, Zariz Transport promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of the EFA.  Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs as against Zariz Transport.

19.     The EFA also provides Balboa the remedy of possession of the Collateral and to obtain an order that Balboa may, in accordance with applicable state law, sell the remaining Collateral and apply the net proceeds from the sale to the remaining loan balance.  Alternatively, if possession cannot be had, Balboa is entitled to recover the value of the Collateral.

## SECOND CAUSE OF ACTION

### (Breach of Guaranty)

### (Against Guzelgul)

20.     Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

21.     Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with Zariz Transport, Guzelgul guaranteed, in writing, the payment of the then existing and future indebtedness due and owing to Balboa under the terms of the EFA.  A true and correct copy of the written Personal

4

Guaranty signed by Guzelgul (the "Guaranty") is attached as **<u>Exhibit B</u>** and incorporated herein by reference.

22.     Balboa has performed all the terms, conditions, and covenants required to be performed by Balboa under the terms of the Guaranty, except as excused or prevented by the conduct of Guzelgul.

23.     Following a default of Zariz Transport under the terms of the EFA, Balboa demanded Guzelgul make the payments required under the EFA.  Guzelgul failed to meet the Guaranty obligations and make the payments required under the EFA.

24.     Pursuant to the terms of the Guaranty, the sum of $186,159.86, plus prejudgment interest from June 24, 2023, is due and payable to Balboa from Guzelgul.  This Complaint, in addition to previous demands, shall constitute further demand upon Guzelgul to pay the entire indebtedness due and owing from Zariz Transport to Balboa under the terms of the EFA.

25.     Under the terms of the Guaranty, Guzelgul promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of the EFA and the Guaranty.  Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs, as against Guzelgul.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Balboa prays for judgment against Defendants, and each of them, as follows:

**On the First and Second Causes of Action:**

1.     The principal sum $186,159.86;

2.     Prejudgment interest from June 24, 2023 to the date of entry of judgment;

3.     Late charges and non-sufficient charges in an amount to be proven at trial;

Salisian|Lee LLP

COMPLAINT

APXEXB00041

00079

1        4.      An order to recover possession of the Collateral, which is the subject

2  of the EFA, or if the Collateral cannot be delivered, for its reasonable value

3  according to proof;

4        5.      Reasonable attorneys' fees and costs;

5        6.      Costs of suit as provided by law; and

6        7.      Such other and further relief that the Court considers proper.

7

8  DATED:  December 22, 2023      SALISIAN | LEE LLP

9                            By:  _____

10                                Neal S. Salisian

11                                Glenn R. Coffman

12                                Jared T. Densen

13                                Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL
CORPORATION

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Salisian | Lee LLP

COMPLAINT

APXEXB00042

00080

# EXHIBIT "A"

APXEXB00043

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:23-cv-02447-JWH-DFM    Document 1-1    Filed 12/22/23    Page 2 of 16    Page ID #:9



# EQUIPMENT FINANCING AGREEMENT ("Agreement")

Agreement # **419188-000**

## DEBTOR INFORMATION

| DEBTOR INFORMATION | | |
|---|---|---|
| **Debtor Name:**<br>ZARIZ TRANSPORT INC.<br><br>**Phone:** ▮▮▮▮ **Federal Tax ID #:** ▮▮▮▮ | **Debtor's Address:**<br>7601 N Federal Hwy B-230<br>Boca Raton, FL 33487 | **Collateral Location:**<br>**(if different from Debtor's Address)**<br>175 Container Road<br>Savannah, GA 31415 |

## PAYMENT AND TERMS

| Full Description of Collateral (Include Make Model, Serial Numbers)<br><br>See Exhibit A1 attached hereto and incorporated herein by this reference. | **Collateral Cost:**<br>$168,497.62 | **Initial Payment**<br>(Debtor requests that this amount be electronically debited) |
|---|---|---|
| **Term:** 60 Months<br>(Plus any Prefund or Per diem Period)<br>Monthly Payment Amount: $3,563.55 | **Initial Payment Date:**<br>10/24/2022 | **Fee S:** $846.00<br>(financed)<br><br>**Total Amount Due:** $0.00 |

## TERMS OF EQUIPMENT FINANCING AGREEMENT

Balboa Capital Corporation ("Creditor") and Debtor agree as follows:

**1. SECURITY INTEREST:** Debtor hereby grants Creditor a security interest under the Uniform Commercial Code in the above property and equipment (collectively the "Collateral" and individually an "Item of Collateral"). Such security interest is granted to secure performance by Debtor of its obligations hereunder and under any other present or future agreement with Creditor. Debtor shall insure that such security interest is and shall remain a sole first lien security interest. DEBTOR HEREBY AUTHORIZES CREDITOR TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS CREDITOR OR ITS DESIGNEE AS DEBTOR'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON DEBTOR'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL.

**2. COMMENCEMENT DATE:** This Agreement shall commence upon verification of the delivery of the Collateral in a form acceptable to Creditor ("Commencement Date").

**3. NO AGENCY.** DEBTOR ACKNOWLEDGES THAT NO SUPPLIER OR INTERMEDIARY NOR ANY AGENT OF EITHER THEREOF IS AN AGENT OF CREDITOR AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT. *THE SUPPLIER IS NOT AN AGENT OF CREDITOR'S AND NOTHING THE SUPPLIER STATES CAN AFFECT DEBTOR'S OBLIGATION UNDER THIS AGREEMENT. DEBTOR WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER.*

**4. PAYMENTS; PER DIEM EXPENSE REIMBURSEMENT:** Debtor shall repay Creditor the above Monthly Payments in the number of monthly installments indicated above, plus the Per Diem Expense reimbursement as described in this paragraph. The initial Monthly Payment shall be deemed due as of the date indicated above and subsequent Monthly Payments shall be due on the same day of each month thereafter until paid. The first payment we will charge you shall be a pro rata portion of the Monthly Payment based on a daily charge of one-thirtieth (1/30th) or .03333% of the Monthly Payment calculated from number or days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor. Debtor acknowledges that: a) Creditor may charge up to thirty (30) days of Per Diem; and b) **the Per Diem is not credited against the Monthly Payments and is in addition to the Term indicated above.** All Monthly Payments, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All other amounts due thereunder shall be due upon Debtor's receipt of Creditor's invoice. Advance payments, which are the first and last Monthly Payments, shall be applied to the last Monthly Payment in reverse order until exhausted; provided that if there is a default, any payments under this Agreement may be applied to the Obligations at Creditors discretion. In the event Debtor signs this Agreement, but the Agreement is not effected or signed by Creditor, the advanced payments, documentation fee and security deposit may be retained by Creditor so as to compensate Creditor for its processing costs, labor, and other expenses.

Initials 

APXEXB00044

Page 1 of 5
The original document is owned by Balboa Capital Corporation and this copy was created on Aug 26, 2022 08:13:38 AM.

00082



Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:23-cv-02447-JWH-DFM   Document 1-1   Filed 12/22/23   Page 3 of 16   Page ID #:10

**5. NON CANCELABLE AGREEMENT;** NO PREPAYMENT, NO OFFSET, THIS AGREEMENT IS NON CANCELABLE BY DEBTOR FOR ANY REASON WHATSOEVER. DEBTOR MAY REPAY THE MONTHLY PAYMENTS ONLY IN ACCORDANCE HEREWITH. ALL PAYMENTS HEREUNDER ARE TO BE MADE WITHOUT OFFSET.

**6. FINANCING.** THIS AGREEMENT IS SOLELY A COMMERCIAL AND BUSINESS FINANCING AGREEMENT. SEE ADDITIONAL TERMS AND CONDITIONS CONTAINED HEREIN WHICH ARE PART OF THIS AGREEMENT.

**7. NO WARRANTIES.   CREDITOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, REGARDING THE COLLATERAL AND ITS FITNESS, MERCHANTABILITY OR PROFITABILITY FOR ANY PURPOSE WHATSOEVER.** DEBTOR AGREES THAT DEBTOR HAS SELECTED THE SUPPLIER AND EACH ITEM OF COLLATERAL BASED UPON DEBTOR'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY CREDITOR. CREDITOR DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE COLLATERAL.

**8. LOCATION; INSPECTION; USE.** Debtor shall keep, or, as to an Item of Collateral which is movable, permanently garage and not remove from the United States, as appropriate, each Item of Collateral in Debtor's possession and control at the Collateral Location or at such other location to which such Item may have been moved with the prior written consent of Creditor, Upon request, Debtor shall advise Creditor as to the exact location of an Item of Collateral. Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner an in compliance with all applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturer's instructions and warranty requirements.

**9. ALTERATIONS; SECURITY INTEREST COVERAGE.** Without Creditor's prior written consent, Debtor shall not make any alterations, additions or improvements to an Item of Collateral which detract from its economic value or functional utility. All additions and improvements made to an Item of Collateral shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility. Creditor's security interest shall cover all modifications, accessions, additions to and replacements and substitutions for the Collateral. Debtor will not make any replacements or substitutions without Creditor's prior written consent.

**10. MAINTENANCE.** Debtor shall maintain the Collateral in good repair, condition and working order. Debtor shall cause at its sole expense all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties. Debtor will cause each Item of Collateral for which a service contract is generally available to be covered by such a contract which provides coverage typical as to property of the type involved and is issued by a competent servicing entity.

**11. LOSS AND DAMAGE; CASUALTY VALUE.** In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause Debtor shall give Creditor prompt notice thereof and shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is determined by Creditor to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Debtor shall cause the Collateral to be replaced and shall immediately provide Creditor with information necessary to perfect Creditor's security interest in the replacement Collateral, or shall pay Creditor the "Casualty Value" of such Item which shall equal (a) any amounts due at the time of such payment, and (b) each future Monthly Payment due with respect to such Item discounted at three percent (3%) per annum simple interest from the date due to the date of such payment.

**12. PAYMENT OF OBLIGATIONS;** Payment of the Obligations, the Initial Payment/Total Amount Due, the amounts described in section #14, and any other amounts owed under this Agreement shall be made by electronically withdrawing funds from the bank account listed below in this paragraph, or on which Debtor's deposit check was drawn, or the account from which a cancelled or voided check provided by the Debtor can be drawn, or any other account from which Debtor paid any Obligation under this Agreement. **Debtor initiates each transaction** and authorizes Creditor to debit from any of the foregoing accounts the Obligations, the Initial Payment/Total Amount Due, amounts described in section #14, and any other amounts owed under this Agreement and agrees that Creditor, or its assignees, has the right, but not the obligation, to do so. Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is also authorized to debit any of the foregoing accounts outlined above. If Debtor would prefer to authorize Creditor to debit another account, fill in the blanks provided below along with a copy of a voided check from the specified account. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable.

Bank Name: ▓▓▓▓▓▓▓▓▓▓▓▓ _____ Bank City, State: ▓▓▓▓▓▓▓▓▓

ABA Routing No: ▓▓▓▓▓ _____ Account No: ▓▓▓▓▓▓▓

Business Name on Account: ▓▓▓▓▓▓▓▓

Street Address on Account: ▓▓▓▓▓▓▓ _____ City, State on Account: ▓▓▓▓▓▓▓

Initials: _YG_

APXEXB00045

00083

The original document is owned by Balboa Capital Corporation and this copy was created on Aug 26, 2022 08:13:38 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD)™ Service.

Case 8:23-cv-02447-JWH-DFM    Document 1-1    Filed 12/22/23    Page 4 of 16    Page ID #:11

**13. TITLING.** If requested by Creditor, Debtor shall cause an Item of Collateral subject to title registration laws to be titled as directed by Creditor. Debtor shall advise Creditor promptly as to any necessary re-titling. Debtor shall cause all documents of title to be furnished Creditor within sixty (60) days of the date of any titling effected by Debtor. All expenses, fees, costs and charges associated with re-titling to secure Creditors perfected lien rights shall be borne solely by Debtor and reimbursed to Creditor by Debtor.;

**14. TAXES, CHARGES, AND FEES.** Debtor agrees to pay when due all taxes (including personal property tax, fines and penalties) and fees that levied by any State, County or Federal Agency relating to this Agreement or the Collateral. If Creditor pays any of the above taxes on behalf of the Debtor, so as to reimburse Creditor for processing and administrative expenses and time, Debtor will pay a processing fee for each payment. In addition, Debtor also agrees to pay Creditor any UCC filing fees mandated by the Uniform Commercial Code or other law to protect and secure the Collateral and reimburse Creditor for all costs and expenses involved in documenting and servicing this transaction. An inspection of the Collateral will be conducted to evidence the condition of the Collateral and a fee will be charged for this service, which Debtor agrees to reimburse to Creditor. Debtor further agrees to pay Creditor an origination or loan Fee on or before the date the first Monthly Payment is due, the purpose of this fee is to arrange in advance all the necessary funding sources and process credit and paperwork. Debtor also acknowledges that all such fees and charges are in addition to the Monthly Payments, and that all such fees may not only cover Creditors costs but they may also include a profit or administrative expense reimbursement of processing.

**15. INSURANCE.** Debtor agrees to maintain, at Debtor's expense, "Special Form" property insurance protecting the Collateral for its full replacement value, **naming Creditor as a loss payee on a "Creditor's Loss Payable" endorsement**; and public liability insurance, in amounts acceptable to Creditor, naming Creditor as an additional insured (together "Required Insurance"). Debtor must provide Creditor satisfactory written evidence of Required Insurance within thirty (30) days of the commencement date of this Agreement or of any subsequent written request. If Debtor does not do so, Creditor may obtain insurance from an insurer of Creditor's choosing in such forms and amounts as Creditor selects ("Insurance"). Insurance covers the Collateral and Creditor only and not Debtor. Debtor shall pay Creditor periodic charges for Insurance ("Insurance Charges") that include: a premium that may be higher than if Debtor maintained Required Insurance separately; a finance charge of up to the implicit rate of this Agreement on any premium advances made by Creditor or Creditors agents; and billing and processing fees; each of which may generate a profit to Creditor and Creditor agents. If Debtor fails to pay billed Insurance Charges within 30 days of their due date, Creditor may pay them by applying funds paid under this Agreement or debiting Debtor's account under any previously authorized payment. At Creditor's election, in lieu of obtaining or continuing Insurance, Creditor may require Debtor to pay a monthly additional fee up to 2% of the Collateral Cost. This fee is not only calculated with reference to additional risk and constitutes additional profit for Creditor, but represents the basis on which Creditor is willing to forbear from exercising remedies and continue this Agreement without Required Insurance. Debtor will receive no insurance coverage and will not be released from any obligations. **Creditor is not selling insurance.** Creditor will cease charging the additional fee or billing for Insurance 30 days after Debtor provides satisfactory proof of Required Insurance and compliance with this section.

**16. CREDITOR'S PAYMENT.** If Debtor fails to perform any of its obligations hereunder, Creditor may perform such obligation, and Debtor shall (a) reimburse Creditor the cost of such performance and (b) pay Creditor the service charge contemplated in paragraph 14.

**17. INDEMNITY.** Debtor shall indemnify, defend and hold Creditor harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Creditor related to this Agreement. While it is not anticipated that Creditor shall have any liability for torts related to the Collateral, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim.

**18. DEFAULT.** Any of the following constitutes an event of default hereunder: (a) Debtor's failure to pay any amount hereunder, within three (3) business days of when due; (b) Debtor's default in performing any other obligation hereunder or under any agreement between Debtor and Creditor; (c) death or judicial declaration of competency of Debtor, if an individual; (d) the filing by or against Debtor of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of debtors, including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment of a substantial portion of its assets by Debtor for the benefit of creditors, appointment of a receiver or trustee for Debtor or for any Debtor's assets, institution by or against Debtor of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Debtor, Debtor's cessation of active business affairs or the making by Debtor of a transfer of a material portion of Debtor's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) as to a guarantor or other surety of Debtor's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Debtor; (h) Debtor's default under a lease or agreement providing financial accommodation with a third party or (i) Creditor shall in good faith deem itself insecure as a result of a material adverse change in Debtor's financial condition or otherwise.

**19. REMEDIES.** Upon the occurrence of an event of default Creditor shall have the right, options, duties and remedies of a secured party, and Debtor shall have the rights and duties of a Debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Creditor may: a) sue for and recover from Debtor the sum of: (1) all unpaid Monthly Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or

Initials ___

APXEXB00046
00084

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:23-cv-02447-JWH-DFM    Document 1-1    Filed 12/22/23    Page 5 of 16    Page ID #:12

expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (b) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Items of Collateral without notice or demand to Debtor; (c) take possession of and, if deemed appropriate, render unusable any or all Items of Collateral, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (d) require Debtor to assemble any or all Items of Collateral at a location in reasonable proximity to their designated location hereunder, (e) upon notice to Debtor required by law, sell or otherwise dispose of any Items of Collateral, whether or not in Creditor's possession, in a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Debtor hereunder with Debtor remaining liable for any deficiency and with any excess being returned to Debtor or (f) utilize any other remedy available under the Uniform Commercial code or otherwise to Creditor. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Creditor may, if permitted by law, bid at any such sale.

**20.** **LITIGATION EXPENSES.** Debtor shall pay Creditor its costs and expenses not offset as provided in paragraph 19, including repossession and attorneys' fees and court costs, incurred by Creditor in enforcing this Agreement. This obligation includes the payment of such amounts whether an action is filed and whether an action which is filed is dismissed.

**21.** **ASSIGNMENT.** Without the prior written consent of Creditor, Debtor shall not sell, lease or create or allow any lien other than Creditor's security interest against an Item of Collateral or assign any of Debtor's obligations hereunder. Debtor's obligations are not assignable by operation of law. Consent to any of the foregoing applies only in the given instance. Creditor may assign, pledge or otherwise transfer any of its rights **but none of its obligations** hereunder without notice to Debtor. If Debtor is given notice of any such assignment, Debtor shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice. The rights of an assignee to amounts due hereunder shall be free of any claim or defense Debtor may have against Creditor, and Debtor agrees not to assert against an assignee any claim or defense which Debtor may have against Creditor. Subject to the foregoing, this Agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties.

**22.** **PERSONAL PROPERTY.** Debtor shall mark the Collateral or its location as requested by Creditor to indicate Creditor's security interest. As between the parties the Collateral shall at all times be deemed personal. Debtor will provide Creditor any real property waivers requested by Creditor as to the real property where an Item of Collateral is or is to be located.

**23.** **LATE PAYMENT.** If Debtor fails to pay any amount to be paid hereunder within three (3) days of when due, Debtor agrees to pay us (a) eighteen percent (18%) of each such late payment (to the extent permitted by law) (b) amounts Creditor pays others in connection with the collection of the payment and (c) interest on such unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given month.

**24.** **SECURITY INTEREST RELEASE.** At such time as there is no outstanding obligation secured hereby (including obligations under other agreements contemplated under paragraph 1), Creditor shall provide Debtor such termination statements related to the Collateral as Debtor shall reasonably request. Debtor shall be responsible for the filing of each such UCC3 termination statement at its expense.

**25.** **ADDITIONAL DOCUMENTS.** Debtor shall provide to Creditor such financing statements and similar documents as Creditor shall request. Debtor authorizes Creditor, where permitted by law, to make filings of such documents without Debtor's signature. Debtor shall reimburse Creditor for all search and filing fees incurred by Creditor related hereto.

**26.** **NOTICES.** Except as otherwise provided in this Agreement, notice under this Agreement must be in writing. Notices will be deemed given when deposited in the U.S. mail, postage prepaid, first class mail; when delivered in person; or when sent by registered mail; by certified mail; or by nationally recognized overnight courier. Notice to Debtor will be sent to Debtor's last known address in Creditor's records for this Loan. Notice to Creditor may be sent to, Balboa Capital Corporation, 575 Anton Blvd, 12th Floor, Costa Mesa CA 92626.

**27.** **GENERAL.** **This Agreement as well as the delivery and acceptance receipt(s) for the Collateral constitute the entire agreement between the parties, and supersede all prior negotiations, written or oral, including any written offer or proposal describing and/or summarizing the terms of any proposed lease/financing.  This Agreement cannot be modified except in writing signed by the party**

Initials   

APXEXB00047

00085

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD)™ Service.

Case 8:23-cv-02447-JWH-DFM    Document 1-1    Filed 12/22/23    Page 6 of 16    Page ID #:13

against who enforcement is sought. **Debtor represents to Creditor that it shall not allege in any court proceeding that the parties entered into an oral modification of this Agreement, and further agrees, that in any event, any such oral modification shall not be enforceable unless it is reduced to a writing signed by the party against whom enforcement is sought.** Any waiver by Creditor must be in writing, and forbearance shall not constitute a waiver. If there is more than one Debtor named in this Agreement, the liability of each shall be joint and several. The titles to the paragraphs of this Agreement are solely for the convenience of the parties and are not an aid in the interpretation. Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this Agreement. The obligations of Debtor shall survive the release of the security interest in the Collateral.

28. **DEBTOR'S WARRANTIES.** DEBTOR CERTIFIES AND WARRANTS:(a) THE FINANCIAL AND OTHER INFORMATION WHICH DEBTOR HAS SUBMITTED, OR WILL SUBMIT, TO CREDITOR IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY DEBTOR AND UPON EXECUTION BY DEBTOR SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF DEBTOR ENFORCEABLE AGAINST DEBTOR IN ACCORDANCE WITH ITS TERMS; AND (c) EACH SHOWING PROVIDED BY DEBTOR IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY CREDITOR NONWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF DEBTOR WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. DEBTOR FURTHER WARRANTS THAT EACH ITEM OF COLLATERAL SHALL AT THE TIME CREDITOR FUNDS THE TOTAL ADVANCE BE OWNED BY DEBTOR FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

29. **GOVERNING LAW (EXCLUSIVE AND MANDATORY TO CALIFORNIA).** Our relationship (including this Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement) will be exclusively governed by, and this Agreement will be exclusively construed in accordance with California law without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Agreement will be exclusively governed by such laws.

30. **CONSENT TO EXCLUSIVE AND MANDATORY JURISDICTION AND VENUE OF CALIFORNIA.** Debtor submits to the jurisdiction of California and agrees that any action or proceeding to enforce this Agreement, or any action or proceeding arising out of or related to this Agreement will be exclusively commenced, initiated and litigated in the California State Courts of Orange County California and/or the United States District Court for the Central District of California, Santa Ana Division. Debtor understands and agrees that (i) Creditor is located in Costa Mesa, California, (ii) Creditor makes all credit decisions from Creditor's office in Costa Mesa, California, (iii) this Agreement is made and deemed to be performed in Costa Mesa, California (that is, no binding contract will be formed until Creditor receives and accepts Debtor's signed Agreement in Costa Mesa, California) and (iv) Debtor's payments are not accepted until received by Creditor in Costa Mesa, California. Creditor, at its sole discretion, may commence any action seeking judicial intervention to recover the Collateral in any State Court where the Collateral may be physically located.

31. **COUNTERPARTS AND FACSIMILE SIGNATURES.** If this Agreement was sent electronically, Debtor hereby warrants that this Agreement has not been altered in any way. Any alteration or revision to any part of this Agreement or any attached documents will make all alterations or revisions non-binding and void. Only one counterpart of this Agreement and of each Schedule, Addenda, or Exhibit attached hereto shall bear our signature and shall be marked "Original". To the extent that any Equipment Financing Agreement, Schedule, Addenda or Exhibit hereto constitute chattel paper (as that term is defined by the Uniform Commercial Code), a security interest may only be created in this Agreement, Schedule, Addenda or Exhibit that bears our signed signature and is marked "Original". This Agreement and any documents pertaining to this Agreement may be executed in counterparts. Delivery of this Agreement bearing a facsimile signature, electronic signature, or other signature which is not in ink, shall have the same force and effect as if this document bore an original ink signature. The electronic transmission of this Agreement shall have the same force and effect as delivery of an original and shall be legally admissible under the best or original evidence rule. DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.

| (CREDITOR) | (DEBTOR) |
| --- | --- |
| **Balboa Capital Corporation**<br>**575 Anton Blvd**<br>**12th Floor**<br>**Costa Mesa, CA 92626** | **ZARIZ TRANSPORT INC.**<br>**7601 N Federal Hwy B-230**<br>**Boca Raton, FL 33487** |
| By: *Joseph DeLeon*<br>Vice President | By: *Yaakov Guzelgul*<br>Name: Yaakov Guzelgul<br>Title: President |
| Date: 08/26/2022 | Date: 08/24/2022    Home Phone: |

APXEXB00048

This is a copy of the unsigned document. The copy was created on Aug 26, 2022 08:13:38 AM.

Case 8:23-cv-02447-JWH-DFM   Document 1-1   Filed 12/22/23   Page 7 of 16   Page ID #:14



## Titling Information

08/24/2022
ZARIZ TRANSPORT INC.
7601 N Federal Hwy B-230
Boca Raton, FL 33487



|   | VIN | State where unit will be titled | County |
|---|-----|--------------------------------|--------|
| 1 | 1XKYDP9X0JJ186641 | GA | chatham |
| 2 | 1XKYDP9X8JJ186659 | ga | chatham |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |

Is the Company Name listed above correct?   Yes ☒ No ☐

If no, how should it be listed:
_____

Is the Business Address on the Title the same as listed above?   Yes ☒ No ☐

If no, how should it be listed:
_____

Current Contact information for the person that handles your business title transactions:

Contact Name: Joshua Gross
Business Phone Number: (561) 208-8213
Cell Number:
Email Address: ▉▉▉▉▉▉▉▉▉

If the unit(s) is titled in any of these states AL, ME, MS, PA, NH, NV, please provide the titling agency
contact information of your choice:
_____
_____
_____

Please overnight 2 original signed Power of Attorney documents for each unit to the following address:
Balboa Capital Corporation
575 Anton Blvd, 12th Floor
Costa Mesa, CA 92626

You will be contacted by the Balboa Titling Department after the transaction has funded and the title from
the seller is received.

Thank you

The identified owner of the document within the electronic vault is Balboa Capital Corporation.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:23-cv-02447-JWH-DFM   Document 1-1   Filed 12/22/23   Page 8 of 16   Page ID #:15

# DISBURSEMENT AUTHORIZATION

TO:  Balboa Capital Corporation

The undersigned hereby certifies that all the property described below (the "Collateral"), which is to be financed for the undersigned pursuant to the Equipment Financing Agreement No.  419188-000  dated as of  08/26/2022  , (the "Agreement") between **Balboa Capital Corporation** and the undersigned, as Debtor, has been furnished to the undersigned, that delivery and installation has been fully completed and that the Collateral is acceptable in all respects to the undersigned.

In view of the above, the undersigned hereby authorizes and requests you to pay for the Collateral in accordance with the terms of any purchase orders the undersigned may have issued for the same and/or to pay the undersigned the advance amount to the extent the undersigned has previously paid for the Collateral, as appropriate. The undersigned acknowledges that you are relying upon this executed Delivery and Acceptance Certificate in so doing.  Debtor hereby authorizes Creditor to disburse the Collateral Cost and the Total Fees/Charges Financed as follows:

| Payee Name | Amount |
|---|---|
| MHC Truck Source - Atlanta | $164,194.98 |
| Balboa Capital Doc Fee | $846.00 |
| Balboa Capital Per Diem | $3,456.64 |
|  |  |
|  |  |
|  |  |
| Total Amount to be Disbursed | $168,497.62 |

**COLLATERAL - SEE COLLATERAL DESCRIPTION ON THE AGREEMENT AND/OR ON THE ATTACHED EXHIBIT "A".**

The undersigned recognizes that by executing this Delivery and Acceptance Certificate the undersigned's non-terminable Monthly Installment Payment obligation under the Agreement will commence. The undersigned reaffirms its understanding that the Agreement is solely a financing agreement and that, accordingly, you have made no express warranties as to the Collateral of any other matter and that there are no related implied warranties created by law and further that, accordingly, the undersigned's obligation to pay amounts due under the Agreement will not be affected by any problems the undersigned experiences with the Collateral or any similar or dissimilar occurrence as also set forth in the Agreement.

**Debtor Name:**  ZARIZ TRANSPORT INC.

**By:** _Yaakov Guzelgul_
       DocuSigned By: Aug 24, 2022 11:01:08 AM PDT

**Name:**  Yaakov Guzelgul

**Title:**  President

**Date:**  08/24/2022

**Date Collateral accepted by Debtor**  08/24/2022  **(Date)**

---

**BILLING/PROCESSING INFORMATION:**

Email Address for Invoices:  ▮▮▮▮▮▮▮▮▮▮

Cell Number:  ▮▮▮▮▮▮

Attention To:  Yaakov Guzelgul

STATE WHERE VEHICLE WILL BE TITLED :  FL

---

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**


APXEXB00050   0159-4679B
00088
The original document is owned by Balboa Capital Corporation and this copy was created on Aug 26, 2022 08:13:38 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:23-cv-02447-JWH-DFM   Document 1-1   Filed 12/22/23   Page 9 of 16   Page ID #:16



# Company Resolution

I **Yaakov Guzelgul**_____, the duly elected and qualified **President**_____of **ZARIZ TRANSPORT INC.**

(the "Company"), hereby certify that Company's exact legal name, state of incorporation/organization, location of its chief executive office and/or its place of residence, as applicable, have been correctly identified to Balboa Capital Corporation, and that at a duly constituted meeting of the Board of Directors/Officers/Members/Partners of the Company, the Board resolved that the following individuals:

| <u>Name</u> | <u>Title</u> |
|---|---|
| **Yaakov Guzelgul** | **President** |
| | |
| | |
| | |

is/are authorized for, on behalf of and in the name of this Company, to negotiate, procure and execute such Equipment Financing Agreements and any other documents in connection with same, which in his/her opinion are necessary or advisable to effectuate the most favorable interests of the Company, and the execution of such documents by said officer shall be conclusive evidence of his/her approval thereof.

IN WITNESS WHEREOF, I have affixed my name as **President**_____ of the Company on 08/24/2022_____.

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

Legal Name of Company: **ZARIZ TRANSPORT INC.**_____

By: _Yaakov Guzelgul_  Aug 24, 2022 11:02:08 AM PDT

Name: Yaakov Guzelgul_____

Title: President_____

Date: 08/24/2022_____

EFA246

APXEXB00051

00089



The original document is owned by Balboa Capital Corporation and this copy was created on Aug 26, 2022 08:13:38 AM.

This is a copy of the unsigned document.  The copy was created on Aug 26, 2022 08:13:38 AM.



# Driver's License Request Form

**Agreement Number:** <u>419188-000</u>

**Customer Name:** <u>ZARIZ TRANSPORT INC.</u>

Balboa Capital requires a Driver's License for the following individuals.

| | |
|---|---|
| Signer | **Yaakov Guzelgul** |
| PG 1 | **Yaakov Guzelgul** |
| PG 2 | |
| PG 3 | |
| PG 4 | |





EFA338B

APXEXB00052

00090

The identified owner of the document within the electronic vault is Balboa Capital Corporation.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:23-cv-02447-JWH-DFM  Document 1-1  Filed 12/22/23  Page 11 of 16  Page ID #:18

## EARLY BUYOUT ADDENDUM TO
## EQUIPMENT FINANCE AGREEMENT NO.  <u>419188-000</u>

This Early Buyout Option Addendum (hereinafter "Addendum") to Equipment Finance Agreement No. <u>419188-000</u>  (hereinafter "Agreement") is made by and between Balboa Capital Corporation (hereinafter "Creditor, and <u>ZARIZ TRANSPORT INC.</u>
(hereinafter "Debtor")..

At Creditor's sole discretion, and so long as Debtor is not in default of any of its obligations under the Agreement, the Debtor shall have the option to exercise this Early Buyout Option ("EBO"). Debtor may prepay in full, but not in part, all Monthly Installment Payments and other payments due under the Agreement prior to the end of the scheduled loan term, which amount will be calculated as follows:

**Early Buyout Option**:

1. If Debtor requests to exercise this EBO **before** Creditor has received the 12th scheduled Monthly Installment Payment, the EBO will be calculated at an amount equal to the sum of all remaining Monthly Installment Payments under the Agreement and any other payments, taxes, or fees owed under the Agreement.

2. If Debtor requests to exercise this EBO **after** Creditor has received the 12th scheduled Monthly Installment Payment, the EBO will be calculated at an amount equal to the net investment (calculated as the remaining stream of payments due under the Agreement minus all unearned interest), plus a termination fee in the  amount of $500.00.  This cost is an offset of the labor and administrative costs associated with lien releases and terminating this transaction.

If Debtor elects not to exercise this option, the Agreement will continue for the full term as indicated in the Agreement.

Except as expressly set forth herein, the terms, definitions, and conditions of the Agreement and any other written agreements entered into and executed by and between Creditor and Debtor are incorporated herein by this reference as if set forth in full and shall remain in full force and effect.
**"Delivery of this document bearing a facsimile or electronic signature or signatures shall have the same force and effect as if the document bore an original signature."**

IN WITNESS WHEREOF, the parties hereto, by their authorized signatories, have executed this Addendum at the date set forth below their respective signatures.

CREDITOR:                                              DEBTOR:

Balboa Capital Corporation                             ZARIZ TRANSPORT INC.

By: <u>*Joseph DeLeon*</u>                      By: <u>*Yaakov Guzelgul*</u>
eSigned By:                                             eSigned By:
Aug 26, 2022 8:13:27 AM PDT                            Aug 24, 2022 11:04:15 AM PDT

Vice President                                         Name: <u>Yaakov Guzelgul</u>

                                                       Title: <u>President</u>

Date: <u>08/26/2022</u>                                Date: <u>08/24/2022</u>

1654
APXEXB00053

00091


The original document is owned by Balboa Capital Corporation and this copy was created on Aug 26, 2022 08:13:39 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:23-cv-02447-JWH-DFM   Document 1-1   Filed 12/22/23   Page 12 of 16   Page ID #:19



# DISCLAIMER AS TO USED COLLATERAL

### Addendum to
### Equipment Financing Agreement Number <u>419188-000</u>

DISCLAIMER. (a) Debtor finances the Collateral as described in the above Equipment Financing Agreement "as is" and expressly acknowledges that the Collateral is used and not new. Creditor, NOT BEING THE VENDOR OF THE COLLATERAL, NOR THE VENDOR'S AGENT, MAKES TO DEBTOR NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED OF MERCHANTABILITY OR OTHERWISE, INCLUDING BUT NOT LIMITED TO: THE CONDITION, SAFENESS, USABILITY, REPAIR OR DESIGN OF THE COLLATERAL OR ITS FITNESS FOR ANY PARTICULAR PURPOSE; THE QUALITY OR CAPACITY OF THE COLLATERAL; THE WORKMANSHIP IN THE COLLATERAL; THAT THE COLLATERAL WILL SATISFY THE REQUIREMENTS OF ANY LAW, RULE, SPECIFICATION OR CONTRACT PERTAINING THERETO; AND ANY GUARANTY OR WARRANTY AGAINST PATENT INFRINGEMENT OR LATENT DEFECTS. (b) Creditor is not responsible or liable for any direct, indirect, incidental or consequential damages or losses resulting from any cause whatsoever, including, but not limited to; breach of warranty; the installation, operation or use of the Collateral or any products manufactured thereby, or delay or failure to deliver any item of Collateral. Debtor agrees to settle all such claims directly with Vendor and will not set up against Debtor's obligations to Creditor any such claims as a defense, counterclaim, setoff, or otherwise.

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

CREDITOR:
**BALBOA CAPITAL CORPORATION**

By: _Joseph DeLeon_
Vice President

Date: 08/26/2022

DEBTOR:
**ZARIZ TRANSPORT INC.**

By: _Yaakov Guzelgul_
Name: Yaakov Guzelgul
Title: President

Date: 08/24/2022

EFA254B

APXEXB00054

00092



The original document is owned by Balboa Capital Corporation and this copy was created on Aug 26, 2022 08:13:39 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:23-cv-02447-JWH-DFM   Document 1-1   Filed 12/22/23   Page 13 of 16   Page ID #:20



# EXHIBIT 'A'
## EQUIPMENT DESCRIPTION

The following invoice(s) are referenced, and hereby incorporated, for the purpose of describing the equipment subject to Equipment Financing Agreement ("Agreement") Number 419188-000 .  By signing below, I, the debtor, acknowledge that I choose to finance the equipment listed on the invoice(s) per the payment schedule and the terms and conditions set out in the agreement, which is the governing document to this equipment financing  regardless of the price and terms (if any) indicated on the invoice(s).

| EQUIPMENT DESCRIPTION | INVOICE # | INVOICE DATE | VENDOR NAME |
|---|---|---|---|
| 2018 Kenworth T680 1XKYDP9X0JJ186641 | | | MHC Truck Source - Atlanta |
| 2018 Kenworth T680 1XKYDP9X8JJ186659 | | | MHC Truck Source - Atlanta |

Copy of Original

**Equipment Financing Agreement Number** 419188-000

**Debtor Name** ZARIZ TRANSPORT INC.

By: *Yaakov Guzelgul* — Aug 24, 2022 11:04:24 AM PDT

**Name:** Yaakov Guzelgul

**Title:** President

**Date:** 08/24/2022

**Page 1 of** 1

"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

EFA248B

APXEXB00055

00093

 The original document is owned by Balboa Capital Corporation and this copy was created on Aug 26, 2022 08:13:39 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:23-cv-02447-JWH-DFM   Document 1-1   Filed 12/22/23   Page 14 of 16   Page ID #:21



## GUARANTY OF EQUIPMENT FINANCE AGREEMENT

### Equipment Finance Agreement Number  419188-000

In consideration of the making of the above Equipment Finance Agreement by the Creditor, BALBOA CAPITAL CORPORATION, with the Debtor  ZARIZ TRANSPORT INC. _____ (the "Company") at the request of the undersigned and in reliance on this guaranty, the undersigned (if more than one, then jointly and severally) as a direct and primary obligation, guarantees to the Creditor and any assignee of the Creditor (either of whom are hereinafter called "holder") the prompt payment of all rent to be paid by the Debtor and the performance by the Debtor of all the terms, conditions, covenants and agreements of the Equipment Finance Agreement, irrespective of any invalidity or unenforceability thereof or the security thereof. The undersigned promises to pay all expenses, including attorney's fees incurred by or in enforcing all obligations of the Debtor under the Equipment Finance Agreement or incurred by the holder in connection with enforcing this guaranty. The undersigned waive notice of acceptance hereof, presentment, demand, protest, notice of protest or of any defaults and consents that the holder may, without affecting the obligation hereunder, grant the Debtor any extension of indulgence under the Equipment Finance Agreement, and may proceed directly against the undersigned without first proceeding against Debtor or liquidating or otherwise disposing of any security afforded holder under the Equipment Finance Agreement. Accounts settled or stated between holder and Debtor shall bind the undersigned. This guaranty shall be construed in accordance with the laws of the State of California and the undersigned consents to the jurisdiction of the courts situated in the County of Orange, State of California. The undersigned waive trial by jury.

This guaranty shall bind the respective heirs, executors, administrators, successors, and assigns of the undersigned.

WITNESS OUR HANDS AND SEAL THIS ON  08/24/2022

**Company Guarantor**  Cool Dray, LLC _____

By: _____
    *Yaakov Guzelgul*
    Aug 24, 2022 11:04:34 AM PDT

Name: _ Yaakov Guzelgul _____

Title: _ Managing Member _____
       (Have signed by an Officer / Member of the Company)

### Company Resolution

I _ Yaakov Guzelgul _____, the duly elected and qualified  President  of  Cool Dray, LLC _____ (the "Company"), hereby certify that Company's exact legal name, state of incorporation/organization, location of its chief executive office and/or its place of residence, as applicable, have been correctly identified to Creditor, and that at a duly constituted meeting of the Board of Directors/Officers/Members/Partners of the Company, the Board resolved that ,_ Yaakov Guzelgul _____ in his/her capacity as  Managing Member _____ is authorized for, on behalf of and in the name of this Company, to negotiate, procure and execute such Equipment Finance Agreement and any other documents in connection with same, which in his/her opinion are necessary or advisable to effectuate the most favorable interests of the Company,  and the execution of such documents by said officer shall be conclusive evidence of his/her approval thereof.

Legal Name of Company  Cool Dray, LLC _____

Signature _____
          *Yaakov Guzelgul*
          Aug 24, 2022 11:04:34 AM PDT

Name:  Yaakov Guzelgul _____

Title:  Managing Member _____

Date:  08/24/2022 _____

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**



APEXEXB00056    EFA315B
00094

The original document is owned by Balboa Capital Corporation and this copy was created on Aug 26, 2022 08:13:39 AM.

# EXHIBIT "B"

APXEXB00057

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:23-cv-02447-JWH-DFM   Document 1-1   Filed 12/22/23   Page 16 of 16   Page ID #:23



# PERSONAL GUARANTY

### Equipment Financing Agreement # 419188-000

**THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS.** When we use the words **you** and **your** in this Personal Guaranty, we mean the **Personal Guarantor (s)** indicated below. When we use the words **we, us** and **our** in this Personal Guaranty, we mean **BALBOA CAPITAL CORPORATION,** its successors and assigns.

In consideration of our entering into the equipment financing agreement above ("EFA"), you unconditionally and irrevocably guarantee to us, our successors and assigns, the prompt payment and performance of any and all obligations of the Customer ("Debtor") under the EFA and any other financial transaction of any kind whatsoever, whether now existing or hereafter arising with us. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Debtor or against the Equipment covered by the EFA or against any collateral or security held by us. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the EFA and you will be bound by such changes. If the Debtor defaults under the EFA, you will immediately perform all obligations of the Debtor under the EFA, including, but not limited to, paying all amounts due under the EFA. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Debtor. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any rights to seek repayment from the Debtor in the event you pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several. You authorize us or any of our affiliates to obtain credit bureau reports regarding your personal credit, and make other credit inquiries that we determine are necessary.

**THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA. YOU CONSENT TO THE JURISDICTION OF THE COUNTY OF ORANGE IN THE STATE OF CALIFORNIA. YOU HEREBY EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY.**

 **"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

sign   X   | Signed By: *Yaakov Guzelgul*   Aug 24, 2022 11:04:40 AM PDT

Yaakov Guzelgul                                                    08/24/2022
**Name**                                                               **Date**

**Home Street Address, City, State, Zip Code**

**Social Security Number**                          **Phone Number**

EFA251
<span style="color:red">APXEXB00058</span>
**00096**

The original document is owned by Balboa Capital Corporation and this copy was created on Aug 26, 2022 08:13:39 AM.



e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 11/9/2023 9:43 AM
Reviewer: DH

SUPERIOR COURT OF CHATHAM COUNTY
STATE OF GEORGIA

DIRECT CHASSISLINK, INC., )
                                 )
           Plaintiff, )
                                 )           CIVIL ACTION
VS. )
                                 )           FILE NO. SPCV23-01261-MO
ZARIZ TRANSPORT INC., )
                                 )
          Defendant. )
_____ )

## COMPLAINT ON CONTRACT AND ACCOUNT

    1.     Defendant is a corporate citizen of this state with its registered office in this county. Defendant is subject to the jurisdiction of this Court and venue is proper in this county.

    2.     Defendant is indebted to Plaintiff in the principal sum of $334,998.89, plus interest at 18% from September 3, 2023, plus 10% attorneys' fees on a contract and account, copies of which are attached hereto and marked Exhibits A and B, respectively

    3.     Defendant is in default and has failed to pay according to the terms of the said contract and account.

    4.     Service of this Complaint on Defendant constitutes notice as provided in O.C.G.A. §13-1-11 that the provisions of the contract relative to payment of attorneys' fees, in addition to the principal and interest, shall be enforced, and Defendant has ten (10) days from the date of service of this Complaint and notice to pay the principal and interest without attorneys' fees.

    WHEREFORE, Plaintiff demands judgment against Defendant for the following sums:

    (a)     $334,998.89 principal;

(b)      $34,590.24 attorneys' fees;

(c)      Interest in the sum of $10,903.52 and additional interest on the principal accruing from the date of the filing of this Complaint until the date of judgment at 18% per annum;

(d)      Post-judgment interest at the rate of 18% *per annum*; and

(e)      Court costs.

STOKES CARMICHAEL & ERNST LLP

1000 Parkwood CIR SE, Ste 300
Atlanta, GA 30339
Tel:  (404) 352-1465
Fax:  (404) 352-8463
SCE File #23-01371
wkc@scelaw.com
November 8, 2023

By: */s/ William K. Carmichael*
       William K. Carmichael
       (GA Bar No. 110600)
       Attorneys for Plaintiff

# EXHIBIT A

APXEXB00061

DocuSign Envelope ID: 50CE4452-D411-44A6-962F-0CFD31D6FE1E

# DCLI Chassis Interchange Agreement

THIS AGREEMENT (this "Agreement"), dated _____**8/9/2020**_____, by and between Direct ChassisLink, Inc. ("DCLI") and **ZARIZ TRANSPORT, INC**_____ ("Customer").

**1.     Scope of Agreement.**  DCLI hereby agrees to make available for Customer and Customer hereby accepts from DCLI, or a third-party chassis pool to which DCLI is a contributor, intermodal chassis as contemplated hereby (collectively, the "Intermodal Chassis").  Except as set forth in this Agreement, in no event shall Customer have any right to any quantity or volume of Intermodal Chassis.  Customer shall not be deemed to have any exclusive rights under this Agreement.

**2.     Implementation of Agreement.**  At the time of interchange of any Intermodal Chassis hereunder, an authorized representative of Customer shall execute an Intermodal Chassis Inspection Report which, when completed, shall be made a part of this Agreement.  Execution of the Intermodal Chassis Inspection Report by Customer, or, in the absence thereof, out-gate of the Intermodal Chassis from a Start/Stop Location (as hereinafter defined) by Customer or proper execution of a street turn by Customer in accordance with DCLI's then-current street turn policy published on DCLI's website[1] whereby Customer takes possession of the Intermodal Chassis, shall constitute Customer's acknowledgement that the Intermodal Chassis is satisfactory and acceptable to Customer and that there are no defects identified on said Report delivered to Customer at the time of interchange other than any exceptions noted on said Report delivered to Customer at the time of interchange.  DCLI and Customer shall thereafter be bound by such notations.  Acceptance of the Intermodal Chassis by Customer shall constitute Customer's express acknowledgement that the Intermodal Chassis is fit for use, in good, safe and roadworthy condition and complies with Applicable Law (as defined below).

**3.     Ownership.** Customer shall acquire no ownership rights of any nature of any Intermodal Chassis by virtue of paying usage charges, cost of repairs or cost of transporting said Intermodal Chassis or otherwise.  Each Intermodal Chassis shall, where appropriate, have serial numbers and other identifying marks affixed thereto, which shall not be obliterated or altered by Customer.

**4.     Use by Customer.**  Customer shall have complete right of possession and use of each Intermodal Chassis interchanged during the term of this Agreement so long as no default hereunder has occurred.  Customer shall have the sole exclusive right to supervise, direct and control the activities of all persons who are employed by or through Customer or Customer's vendors, subcontractors, independent contractors, owner-operators, and Customer shall have sole responsibility with respect to such people.  No person operating, in possession of, or using any Intermodal Chassis shall be considered the agent or employee of DCLI for any purpose whatsoever.  This Agreement does not create, and shall not be deemed or construed to create, a relationship of partners, joint venturers, associates or principal and agent between the DCLI and Customer, and each party acknowledges that the only relationship created hereunder is that of independent contractors.  Neither party shall have the authority to contract in the name of or bind the other party or any of such other party's affiliates, unless otherwise expressly agreed to by the parties in writing.

**5.     Sub-Letting.**  Customer shall not sublet or in any other manner permit any Intermodal Chassis to go out of its possession without the prior written consent of DCLI, and then only to the extent of said written permission.  Any consent by DCLI to the subletting of any Intermodal Chassis shall be deemed an amendment to this Agreement, which must be signed by the DCLI.  In the event any Intermodal Chassis is sublet by Customer, with or without the consent of DCLI, or otherwise comes into the possession of a party other than Customer, Customer shall be fully liable and solely responsible to DCLI for the performance of all terms and conditions of this Agreement. Without limiting the foregoing, Customer may interchange an Intermodal Chassis to a third-party motor carrier by both Customer and the third party to whom the Intermodal Chassis is to be

---

[1] All references herein to "DCLI's website" shall mean www.dcli.com, as such web address and website may be updated from time to time.

APXEXB00062

00100

DocuSign Envelope ID: 50CE4452-D411-44A6-962F-0CFD31D6FE1E

interchanged completing all necessary steps of a "street turn" in accordance with DCLI's then-current policy published on the DCLI website.

**6.    Redelivery.**  Customer shall complete the use for which each Intermodal Chassis has been interchanged and return (the date of return for any Intermodal Chassis is the "Return Date") said Intermodal Chassis at its sole cost and expense to one of the locations published on the DCLI website by 4 P.M. EST for the following day, or such other location(s) as may be identified by DCLI, or with respect to third-party managed chassis pools, one of the locations such pool manager has identified (the "Return List" and each such location, a "Start/Stop Location"), in roadworthy condition, ordinary wear and tear from proper use thereof excepted.  Each Intermodal Chassis will be inspected for damage by or on behalf of DCLI or a third-party pool manager, as applicable, upon return to a Start/Stop Location by Customer.

**7.    Damage.**  Customer shall be responsible for the cost to repair damage to each Intermodal Chassis (including tires) that occurs while the Intermodal Chassis is interchanged to Customer, ordinary wear and tear (as reasonably determined by DCLI or its repair vendor) excepted.  In the event damage is discovered upon return of the Intermodal Chassis, DCLI will arrange for repairs and assess any repair costs to Customer.  In the event repairs are required while the Intermodal Chassis is interchanged to Customer, Customer shall effect repairs using DCLI's then-current over-the-road repair procedures (also referred to as DCLI's Road Service Policy) published at DCLI's website.  If Customer makes any repairs on any Intermodal Chassis, Customer shall be responsible for the cost of such repairs in addition to DCLI's reasonable cost to repair or replace Intermodal Chassis necessitated by improper repairs made by Customer.  In the event any Intermodal Chassis is sub-let by the Customer, with or without the consent of the DCLI, or otherwise comes into the possession of a party other than Customer, Customer shall be fully liable and solely responsible to DCLI for the performance of all terms and conditions of this Agreement.

**8.    Indemnity and Liability.**  Customer AGREES TO DEFEND, INDEMNIFY AND SAVE HARMLESS DCLI and its insurers, affiliates, and their respective employees, agent, representatives, successors and assigns (such parties, the "Indemnified Parties") (without regard to whether their liability is vicarious, implied in law or as a result of their failure or negligence or otherwise) from and against any and all suits, losses, fines, penalties, damages, claims, injuries including death, damage to property, damage to or loss of any Intermodal Chassis, other demands and liabilities of every nature, including reasonable attorney's fees, arising directly or indirectly from or in connection with:  (i) the possession, use, condition, or operation of any Intermodal Chassis by Customer or Customer's affiliate, agent, subcontractor, representative or any other third party to whom Customer has relinquished possession of the Intermodal Chassis or used Customer's SCAC (as such term is hereinafter defined) upon interchange to such third party form the Start/Stop Location and any of their respective employees (such parties, collectively, "Customer Parties"), including, without limitation, actions or claims for negligence or strict liability in tort, (ii) allegations that any Indemnified Party is the "employer" or "joint employer" of any member of any Customer Party's labor force, whether through claims of vicarious liability or otherwise, (iii) a breach of Customer's obligations hereunder or (iv) Customer's failure to comply with any Applicable Law, excluding in the case of each of (i) through (iv), above, only liabilities solely and directly arising out of DCLI's willful misconduct or grossly negligent acts.  Indemnified Parties do not assume liability for any acts or omissions of Customer Parties.  Customer shall be responsible for and shall pay any and all tolls, fees, penalties, costs, expenses, fines or citations, including, without limitation, any fines for toll evasion and any administrative fees charged in connection therewith, arising out of its acts or omissions in connection with the Intermodal Chassis during the term of this Agreement. If applicable state law does not allow enforcement of indemnity obligations to the extent contained in this provision, the parties expressly agree that Customer will be obligated to indemnify the Indemnified Parties to the fullest extent allowed by Applicable Law.  The provisions of this Section 8 shall survive the termination, cancellation or expiration of this Agreement.

**9.    Insurance.**  Customer shall procure and maintain, at its sole cost and expense, throughout the term hereof, the following insurance coverages: (i) commercial automobile insurance policy with a combined single limit of $1,000,000 or greater for standard Intermodal Chassis and $2,000,000 or greater for specialty

APXEXB00063

00101

Intermodal Chassis (as each are identified on DCLI's website), insuring all equipment involved in interchange, including, without limitation, vehicles of its agents or contractors; (ii) commercial general liability insurance with a combined single limit of $1,000,000 per occurrence or greater, of which no portion can be self-insured; (iii) general liability and automobile liability insurance in an amount not less than $5,000,000 CSL or the carriage of hazardous substances as defined in 49 C.F.R. 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of $3,500 water gallons, or in bulk Class A or B explosives, poison gas (Poison A), liquefied compressed gas, or highway route controlled quality radioactive materials as defined in 49 C.F.R. 173.403; (iv) general liability and automobile liability insurance in an amount not less than $1,000,000 CSL for the carriage of oil listed in 49 C.F.R. 172.101, hazardous materials and hazardous substances defined in 49 C.F.R. 171.8 and listed in 49 C.F.R. 172.101 and (v) trailer interchange insurance, including collision, with a limit not less than an amount equal to the value of all interchanged equipment hereunder but in all circumstances not less than $25,000 for standard Intermodal Chassis and $40,000 for specialty Intermodal Chassis. The insurance set forth in this Section 9 shall (i) name Direct ChassisLink, Inc. and its affiliates and their respective insurers as additional insured, (ii) be primary to any and all other applicable insurance and (iii) waive any and all rights of subrogation against the Indemnified Parties. Prior to taking possession of any Intermodal Chassis, Customer shall furnish to DCLI written certificates obtained from the insurance carrier showing that such insurance has been procured, is being properly maintained, the expiration date and specifying that written notice of cancellation or modification or material alteration (e.g., coverage reduced, limits decreased or additional insured removed) of the policies shall be given to DCLI at least thirty (30) days prior to cancellation or modification or material alteration, by certified mail. Upon request, Customer shall provide DCLI with copies of the applicable insurance policies. If Customer fails to provide such proof, DCLI may, at its option, obtain separate insurance on behalf of Customer and charge the amount of any cost to Customer as additional usage charges. To the extent Customer engages third party motor carriers to use Chassis, whether as a broker or otherwise, Customer shall allow only those third party motor carriers to use Chassis who have a signed, written agreement with Customer which includes insurance and indemnity provisions consistent with those herein, including, without limitation, specifically naming DCLI as a party to be indemnified by such third party motor carrier, waiving such third party's and its insurers' rights of subrogation against DCLI and listing DCLI as an additional insured on such third party motor carrier's applicable insurance policies.

**10.     Usage Charges.**  Customer shall pay DCLI, as a daily usage charge, an amount per calendar day per "usage cycle," or any part thereof for each Intermodal Chassis, together with all additional charges herein, for as long as the Intermodal Chassis remains interchanged to Customer. The interchange of an Intermodal Chassis to Customer may be determined by DCLI's receipt of electronic data interchange ("EDI") messages from its various network partners identifying Customer by a standard carrier alpha code ("SCAC") assigned to Customer by the National Motor Freight Traffic Association.  The daily usage charge shall be set forth on a schedule published at DCLI's website and can be changed by DCLI on thirty (30) days' notice published at DCLI's website; notwithstanding the foregoing, DCLI may offer alternative, non-standard pricing from time to time upon notice, including, without limitation, pricing based on demand, availability or other factors. Customer shall not withhold any Intermodal Chassis on account of any dispute as to rates and/or alleged failures by DCLI to comply with the terms of this Agreement.  Customer is relying on the general credit of DCLI and hereby waives and releases (and shall ensure that its agents or subcontractors, if permitted by DCLI, waive and release) all liens, encumbrances or charges which Customer might otherwise have with respect to any Intermodal Chassis. DCLI will invoice Customers on a weekly basis, or with such other frequency as DCLI may determine in its sole discretion, but only with respect to Intermodal Chassis that have been returned to a Start/Stop Location. Payment shall be due to DCLI twenty-one (21) days after the relevant invoice date.  DCLI reserves the right, in its sole discretion, to charge an administrative fee equal to one and one-half percent (1.5%) of the outstanding balance per month for all payments received more than thirty (30) days after date of invoice. For the purposes hereof, a "usage cycle" is a roundtrip usage of an Intermodal Chassis beginning on and including the date such Intermodal Chassis interchanged to Customer (whether upon out-gate from a Start/Stop Location or properly executed street turn) and extending through the date such Intermodal Chassis is returned to a Start/Stop Location or is interchanged to a third-party motor carrier by proper execution of a street turn.  Notwithstanding anything to the contrary herein, in the event an Intermodal Chassis has been out-gated and has not completed a usage cycle within a thirty (30) day period thereafter, DCLI reserves the right, in its sole discretion, to invoice

APXEXB00064

00102

DocuSign Envelope ID: 50CE4452-D411-44A6-962F-0CFD31D6FE1E

Customer for any and all applicable usage charges due and owing as of such thirtieth (30th) day, and on a weekly basis thereafter, up to and including the last day of the usage cycle upon return to a Start/Stop Location.

**11.     Lost, Stolen or Destroyed Equipment.**  Customer shall promptly notify DCLI in writing when an Intermodal Chassis is lost, stolen or destroyed while in its possession. Customer must promptly provide notice to DCLI in accordance with the provisions of Section 19 of this Agreement, either by mail, facsimile or email, and follow the additional reporting requirements for lost, stolen or destroyed Intermodal Chassis published at DCLI's website.   Once notice is received, DCLI shall furnish to Customer in writing the depreciated replacement value of the Intermodal Chassis.  Customer shall pay the specified amount within thirty (30) days, after which the late payment provision in Section 10 shall apply.  In the event any Intermodal Chassis is lost, destroyed, confiscated, damaged beyond repair or stolen while on-hired to Customer (any one of the foregoing, a "Casualty"), Customer's obligation to pay rental charges and other charges with respect to such Intermodal Chassis in accordance with the terms herein shall cease upon DCLI's receipt of Customer's notice of the Casualty (the "Casualty Notification Date"); provided, however, that Customer pays the Full Settlement amount within thirty (30) days of receipt of DCLI's invoice, failing which payment, the rental charges with respect to such Intermodal Chassis, shall resume, with retroactive application to the date DCLI received notice of the Casualty.  For purposes hereof, the "Full Settlement" shall mean (i) proof, in such form as may be acceptable to DCLI, of such loss, destruction, confiscation, damage or theft, (ii) payment directly by Customer of the depreciated replacement value for such Intermodal Chassis as determined in accordance with DCLI's then-current depreciated replacement value schedule, (iii) payment of all other amounts then due and payable under this Agreement with respect to such Intermodal Chassis and (iv) such payment shall not be qualified or conditioned in any manner. DCLI shall in no event be obligated to release the title to such Intermodal Chassis in exchange for payment of the depreciated replacement value; provided, however, in the event DCLI determines, in its sole discretion, to, upon request from Customer, release the title to such Intermodal Chassis following receipt of the Full Settlement, such release shall be subject to Customer's execution of DCLI's then-current bill of sale form.

**12.     Warranty Disclaimer and Remedy Limitation.**  EXCEPT AS EXPRESSLY CONTAINED IN THIS AGREEMENT, DCLI MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE VALUE, DESIGN, CONDITION, MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR FITNESS FOR USE OF ANY INTERMODAL CHASSIS, EXCEPT THAT DCLI REPRESENTS THAT, AT THE TIME OF ANY DELIVERY TO CUSTOMER HEREUNDER, DCLI HAS TITLE OR RIGHT OF POSSESSION AND USE OF THE RELEVANT INTERMODAL CHASSIS.   BY EXECUTING AN INTERMODAL CHASSIS INSPECTION REPORT, OUT-GATING AN INTERMODAL CHASSIS FROM A START/STOP LOCATION, OR OTHERWISE INTERCHANGING AN INTERMODAL CHASSIS INTO ITS POSSESSION VIA PROPERLY EXECUTED STREET TURN OR ANY OTHER METHOD, CUSTOMER ACCEPTS EACH INTERMODAL CHASSIS "AS IS" AND EXPRESSLY DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY DCLI OR ANY PERSONS ON DCLI'S BEHALF. DCLI SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY TYPE OR CHARACTER RESULTING FROM THE USE, MISUSE, POSSESSION OR OPERATION OF ANY INTERMODAL CHASSIS BY CUSTOMER.

**13.     Liens and Taxes.**  Customer shall not mortgage, encumber or transfer any Intermodal Chassis or this Agreement in whole or in part.  Customer shall keep each Intermodal Chassis free and clear of all levies, liens and encumbrances and shall pay all taxes (including, without limitation, state and local sales and use taxes), assessments and similar charges, including, without limitation, any governmental fees and charges on the use, transportation, repair or operation of each Intermodal Chassis in its possession under this Agreement, together with any penalties, fines or interest thereon. Notwithstanding the foregoing, Customer shall not be responsible for any such taxes imposed or accrued with respect to DCLI's net income.  Customer shall keep written documentation of the locations where each Intermodal Chassis is left and shall, upon request, supply DCLI with such documentation for its review.

APXEXB00065
00103

DocuSign Envelope ID: 50CE4452-D411-44A6-962F-0CFD31D6FE1E

**14.     Compliance with Law.**  The parties shall obey and comply with all applicable federal, state and local laws, rules, regulations and ordinances (collectively, "Applicable Law") including, but not limited to, Applicable Law pertaining to the operation of intermodal equipment. Customer shall comply with all loading limitations, if any, prescribed by the manufacturers of the Intermodal Chassis, and shall prevent excessive impact of unbalanced or concentrated loads and pay all fines, expenses, charges or assessments of whatsoever nature which may arise out of the Customer's failure to comply with loading limitations or failure to prevent excessive impact or unbalanced or concentrated loads.  Customer represents and warrants that it does not have an unsatisfactory safety rating issued by any regulatory authority with jurisdiction over Customer's operations including, without limitation, the Federal Customer Safety Administration of the U.S. Department of Transportation.  Customer shall ensure that during the term of this Agreement, it and the Intermodal Chassis are in compliance with Applicable Law and shall promptly notify DCLI of any damage or other condition of Intermodal Chassis which fails to comply with Applicable Law.  Customer shall be responsible for, and shall pay, any and all tolls, fees, fines, penalties, citations or other amounts assessed against it or DCLI by local, state, provincial or federal governmental authorities or any tolling or highway authority whether public or private for the condition or use of any Intermodal Chassis while interchanged to Customer, including without limitation, any fines for toll evasion and administrative fees assessed by DCLI in connection with Customer's failure to appropriately pay any such amounts.  Customer shall promptly notify DCLI of any citation related to any Intermodal Chassis issued to Customer during the term of this Agreement and provide proof of payment thereof by Customer. In the event the Intermodal Chassis is in any way involved in an accident, regardless of whether a citation is issued, Customer shall immediately notify DCLI.

**15.     Term.**  This Agreement shall begin on the date of execution hereof and continue for an indefinite period.  Either party to this Agreement may, however, terminate this Agreement upon ten (10) days prior written notice (the eleventh day following such notice, the "Termination Effective Date").  In the event of termination by the Customer, the terms of this Agreement shall remain in effect with respect to all unreturned Intermodal Chassis as of the Termination Effective Date. To the extent Customer interchanges from DCLI any Intermodal Chassis following the Termination Effective Date, such Intermodal Chassis will be deemed to have been interchanged by an unauthorized user, and the terms of use for unauthorized users, as described on the DCLI website, shall apply.  Any termination of this Agreement shall be without prejudice to all rights accrued between the parties prior to the date of termination.  DCLI may suspend Customer's privileges under this Agreement for any breach of any provision of this Agreement or any failure of Customer to promptly pay amounts owed to DCLI pursuant to this Agreement.  Five (5) days' notice of suspension is required to be given to Customer prior to such suspension or "shut out" and such suspension or "shut out" will remain in effect, at DCLI's discretion, until such time as any breach is cured and/or any amounts outstanding are paid.

**16.     Remedies of DCLI.**  Any of the following shall be deemed an Event of Default: (a) any breach or failure of Customer to observe or perform any of its obligations under this Agreement; (b) dissolution, liquidation, or termination of the business of Customer, insolvency or failure of Customer to pay its debts as they mature in the ordinary course of business; the making of an assignment for the benefit of the creditors of Customer; or the filing of a voluntary petition in bankruptcy by Customer; or other actions of a similar nature; (c) the taking by any party of any Intermodal Chassis, or any part thereof, upon foreclosure, levy, execution, attachment or other process of law or equity enforced against Customer; or (d) if, in DCLI's reasonable opinion, Customer has neglected, abused or misused any Intermodal Chassis in any way.  Waiver of any default shall not be a waiver of any other or subsequent default or other condition or term of this Agreement.  Upon the occurrence of an Event of Default, DCLI may, at its sole discretion, and in addition to any other remedy or right it has hereunder or by law:  (i) immediately terminate this Agreement by providing notice to Customer; (ii) require Customer to make available or deliver any Intermodal Chassis to DCLI at such location as DCLI may designate; (iii) enter upon any premises where any Intermodal Chassis is located, and without notice or demand, remove such Intermodal Chassis, whether with or without process of law; (iv) render all or any part of the Intermodal Chassis unusable and/or (v) suspend Customer's ability to interchange or otherwise use or possess any Intermodal Chassis. Upon the occurrence of an Event of Default, Customer shall immediately pay to DCLI without further demand all unpaid daily usage charges and other sums due under this Agreement.  Daily usage charges shall continue to accrue on Intermodal Chassis in Customer's possession until such time as those

Page | 5

APXEXB00066

DocuSign Envelope ID: 50CE4452-D411-44A6-962F-0CFD31D6FE1E

Intermodal Chassis have been returned to and accepted by DCLI.  Customer shall also pay DCLI's actual costs and expenses incurred in connection with taking possession of any Intermodal Chassis and/or the collection of daily usage charges, enforcement, assertion, defense or preservation of DCLI's rights and remedies under this Agreement.  In addition to all collection costs, including reasonable attorney fees, late payment penalties, as provided for in Section 10, shall apply.  DCLI shall have the right to offset any amounts due from Customer against other funds or property of Customer held by DCLI.  The foregoing remedies are cumulative, and any or all thereof may be exercised instead of or in addition to each other or any remedies at law, in equity, or under statute.

17.     **Applicable Law.**  This Agreement is to be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York.  Customer and DCLI each hereby consent and agree to the exclusive jurisdiction and venue of the state and federal courts of New York, New York for any and all disputes, claims or other actions arising out of this Agreement.

18.     **Notices.** Any notice or payment required by this Agreement shall be in writing and addressed to the party at the address set forth below; provided, however, if the notice information below is not completed by Customer, DCLI may provide notice using any physical or electronic address last known by DCLI as belonging to Customer, its representative or agent, or any of their respective employees.  Notice shall be effective upon receipt. Either party may update its contact information by providing written notice to the other party.

> **Patrick Valentine**
> **Direct ChassisLink Inc.**
> **3525 Whitehall Park Dr., STE 400**
> **Charlotte, NC 28273-4279**
> **Attention: Patrick Valentine**
> **Email: Patrick.Valentine@dcli.com**

| | |
|---|---|
| **Customer** | |
| **Address:** | 7601 n federal hwy b-205 |
| **Address:** | boca raton        FL        33487 |
| **Attention:** | Zariz transport |
| **Email:** | Accounting@zariztransport.com |

19.     **Assignment.**  Customer shall not assign (whether directly, indirectly, by operation of law or otherwise) this Agreement or assign or sublet any Intermodal Chassis or any portion thereof without, in each instance, the prior written consent of DCLI.  DCLI may assign or transfer this Agreement without the consent of Customer and, after such assignment or transfer, DCLI shall be released from all obligations under this Agreement.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.

20.     **Entire Agreement; Amendment; Waiver; Severability; Intermodal Driver Database; Confidentiality; Dispute Resolution; Force Majeure.**     This Agreement, together with the applicable Intermodal Chassis Inspection Report(s), contains the entire agreement between the parties and supersedes all previous agreements, including the Uniform Intermodal Interchange and Facilities Access Agreement, with respect to the subject matter hereof.  Regardless of whether they are required by law, any provision of Customer's tariff, terms and conditions, service guide, bill of lading or any other document which is inconsistent with the terms of this Agreement, or which addresses matters not addressed herein, are inapplicable to the parties to this Agreement with respect to the subject matter hereof.  This Agreement may not be amended or modified orally.  No amendment, modification or release from any provisions hereof shall be effective unless in

APXEXB00067
00105

DocuSign Envelope ID: 50CE4452-D411-44A6-962F-0CFD31D6FE1E

writing and signed by both parties specifically stating it is an amendment to this Agreement; provided, however, the parties expressly acknowledge and agree the terms of this Agreement may be updated by DCLI by posting revised terms and/or a new version of this Agreement on the DCLI website and notifying Customer of such revised terms, which shall become effective thirty (30) days following such posting. If Customer does not terminate this Agreement within such thirty (30) day period, then Customer acknowledges and agrees that such updated terms or Agreement shall be binding on both parties in place of the terms of this Agreement and any prior version(s) of this Agreement, as applicable. The failure of either party to require the performance of any provision of the Agreement or the waiver by either party of any breach under this Agreement shall not prevent a subsequent enforcement of such term, nor be deemed a waiver of any subsequent breach. If any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. Customer, including all of its drivers, must be registered in the Intermodal Association of North America's Intermodal Driver Database ("IDD") and Customer hereby consents to access by DCLI to the driver information registered and maintained in the IDD. Customer hereby acknowledges and agrees that this Agreement and the terms and conditions hereof are confidential and proprietary information of DCLI and Customer shall not disclose the existence of this Agreement or the terms and conditions hereof to any third person or entity without the express written consent of DCLI, which may be granted or withheld in DCLI's sole and absolute discretion. The parties will use commercially reasonable efforts to resolve disputes with respect to this Agreement. DCLI's contact for billing inquiries is set forth on DCLI's website. DCLI shall not be liable to Customer or any other person for any failure or delay in the performance of any obligation due to events beyond its control including, but not limited to, fire, storm, flood, earthquake, explosion, acts of the public enemy, sabotage, riots, civil disorder, strikes, lockouts, labor disputes, labor shortages, work stoppages, transportation embargoes or delays, failure or shortage of materials, supplies or equipment, failures of suppliers or repair facilities, acts of God and/or acts of any governmental entity, including any laws, rules or regulations of same.

CUSTOMER HEREBY REPRESENTS AND WARRANTS THAT: (I) A RESPONSIBLE OFFICER OF CUSTOMER HAS READ AND UNDERSTANDS ALL PROVISIONS OF THIS AGREEMENT AND AGREES CUSTOMER WILL COMPLY WITH ITS REQUIREMENTS AND (II) THE SIGNATORY BELOW IS FULLY EMPOWERED AND DULY AUTHORIZED ON BEHALF OF CUSTOMER, WHETHER THROUGH CORPORATE BYLAW, INTERNAL POLICY OR OTHER DELEGATION OF AUTHORITY, TO EXECUTE THIS AGREEMENT AND BIND CUSTOMER TO THE TERMS HEREIN.

*[SIGNATURE PAGE FOLLOWS]*

APXEXB00068
00106

DocuSign Envelope ID: 50CE4452-D411-44A6-962F-0CFD31D6FE1E

IN WITNESS WHEREOF, DCLI and Customer have executed this Agreement on the date set forth above.

DCLI

Signed: _Patrick Valentine_
　　　　62A8D61ABCCB439...

By:　**Patrick Valentine**

Title:　**Vice President**

CUSTOMER

Signed: _pinchas guzelgul_
　　　　1A0A6893DC1A4AF...

By:　**pinchas guzelgul**

Title:　**director of ops**

APXEXB00069
00107

# EXHIBIT B

APXEXB00070